

No 34-12-2019

The Embassy of the Republic of Poland presents its compliments to the United States Department of State and in accordance with the Treaty of Extradition between the Republic of Poland and the United States of America, has the honor to request to establish the exact location, the pretrial detention and extradition of Piotr Jan GRABOWSKI, a Polish citizen, born on December 10th, 1978 in Nowa Sarzyna, Poland for the purpose of enforcement of the sentence of 2 years and 6 months of imprisonment imposed upon him by means of the judgement of the Regional Court in Rzeszów of October 3rd, 2001

The attached request of the aforementioned court correspond with the Article 2 of the Extradition Treaty between the Republic of Poland and the United States of America on July 10th, 1996 and in conjunction with the Article 3 (2) of the Agreement on Extradition between the European Union and the United States of America on Extradition of June 25th , 2003.

The Embassy of the Republic of Poland avails itself of this opportunity to renew to the United States Department of State the assurances of its highest consideration.

Enclosures: Documents supporting the request. 

Washington, DC, October 31th, 2019

U.S. Department of State

Washington, D.C.

**- Translated from the Polish language -**

---

**THE REPUBLIC OF POLAND**
**MINISTER OF JUSTICE**

**DWMPC-II-8041.353.2019**

Warsaw, October 10, 2019

**Mr.**
**Mike Pompeo**
**Secretary of State**
**of the United States of America**

**Dear Mr. Secretary of State,**

Pursuant to the Article 2 of the Extradition Treaty between the Republic of Poland and the United States of America, signed in Washington on July 10, 1996 in conjunction with the Article 3 (2) of the Agreement on Extradition between the European Union and the United States of America of America of June 25, 2003 I have the honor to send you the attached request of the Regional Court in Rzeszów for extradition from the United States of America to the Republic of Poland of Polish citizen **Piotr Jan GRABOWSKI** for the purpose of enforcement of the sentence of 2 years and 6 months of imprisonment imposed upon him by means of the judgement of the aforementioned court of 3 October 2001 (Ref. No. II K 54/01).

In addition, pursuant to the Article 14 of the aforementioned Treaty, I have the honor to ask you to comply with the request of the court and notify me of your decision on extradition of the individual mentioned above.

**Sincerely Yours,**

( signature )
By authority of the Minister of Justice
Anna Dalkowska
Undersecretary of State



MINISTER
SPRAWIEDLIWOŚCI

Warszawa, dnia 10.10 2019 r.

**DWMPC-II.8041.353.2019**

**Pan**
**Mike Pompeo**
**Sekretarz Stanu**
**Stanów Zjednoczonych Ameryki**

**Szanowny Panie Sekretarzu Stanu,**

stosownie do art. 2. Umowy między Rzecząpospolitą Polską a Stanami Zjednoczonymi Ameryki o ekstradycji, sporządzonej w Waszyngtonie dnia 10 lipca 1996 roku w związku z art. 3 ust. 2 Porozumienia o ekstradycji między Unią Europejską a Stanami Zjednoczonymi Ameryki z dnia 25 czerwca 2003 r. uprzejmie przedstawiam w załączeniu wniosek Sądu Okręgowego w Rzeszowie o ekstradycję ze Stanów Zjednoczonych Ameryki obywatela polskiego **Piotra Jana GRABOWSKIEGO** w celu wykonania kary 2 lat i 6 miesięcy pozbawienia wolności orzeczonej wobec niego prawomocnym wyrokiem wskazanego wyżej sądu z dnia 3 października 2001 r. (sygn. akt II K 54/01).

Jednocześnie – stosownie do art. 14 wskazanej wyżej Umowy – uprzejmie proszę o uwzględnienie wniosku i powiadomienie o decyzji odnośnie do wydania wskazanej osoby.

**Z wyrazami szacunku**

MINISTER SPRAWIEDLIWOŚCI
4
PODSEKRETARZ STANU
w Ministerstwie Sprawiedliwości
dr Anna Dalkowska

Al. Ujazdowskie 11, 00-950 Warszawa
tel.: +48 22 52 12 888, www.ms.gov.pl

Sąd Okręgowy w Rzeszowie
II Wydział Karny
Plac Śreniawitów 3
35-959 Rzeszów
Polska
tel. 0048 17 87 56 263
faks 0048 17 87 56 264
e-mail: sis@rzeszow.so.gov.pl

**WNIOSEK**
**O USTALENIE DOKŁADNEGO MIEJSCA ZNAJDOWANIA SIĘ (POBYTU),**
**TYMCZASOWE ARESZTOWANIE ORAZ**
**WYDANIE OSOBY SKAZANEJ W CELU WYKONANIA KARY**

Sąd Okręgowy w Rzeszowie, Polska,
na podstawie art. 12 załącznika do Umowy sporządzonej w Warszawie dnia 9 czerwca 2006r. między Rzecząpospolitą Polską a Stanami Zjednoczonymi Ameryki dotyczącą stosowania Umowy między Rzecząpospolitą Polską a Stanami Zjednoczonymi Ameryki o wzajemnej pomocy prawnej w sprawach karnych, sporządzonej dnia 10 lipca 1996 r. zgodnie z artykułem 3 ustęp 2 Porozumienia o wzajemnej pomocy prawnej w sprawach karnych między Unią Europejską a Stanami Zjednoczonymi Ameryki, podpisanego w Waszyngtonie dnia 25 czerwca 2003 r.,
a także na podstawie art. 12 i art. 1 załącznika do Umowy między Rzecząpospolitą Polską a Stanami Zjednoczonymi Ameryki dotyczącej stosowania Umowy między Rzecząpospolitą Polską a Stanami Zjednoczonymi Ameryki o ekstradycji, sporządzonej dnia 10 lipca 1996 r. zgodnie z artykułem 3 ustęp 2 Porozumienia o ekstradycji podpisanego w Waszyngtonie dnia 25 czerwca 2003 r.,

**zwraca się o:**

**- USTALENIE DOKŁADNEGO MIEJSCA ZNAJDOWANIA SIĘ (POBYTU),**
**- TYMCZASOWE ARESZTOWANIE,**
**- WYDANIE OBYWATELA POLSKIEGO**

**Piotra Jana GRABOWSKIEGO (Piotr Jan GRABOWSKI)**

DANE OSOBOWE:

mężczyzna, syn Waleriana (Walerian) i Haliny (Halina) z domu Dobosz;
urodzony 10 grudnia 1978r. w Polsce w miejscowości Nowa Sarzyna;
ostatnio zamieszkały w Polsce w miejscowości Stare Miasto 198, 37-330 Leżajsk;
polski numer identyfikacji ludności PESEL: 78121014833;
może posługiwać się polskim dowodem osobistym DD6372428;
może posługiwać się polskim paszportem AA9581400 ważny do 24 marca 2007;
może posługiwać się pseudonimem: WALEREK

INFORMACJE DODATKOWE:

Zgodnie z informacjami uzyskanymi od Policji Piotr Jan GRABOWSKI przebywa w USA w Nowym Jorku wraz z:
1. żoną - Barbarą Wiolettą Grabowską (Barbara Wioletta GRABOWSKA) z domu Berestka, córką Jana i Ewy z domu Trojnar; urodzonej 17 lipca 1981r. w Polsce w miejscowości Nowa Sarzyna,
2. synem - Kacprem Jakubem Grabowskim (Kacper Jakub GRABOWSKI).

Piotr Jan GRABOWSKI i Barbara Wioletta GRABOWSKA związek małżeński zawarli w USA w Nowym Jorku, a ich syn Kacper Jakub GRABOWSKI uczęszcza do szkoły.

Policja przekazała ponadto informację, że w USA w Nowym Jorku ma przebywać także matka Piotra Jana GRABOWSKIEGO – Halina GRABOWSKA, pod adresem: 13-18 50th AVE JACKSON HEIGHTS N.Y. 11370; ostatni kontakt telefoniczny (numer telefonu) z Halina GRABOWSKA na terenie USA: 0017185076937.

UZASADNIENIE SKIEROWANIA WNIOSKU:

Piotr Jan GRABOWSKI prawomocnym wyrokiem II K 54/01 Sądu Okręgowego w Rzeszowie z dnia 3 października 2001r. został uznany winnym tego, że w dniu 16 maja 2001 r., w Starym Mieście działając wspólnie i w porozumieniu z drugą ustaloną osobą, używając przemocy polegającej na rzuceniu o ścianę, przytrzymywaniu i uderzaniu ręką po twarzy, doprowadził pokrzywdzoną Marię Janik do obcowania płciowego, powodując u niej obrażenia ciała w postaci zasinienia na barku prawym, bolesności palpacyjnej w okolicy potylicy z obrzękiem, zasinienia na ramieniu lewym, bolesności okolicy mostka i zasinienia na udzie prawym, co naruszyło czynności narządów ciała na okres nieprzekraczający 7 dni, narażając ją na bezpośrednie niebezpieczeństwo nastąpienia skutku określonego w art. 157 § 1 kodeksu karnego, tj. popełnienie czynu z art. 197 § 3 i art. 158 § 1 w zw. z art. 11 § 2 kodeksu karnego.

**Wyciąg z przepisów kodeksu karnego:**
przestępstwa przeciwko życiu i zdrowiu – art. 158 § 1 kodeksu karnego,
przestępstwa przeciwko wolności seksualnej i obyczajowości – art. 197 § 3 kodeksu karnego.

**Artykuł 11 § 2 kodeksu karnego:**
Jeżeli czyn wyczerpuje znamiona określone w dwóch albo więcej przepisach ustawy karnej, sąd skazuje za jedno przestępstwo na podstawie wszystkich zbiegających się przepisów.

**Artykuł 157 § 1 kodeksu karnego:**
Kto powoduje naruszenie czynności narządu ciała lub rozstrój zdrowia, inny niż określony w art. 156 § 1, podlega karze pozbawienia wolności od 3 miesięcy do lat 5.

**Artykuł 158 § 1 kodeksu karnego:**
Kto bierze udział w bójce lub pobiciu, w którym naraża się człowieka na bezpośrednie niebezpieczeństwo utraty życia albo nastąpienie skutku określonego w art. 156 § 1 lub w art. 157 § 1, podlega karze pozbawienia wolności do lat 3.

**Treść artykułu 197 § 3 kodeksu karnego z chwili wydania wyroku II K 54/01:**
Jeżeli sprawca dopuszcza się zgwałcenia określonego w § 1 lub 2, działając ze szczególnym okrucieństwem lub wspólnie z inną osobą, podlega karze pozbawienia wolności od lat 2 do 12.

**Aktualna treść artykułu 197 § 3 kodeksu karnego:**
Jeżeli sprawca dopuszcza się zgwałcenia wspólnie z inną osobą, podlega karze pozbawienia wolności na czas nie krótszy od lat 3.

**Zmiana treści artykułu 197 § 3 polskiego kodeksu karnego nie ma wpływu na sytuację prawną osoby, której dotyczy wniosek o wydanie.**

**Wyrokiem II K 54/01 wymierzono Piotrowi Janowi Grabowskiemu karę 2 lat i 6 miesięcy pozbawienia wolności.**

**Na poczet orzeczonej kary zaliczono okres rzeczywistego pozbawienia wolności w sprawie od dnia 17 maja 2001r. do dnia 3 października 2001r.**

**OPIS STANU FAKTYCZNEGO:**

W dniu 16 maja 2001r. pokrzywdzona Maria Janik po zrobieniu zakupów wracała do domu. Po drodze spotkała znajdujących się pod wpływem alkoholu Piotra Grabowskiego i Ireneusza Zagaję, którzy prosili ją aby zatrzymała się na chwilę i zeszła z roweru. Gdy Maria Janik przystała na tę propozycję wyżej wymienieni zabrali jej rower i udali się w kierunku domu oskarżonego. Pokrzywdzona poszła za nimi, chciała bowiem odebrać im rower, który stanowił własność jej koleżanki Sabiny Ochalskiej. W efekcie cała trójka doszła do niewykończonego budynku mieszkalnego znajdującego się na posesji Piotra Grabowskiego (dowód zeznania M. Janik k. 13-15, 61-62, 88-89, częściowo k. 134 - 135, zeznania S. Ochalskiej k. 138/2 i 55, częściowo wyjaśnienia P. Grabowskiego k. 132 - 133, 23 - 25, 92 - 95). Maria Janik nie przeczuwając niczego usiadła razem z oskarżonym i Ireneuszem Zagają na murku, paliła z nimi papierosy. W pewnym momencie wyżej wymienieni złapali ją za ręce i wciągnęli do domu, a konkretnie do pokoju znajdującego się na półpiętrze. Piotr Grabowski i Ireneusz Zagaja zaczęli rozpinać Marii Janik biustonosz, wkładali jej ręce pod ubranie, twierdzili przy tym, że pokrzywdzona jest najseksowniejszą dziewczyną w Starym Mieście. Maria Janik usiłowała wyrwać się napastnikom, jej zabiegu były jednak nieskuteczne. Ireneusz Zagaja poprosił kolegę aby ten opuścił pokój. Piotr Grabowski wyszedł na chwile na zewnątrz, zamykając za sobą drzwi. Ireneusz Zagaja ściągnął pokrzywdzonej sweter. Maria Janik odepchnęła go wówczas na ścianę, zaczęła płakać i krzyczeć. Ireneusz Zagaja nie mogąc sobie poradzić z wyżej wymienioną, zawołał Piotra Grabowskiego. Oskarżony po wejściu do pokoju zamknął drzwi, a następnie razem z kolegą usiłował przewrócić

pokrzywdzoną na łóżko. Na skutek działań obronnych podjętych przez Marię Janik, chwilowo zabiegi napastników nie przyniosły rezultatu. Piotr Grabowski oświadczył pokrzywdzonej, że puszczą ją dopiero wtedy, gdy „zrobi im loda", przystępując równocześnie do rozpinania jej spodni. Maria Janik odepchnęła od siebie wyżej wymienionych mężczyzn, pobiegła do okna, zaczęła wzywać pomocy. Ireneusz Zagaja uderzył wówczas pokrzywdzona tak, że ta z kolei uderzyła głową o ścianę, a następnie razem z kolegą, rzucił ją na łóżko, ściągnął odzież. Wyżej wymieniony usiadł pokrzywdzonej na nogach, przytrzymywał za ręce, zaś Piotr Grabowski usiadł na brzuchu. Obaj napastnicy mieli zsunięte spodnie. Oskarżony wsadził następnie Marii Janik członka do ust, zaś Ireneusz Zagaja do ręki. Maria Janik zaczęła się szamotać, a gdy Piotr Grabowski wyciągnął członka z jej ust zaczęła krzyczeć. Oskarżony uderzył ją wówczas w twarz, równocześnie powiedział (używając wulgarnych słów), że i tak jej nikt nie usłyszy. Ireneusz Zagaja włożył następnie Marii Janik palce do pochwy, stwierdzając że może w ten sposób uda mu się szybciej zaspokoić. Obaj napastnicy zaczęli się śmiać, a w końcu wstali z pokrzywdzonej. Maria Janik ubrała się (zostawiając figi oraz zegarek) chciała pospiesznie opuścić pokój. Wówczas Piotr Grabowski zagrodził jej drogę, mówiąc, że puści ją dopiero wtedy, gdy będzie miał wytrysk ( dowód zeznania M. Janik k. 13 - 15, 61 - 62, 88 - 89, protokół oględzin k. 57-60, zeznania T. Wojnara k. 149/2-150). Ostatecznie oskarżony otworzył drzwi, tak że Maria Janik mogła opuścić pokój. Wtedy Ireneusz Zagaja wciągnął wyżej wymienioną do łazienki, zaczął rozpinać jej spodnie, chcąc ponownie odbyć z nią stosunek oralny. Maria Janik odpychała napastnika od siebie i krzyczała. W pewnej chwili Piotr Grabowski uchylił lekko drzwi od łazienki. Pokrzywdzona wykorzystała ten moment, otworzyła szerzej drzwi, próbowała uciec. Oskarżony złapał ją wówczas za sweter i rozdarł go. Maria Janik opuściła w końcu dom Piotra Grabowskiego, zabrała rower i odjechała (dowód zeznania M. Janik k. 13-15). Janina Janik po powrocie z kościoła oczekiwała na córkę. Gdy pokrzywdzona dotarła do domu miała rozerwana odzież, była zdenerwowana, płakała. Janina Janik zaczęła wypytywać wyżej wymienioną co się stało. Początkowo nie uzyskała jednak żądnej odpowiedzi. Dopiero później, gdy ponownie próbowała dociec, co było przyczyna takiego zachowania i wyglądu córki, dowiedziała się ogólnie, jak przebiegało całe zajście. Maria Janik opowiedziała matce, że została wciągnięta przez Piotra Grabowskiego i Ireneusza Zagaję do nowo wybudowanego domu, przy użyciu przemocy fizycznej obaj napastnicy „dobierali się" do niej, chcieli odbyć z nią stosunek oralny ( dowód zeznania J. Janik k. 53-54, częściowo k. 150-151). Następnego dnia rano Maria Janik w dalszym ciągu czuła się, źle, skarżyła się na ból głowy. Janina Janik stwierdziła, że o całym zajściu należy zawiadomić Policję. Pokrzywdzona próbowała nakłonić matkę do odstąpienia od tego pomysłu, przekonywała ją, że nie należy całej sprawie nadawać rozgłosu. Janina Janik była jednak konsekwentna. Po telefonicznym zgłoszeniu funkcjonariusze policji przyjechali do domu Marii Janik, zabrali ją ze sobą do komendy, zawieźli na badania lekarskie ( dowód zeznania J. Janik k. 150-151, M. Janik k. 13-15, częściowo k. 134-136, zaświadczenia lekarskie k. 3 i 33). Pokrzywdzona złożyła zawiadomienie o popełnieniu przestępstwa na jej szkodę oraz wniosek o ściganie karne Piotra Grabowskiego i Ireneusza Zagaji. Kilka dni później Maria Janik napisała pismo, z treści którego wynikało, że chce ona cofnąć złożony wcześniej wniosek o ściganie. W trakcie dalszego postępowania pokrzywdzona wyjaśniła motywy swojej decyzji, stwierdzając że powyższe oświadczenie napisała pod namową rodziny Piotra Grabowskiego (dowód zawiadomienie o popełnieniu przestępstwa k. 1, pisemne oświadczenie Marii Janik k. 47, zeznania M. Janik k. 51 - 62, częściowo k. 134 - 136). Jak wynika ze sporządzonej w sprawie opinii sądowo lekarskiej, Maria Janik doznała obrażeń ciała w postaci : zasinienia na barku

prawym z bolesnością palpacyjną, obrzęku i bolesności palpacyjnej w okolicy potylicy, zasinienia na lewym ramieniu, bolesności okolicy mostka, sińca na udzie prawym. Biegły podał, że opisane wyżej obrażenia naruszyły czynności narządów ciała pokrzywdzonej na okres poniżej 7 dni i mogły powstać w podanych przez nią okolicznościach ( dowód opinia sądowo lekarska k. 137-138 i k. 72).

Powyższy stan faktyczny Sąd ustalił w oparciu o zeznania Marii Janik, Janiny Janik, Sabiny Ochalskiej, Tadeusza Wojnara, oświadczenia o cofnięciu wniosku, zawiadomienia o popełnieniu przestępstwa, zaświadczenia lekarskie, opinie sądowo-lekarskie, częściowo w oparciu o wyjaśnienia Piotra Grabowskiego.

Apelacje od wyroku II K 54/01 wnieśli obrońca Piotra Jana Grabowskiego oraz prokurator.

Sąd Apelacyjny w Rzeszowie wyrokiem II AKa 161/01 z dnia 20 grudnia 2001r. utrzymał w mocy wyrok II K 54/01 Sądu Okręgowego w Rzeszowie z dnia 3 października 2001r.

Wyrok II K 54/01 z dnia 3 października 2001r. stał się prawomocny w dniu 20 grudnia 2001r.

Piotr Jan Grabowski nie odebrał wysłanego do niego pocztą przez Sąd wezwania do stawienia się w zakładzie karnym, zaś z adnotacji poczty na przesyłce wynikało, że adresat wyjechał z kraju.

W dniu 17 stycznia 2002r. Sąd wydał Policji nakaz doprowadzenia skazanego do zakładu karnego.

Pismem z dnia 21 lutego 2002r. Policja poinformowała Sąd, że nie zrealizowano nakazu doprowadzenia skazanego do zakładu karnego, gdyż według posiadanych informacji skazany nie przebywa w miejscu zamieszkania i prawdopodobnie wyjechał z kraju.

Postanowieniem z dnia 3 czerwca 2002r. Sąd zarządził poszukiwania skazanego listem gończym, zaś w dniu 12 czerwca 2002r. wydał list gończy za skazanym.

W dniu 7 sierpnia 2002r. obrońca skazanego złożył do Sądu wniosek o odroczenie wykonania orzeczonej kary pozbawienia wolności.

Postanowieniem z dnia 10 września 2002r. Sąd odroczył skazanemu wykonanie orzeczonej kary pozbawienia wolności na okres 6 miesięcy to jest do dnia 11 kwietnia 2003r.

W dniu 24 kwietnia 2003r. Sąd wysłał pocztą do skazanego wezwanie z dnia 23 kwietnia 2003r. do stawienia się w zakładzie karnym w celu odbycia orzeczonej kary pozbawienia wolności. Przesyłkę w dniu 30 kwietnia 2003r. odebrał dorosły domownik (ojciec), który zobowiązał się do jej przekazania adresatowi.

W dniu 16 maja 2003r. Sąd otrzymał od administracji Zakładu Karnego w Rzeszowie informację, że skazany nie stawił się w zakładzie karnym w celu odbycia orzeczonej kary pozbawienia wolności.

W dniu 19 maja 2003r. Sąd ponownie wydał Policji nakaz doprowadzenia skazanego do zakładu karnego.

Pismem z dnia 7 lipca 2003r. Policja poinformowała Sąd, że nie zrealizowano nakazu doprowadzenia skazanego do zakładu karnego, gdyż według posiadanych informacji skazany nie przebywa w miejscu zamieszkania i prawdopodobnie wyjechał z kraju.

Postanowieniem z dnia 17 lipca 2003r. Sąd ponownie zarządził poszukiwania skazanego listem gończym, zaś w dniu 23 lipca 2003r. ponownie wydał list gończy za skazanym.

Pismem z dnia 29 września 2003r. Policja poinformowała Sąd, że według posiadanych informacji skazany nie przebywa w miejscu zamieszkania i prawdopodobnie przebywa we Włoszech.

Postanowieniem z dnia 14 listopada 2003r. Sąd polecił Policji dokonanie przeszukania miejsca ostatniego zamieszkania skazanego w kraju celem zatrzymania skazanego i ewentualnie odnalezienia rzeczy pozwalających ustalić miejsce pobytu skazanego.

Pismem z dnia 25 listopada 2003r. Policja poinformowała Sąd, że w wyniku przeszukania miejsca ostatniego zamieszkania skazanego w kraju ustalono numery telefonu do siostry skazanego przebywającej we Włoszech oraz numery telefonu i adres matki skazanego przebywającej w Stanach Zjednoczonych.

Pismem z dnia 23 marca 2004r. Sąd zwrócił się do Krajowego Biura Interpolu - Komendy Głównej Policji o wszczęcie poszukiwań międzynarodowych skazanego.

Postanowieniem z dnia 23 czerwca 2008r. Sąd wydał wobec skazanego europejski nakaz aresztowania.

Postanowieniem z dnia 28 stycznia 2010r. Sąd zawiesił postępowanie wykonawcze wobec skazanego.

**Wyciąg z przepisów kodeksu karnego wykonawczego:**

**Artykuł 15.** kodeksu karnego wykonawczego:
**§ 2.** Jeżeli zachodzi długotrwała przeszkoda uniemożliwiająca postępowanie wykonawcze, a w szczególności jeżeli nie można ująć skazanego albo nie można wykonać wobec niego orzeczenia z powodu choroby psychicznej lub innej przewlekłej, ciężkiej choroby, postępowanie zawiesza się w całości lub w części na czas trwania przeszkody.

Postanowieniem z dnia 15 lipca 2016r. Sąd zezwolił ze względu na ważny interes społeczny na ujawnienie danych osobowych i wizerunku skazanego.

Skazany został pouczony o przysługujących mu uprawnieniach procesowych i korzystał w trakcie postępowania z przysługujących mu uprawnień procesowych, w tym z pomocy adwokatów z wyboru, którzy składali pisma procesowe i brali udział w postępowaniu.

**Kara pozbawienia wolności pozostała do odbycia to 2 lata 1 miesiąc i 12 dni pozbawienia wolności.**

**Przedawnienie wykonania kary pozbawienia wolności orzeczonej wyrokiem II K 54/01 następuje w dniu 20 grudnia 2026r., ponieważ zawieszono postępowanie wykonawcze, a skazany uchyla się od wykonania kary pozbawienia wolności.**

**Piotr Jan Grabowski nie odbył orzeczonej kary pozbawienia wolności, gdyż zbiegł z Polski i ukrywa się przed polskim wymiarem sprawiedliwości.**

**Wyciąg z przepisów kodeksu karnego:**

**Art. 103. § 1.** Nie można wykonać kary, jeżeli od uprawomocnienia się wyroku skazującego upłynęło lat:

1) 30 - w razie skazania na karę pozbawienia wolności przekraczającą 5 lat albo karę surowszą;
2) 15 - w razie skazania na karę pozbawienia wolności nieprzekraczającą 5 lat;
3) 10 - w razie skazania na inną karę.

**Wyciąg z przepisów kodeksu karnego wykonawczego:**

**Artykuł 15.** kodeksu karnego wykonawczego:
**§ 3.** Zawieszenie postępowania wykonawczego nie wstrzymuje biegu przedawnienia, chyba że skazany uchyla się od wykonania kary. Okres wstrzymania biegu przedawnienia nie może przekroczyć 10 lat.

**Na podstawie art. 9bis Umowy o ekstradycji wnosimy o utajnienie w toku całego postępowania danych osobowych i adresowych osoby pokrzywdzonej Marii Janik z uwagi na konieczność ochrony jej prawa do prywatności.**

**Informujemy, że odstąpiono od odebrania od pokrzywdzonej oświadczenia czy osoba widoczna na zdjęciach to osoba, która została skazana w tej sprawie i której dotyczy wniosek o ekstradycję. Wskazujemy jednocześnie, że pokrzywdzona przez cały czas trwania postępowania (zarówno na etapie prokuratorskim, jak i sądowym), konsekwentnie wskazywała Piotra Jana Grabowskiego jako sprawcę czynu. Odstąpienie od odebrania od pokrzywdzonej oświadczenia jest związane z tym, aby oszczędzić osobie pokrzywdzonej cierpień psychicznych, które niewątpliwie wystąpiłyby w związku z powrotem do traumatycznych przeżyć, których doświadczyła wiele lat temu.**

**ZAŁĄCZNIKI DO WNIOSKU:**

- zdjęcie Piotra Jana Grabowskiego z około 2016/2017r.,
- odpis prawomocnego wyroku II K 54/01 z dnia 3 października 2001r. z uzasadnieniem,
- odpis wyroku apelacyjnego II AKa 161/01 z dnia 20 grudnia 2001r. z uzasadnieniem,
- odpis nakazu doprowadzenia do zakładu karnego z dnia 19 maja 2003r.,
- odpis postanowienia z dnia 17 lipca 2003r. o poszukiwaniu skazanego listem gończym,
- odpis listu gończego z dnia 23 lipca 2003r.

**Nie dysponujemy kartą daktyloskopijną skazanego Piotra Jana Grabowskiego.**

Prosimy o kontakt w przypadku potrzeby udzielenia wyjaśnień i przekazania dodatkowych informacji lub dokumentów.

Z wyrazami szacunku i poważania,

Marta Krajewska-Drozd
Sędzia Sądu Okręgowego w Rzeszowie, Polska
19 czerwca 2019r.

SĄD OKRĘGOWY W RZESZOWIE 2

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia



**Uzyskane w ramach działań operacyjnych policji zdjęcie przedstawiające skazanego Piotra Jana Grabowskiego z około 2016/2017r.**

**Zaświadczam, że fotografia ta przedstawia osobę, która została skazana w tej sprawie i której dotyczy wniosek o ekstradycję.**

Marta Krajewska-Drozd
Sędzia Sądu Okręgowego w Rzeszowie, Polska
19 czerwca 2019r.

SĄD OKRĘGOWY W RZESZOWIE 2

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2018
Starszy Inspektor
Marcin Puźniak

Sygn. akt II K.54/01

# WYROK
## W IMIENIU RZECZYPOSPOLITEJ POLSKIEJ

Dnia 3 października 2001 r.

Sąd Okręgowy w Rzeszowie Wydział II Karny w składzie:

Przewodniczący: del.SSR Marzena Ossolińska-Pięs
Ławnicy: Mieczysław Błoniarz
Józef Gubernat
Protokolant: Joanna Bolanowska

przy udziale Prokuratora Prokuratury Rejonowej w Leżajsku - Lucyny Pełki

po rozpoznaniu na rozprawie w dniach: 7 września i 3 października 2001 r.

sprawy:

**Piotra Grabowskiego** - syna Waleriana i Haliny zd.Dobosz, urodzonego dn. 10 grudnia 1978 r. w Nowej Sarzynie, zamieszkałego: Stare Miasto 198, karanego,

oskarżonego o to, że:

w dniu 16 maja 2001 r. w Starym Mieście powiatu leżajskiego, działając wspólnie i w porozumieniu z drugą ustaloną osobą, używając przemocy polegającej na rzuceniu o ścianę, przytrzymywaniu i uderzaniu ręką po twarzy, doprowadził Marię Janik do obcowania płciowego, powodując u niej obrażenia ciała w postaci zasinienia na barku prawym, bolesności palpacyjnej w okolicy potylicy z obrzękiem, zasinienia na ramieniu lewym, bolesności

MS/K wyrok 1. Wyrok sądu I instancji.
Drukarnia Nr 1, 02-521 Warszawa, Rakowiecka 37, tel. (0-22) 640-81-70, fax (0-22) 849-94-97. Zam. 1108. Zatwierdzono do druku 17.03.2000 r.

154

okolicy mostka i zasinienia na udzie prawym, co naruszyło czynności narządów ciała na okres nieprzekraczający 7 dni, narażając ją na bezpośrednie niebezpieczeństwo nastąpienia skutku określonego w art.157 § 1 kk,

tj. o przestępstwo z art.197 § 3 kk i art.158 § 1 kk w zw. z art.11 § 2 kk

**u z n a j e**

**oskarżonego Piotra Grabowskiego za winnego** popełnienia czynu wyżej w wyroku opisanego a stanowiącego przestępstwo z art.197 § 3 kk i art.158 § 1 kk w zw. z art.11 § 2 kk i za czyn ten na mocy art.197 § 3 kk w zw. z art.11 § 3 kk

**s k a z u j e**

go na karę 2 (dwóch) lat i 6 (sześciu) miesięcy pozbawienia wolności,

Na zasadzie art.63 § 1 kk **z a l i c z a** oskarżonemu na poczet orzeczonej kary pozbawienia wolności okres rzeczywistego pozbawienia wolności w sprawie od dnia 17 maja 2001 r. godz.13.20 do dnia 3 października 2001 r.

na zasadzie art. 627 kpk **z a s ą d z a** od oskarżonego na rzecz Skarbu Państwa koszty sądowe w kwocie 608,61 zł (sześćset osiem zł sześćdziesiąt jeden gr).

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2019
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE 2

Sygn. akt II K. 54/01

# UZASADNIENIE

## wyroku z dnia 3 października 2001r.

W dniu 16 maja 2001r. pokrzywdzona Maria Janik po zrobieniu zakupów wracała do domu. Po drodze spotkała znajdujących się pod wpływem alkoholu Piotra Grabowskiego i Ireneusza Zagaję, którzy prosili ją aby zatrzymała się na chwilę i zeszła z roweru. Gdy Maria Janik przystała na tę propozycję wyżej wymienieni zabrali jej rower i udali się w kierunku domu oskarżonego. Pokrzywdzona poszła za nimi, chciała bowiem odebrać im rower, który stanowił własność jej koleżanki Sabiny Ochalskiej. W efekcie cała trójka doszła do niewykończonego budynku mieszkalnego znajdującego się na posesji Piotra Grabowskiego ( dowód zeznania M. Janik k. 13-15, 61-62, 88-89, częściowo k. 134 – 135, zeznania S. Ochalskiej k. 138/2 i 55, częściowo wyjaśnienia P. Grabowskiego k. 132 – 133, 23 – 25, 92 – 95).

Maria Janik nie przeczuwając niczego usiadła razem z oskarżonym i Ireneuszem Zagają na murku, paliła z nimi papierosy. W pewnym momencie wyżej wymienieni złapali ją za ręce i wciągnęli do domu, a konkretnie do pokoju znajdującego się na półpiętrze. Piotr Grabowski i Ireneusz Zagaja zaczęli rozpinać Marii Janik biustonosz, wkładali jej ręce pod ubranie, twierdzili przy tym, że pokrzywdzona jest najseksowniejszą dziewczyną w Starym Mieście.

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2019
Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE 2

Maria Janik usiłowała wyrwać się napastnikom, jej zabiegu były jednak nieskuteczne. Ireneusz Zagaja poprosił kolegę aby ten opuścił pokój. Piotr Grabowski wyszedł na chwile na zewnątrz, zamykając za sobą drzwi. Ireneusz Zagaja ściągnął pokrzywdzonej sweter. Maria Janik odepchnęła go wówczas na ścianę, zaczęła płakać i krzyczeć. Ireneusz Zagaja nie mogąc sobie poradzić z wyżej wymienioną, zawołał Piotra Grabowskiego. Oskarżony po wejściu do pokoju zamknął drzwi, a następnie razem z kolegą usiłował przewrócić pokrzywdzoną na łóżko. Na skutek działań obronnych podjętych przez Marię Janik, chwilowo zabiegi napastników nie przyniosły rezultatu. Piotr Grabowski oświadczył pokrzywdzonej, że puszczą ją dopiero wtedy, gdy „zrobi im loda", przystępując równocześnie do rozpinania jej spodni. Maria Janik odepchnęła od siebie wyżej wymienionych mężczyzn, pobiegła do okna, zaczęła wzywać pomocy. Ireneusz Zagaja uderzył wówczas pokrzywdzona tak, że ta z kolei uderzyła głową o ścianę, a następnie razem z kolegą, rzucił ją na łóżko, ściągnął odzież. Wyżej wymieniony usiadł pokrzywdzonej na nogach, przytrzymywał za ręce, zaś Piotr Grabowski usiadł na brzuchu. Obaj napastnicy mieli zsunięte spodnie. Oskarżony wsadził następnie Marii Janik członka do ust, zaś Ireneusz Zagaja do ręki. Maria Janik zaczęła się szamotać, a gdy Piotr Grabowski wyciągnął członka z jej ust zaczęła krzyczeć. Oskarżony uderzył ją wówczas w twarz, równocześnie powiedział (używając wulgarnych słów), że i tak jej nikt nie usłyszy. Ireneusz Zagaja włożył następnie Marii Janik palce do pochwy, stwierdzając że może w ten sposób uda mu się szybciej zaspokoić. Obaj napastnicy zaczęli się śmiać, a w końcu wstali z pokrzywdzonej. Maria Janik ubrała się (zostawiając figi oraz zegarek) chciała pospiesznie opuścić pokój. Wówczas Piotr Grabowski zagrodził jej drogę, mówiąc, że puści ją dopiero wtedy, gdy będzie miał wytrysk ( dowód zeznania M. Janik k. 13 – 15, 61 – 62, 88 – 89, protokół oględzin k. 57-60, zeznania T. Wojnara k. 149/2-150). Ostatecznie oskarżony otworzył drzwi, tak że Maria Janik mogła opuścić pokój. Wtedy

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19-6-2018
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE

Ireneusz Zagaja wciągnął wyżej wymienioną do łazienki, zaczął rozpinać jej spodnie, chcąc ponownie odbyć z nią stosunek oralny. Maria Janik odpychała napastnika od siebie i krzyczała. W pewnej chwili Piotr Grabowski uchylił lekko drzwi od łazienki. Pokrzywdzona wykorzystała ten moment, otworzyła szerzej drzwi, próbowała uciec. Oskarżony złapał ją wówczas za sweter i rozdarł go. Maria Janik opuściła w końcu dom Piotra Grabowskiego, zabrała rower i odjechała (dowód zeznania M. Janik k. 13-15).

Janina Janik po powrocie z kościoła oczekiwała na córkę. Gdy pokrzywdzona dotarła do domu miała rozerwana odzież, była zdenerwowana, płakała. Janina Janik zaczęła wypytywać wyżej wymienioną co się stało. Początkowo nie uzyskała jednak żądnej odpowiedzi. Dopiero później, gdy ponownie próbowała dociec, co było przyczyna takiego zachowania i wyglądu córki, dowiedziała się ogólnie, jak przebiegało całe zajście. Maria Janik opowiedziała matce, że została wciągnięta przez Piotra Grabowskiego i Ireneusza Zagaję do nowo wybudowanego domu, przy użyciu przemocy fizycznej obaj napastnicy „dobierali się" do niej, chcieli odbyć z nią stosunek oralny ( dowód zeznania J. Janik k. 53-54, częściowo k. 150-151).

Następnego dnia rano Maria Janik w dalszym ciągu czuła się, źle, skarżyła się na ból głowy. Janina Janik stwierdziła, że o całym zajściu należy zawiadomić Policję. Pokrzywdzona próbowała nakłonić matkę do odstąpienia od tego pomysłu, przekonywała ją, że nie należy całej sprawie nadawać rozgłosu. Janina Janik była jednak konsekwentna. Po telefonicznym zgłoszeniu funkcjonariusze policji przyjechali do domu Marii Janik, zabrali ją ze sobą do komendy, zawieźli na badania lekarskie ( dowód zeznania J. Janik k. 150-151, M. Janik k. 13-15, częściowo k. 134-136, zaświadczenia lekarskie k. 3 i 33). Pokrzywdzona złożyła zawiadomienie o popełnieniu przestępstwa na jej szkodę oraz wniosek o ściganie karne Piotra Grabowskiego i Ireneusza Zagaji. Kilka dni później Maria Janik napisała pismo, z treści którego

Za zgodność z oryginałem
dnia 10-06-2019
Starszy Inspektor
Marcin Puźniak
SĄD OKRĘGOWY W RZESZOWIE 2
Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

wynikało, że chce ona cofnąć złożony wcześniej wniosek o ściganie. W trakcie dalszego postępowania pokrzywdzona wyjaśniła motywy swojej decyzji, stwierdzając że powyższe oświadczenie napisała pod namową rodziny Piotra Grabowskiego ( dowód zawiadomienie o popełnieniu przestępstwa k. 1, pisemne oświadczenie Marii Janik k. 47, zeznania M. Janik k. 51 – 62, częściowo k. 134 – 136).

Jak wynika ze sporządzonej w sprawie opinii sądowo lekarskiej, Maria Janik doznała obrażeń ciała w postaci : zasinienia na barku prawym z bolesnością palpacyjną, obrzęku i bolesności palpacyjnej w okolicy potylicy, zasinienia na lewym ramieniu, bolesności okolicy mostka, sińca na udzie prawym. Biegły podał, że opisane wyżej obrażenia naruszyły czynności narządów ciała pokrzywdzonej na okres poniżej 7 dni i mogły powstać w podanych przez nią okolicznościach ( dowód opinia sądowo lekarska k. 137-138 i k. 72).

Powyższy stan faktyczny Sąd ustalił w oparciu o zeznania Marii Janik, Janiny Janik, Sabiny Ochalskiej, Tadeusza Wojnara, oświadczenia o cofnięciu wniosku, zawiadomienia o popełnieniu przestępstwa, zaświadczenia lekarskie, opinie sądowo-lekarskie, częściowo w oparciu o wyjaśnienia Piotra Grabowskiego.

Piotr Grabowski liczy obecnie 23 lata, jest kawalerem , bezdzietnym, utrzymuje się z prac dorywczych, w przeszłości był karany za występek z art. 212 § 1 d.kk i 203 § 1 d.kk.

Oskarżony piotr Grabowski wprawdzie przyznał się do popełnienia zarzucanego mu czynu, niemniej jednak przedstawiona przez niego wersja wydarzeń prowadzi do diametralnie odmiennego wniosku.

Oceniając wyjaśnienia oskarżonego już na wstępie wskazać należy, że cechują się one znaczną niekonsekwencją. W trakcie pierwszego przesłuchania, które odbyło się 18 maja 2001r. Piotr Grabowski

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19-06-2018
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE 2

171

kategorycznie zaprzeczył, aby miał z pokrzywdzoną bliższy kontakt cielesny, aby odbywał z nią stosunek oralny. Wyżej wymieniony stwierdził, że chwilę rozmawiał z Marią Janik, a następnie pozostawiając ją z Ireneuszem Zagają udał się do starego domu aby coś zjeść.

Nieco inaczej Piotr Grabowski zrelacjonował przebieg zdarzenia w dniu 17 lipca 2001r. Wyjaśnił on wówczas, że Ireneusz Zagaja zawołał go do pomieszczenia, w którym przebywał z Marią Janik. Wyżej wymienieni byli już rozebrani, pokrzywdzona klęczała, zaś Ireneusz Zagaja stał przed nią.

Piotr Grabowski stwierdził również, że cała sytuacja tak wpłynęła na niego, że nie mógł powstrzymać emocji, również rozebrał się, złapał Marię Janik za brodę, a ta dobrowolnie wzięła jego członka do ust. Oskarżony stwierdził również, że chciał odbyć z pokrzywdzoną stosunek klasyczny, ale z uwagi na brak jej zgody, odstąpił od tego. Piotr Grabowski zaprzeczył, aby używał razem z Ireneuszem Zagają przemocy fizycznej wobec Marii Janik.

Przedstawioną wyżej wersję wydarzeń oskarżony podtrzymał w czasie rozprawy.

W ocenie Sądu relacje Piotra Grabowskiego nie polegają na prawdzie., są nielogiczne, niekonsekwentne ( o czym była już wyżej mowa), sprzeczne z zebranymi w sprawie dowodami. Na wstępie zaznaczyć należy, że oskarżony nie był w stanie wytłumaczyć skąd u Marii Janik wzięły się obrażenia ciała (opisane w opinii sądowo-lekarskiej), dlaczego miała ona poszarpaną, podartą odzież i wreszcie dlaczego w budynku, w którym rozgrywało się zajście (w pokoju na półpiętrze) znaleziony został przez funkcjonariuszy Policji zegarek oraz bielizna należąca do pokrzywdzonej. W sytuacji gdyby przedmiotowe zdarzenie rozgrywało się tak, jak przedstawia to Piotr Grabowski, a więc Maria Janik dobrowolnie odbywała by z wyżej wymienionym i jego kolegą stosunek oralny, przytoczone wyżej fakty nie miałyby miejsca.

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

SĄD OKRĘGOWY RZESZOWIE 2

Za zgodność z oryginałem dnia 19.06.2018
Starszy Inspektor Marcin Puźniak

172

Tymczasem, jak wynika z zalegającej w aktach sprawy dokumentacji lekarskiej (opinia biegłego Zbigniewa Szydłowskiego, zaświadczenie wydane przez lek. med. Annę Markocką) Maria Janik doznała obrażeń ciała w postaci zasinienia na barku prawym z bolesnością palpacyjną, obrzęku z bolesnością palpacyjną w okolicy potylicy, zasinienia na ramieniu lewym, bolesności w okolicy mostka, sińca na udzie prawym. Powyższe obrażenia korespondują z przedstawionym przez Marię Janik (w trakcie postępowania przygotowawczego) opisem zachowań poszczególnych napastników. Jak stwierdził biegły Zbigniew Szydłowski opisane wyżej obrażenia mogły powstać w okolicznościach podawanych przez pokrzywdzoną.

Z kolei z protokołu oględzin, dokumentacji fotograficznej oraz z zeznań funkcjonariusza Policji Tadeusza Wojnara jednoznacznie wynika, że w budynku należącym do oskarżonego , a konkretnie w pokoju w którym ustawione było łóżko znalezione zostały figi oraz zegarek, stanowiące własność Marii Janik.

Również przedstawione wyżej wyniki oględzin znajdują odzwierciedlenie w zeznaniach pokrzywdzonej, która podała że wykorzystując chwilową nieuwagę Piotra Grabowskiego i Ireneusza Zagaji udało jej się pospiesznie naciągnąć spodnie, a następnie pospiesznie opuścić dom.

Istotne w sprawie jest również to, że rodzina Piotra Grabowskiego przekazała Marii Janik pewną sumę pieniędzy, która miała stanowić gratyfikacje finansową za doznaną przez nią krzywdę.

Gdyby sytuacja faktycznie przebiegała tak, jak przedstawił to oskarżony, to takie zachowanie byłoby zupełnie irracjonalne.

Wyjaśnienia oskarżonego nie wytrzymują ponadto konfrontacji z zeznaniami Marii Janik, składanymi w trakcie postępowania przygotowawczego.

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

SĄD OKRĘGOWY W RZESZOWIE

Za zgodność z oryginałem
dnia 19-02-2019
Starszy Inspektor
Marcin Puźniak

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

Sąd Okręgowy w Rzeszowie
Za zgodność z oryginałem
dnia 19.06.2019
Starszy Inspektor
Marcin Puźniak

W tym miejscu zasygnalizować należy, że wyżej wymieniona podczas rozprawy zupełnie zmieniła przedstawioną wcześniej wersję wydarzeń – okoliczność ta będzie przedmiotem dalszych rozważań Sądu.

Maria Janik będąc kilkakrotnie słuchana w trakcie prowadzonego śledztwa dokładnie opisywała sposób zachowania poszczególnych napastników. Z jej relacji jednoznacznie wynikało, że rola Piotra Grabowskiego w przedmiotowym zdarzeniu nie miała charakteru drugorzędnego, wręcz przeciwnie oskarżony bardzo aktywnie uczestniczył w zajściu, wykazywał się dużą determinacją w doprowadzeniu pokrzywdzonej do obcowania płciowego, znaczną brutalnością.

Maria Janik opisała ponadto okoliczności w jakich znalazła się w budynku należącym do rodziny Grabowskich – podając, że została wciągnięta do środka przez obu napastników. Tę relację potwierdziła Janina Janik, która nie była wprawdzie świadkiem zdarzenia, niemniej jednak jego przebieg (w ogólnym zarysie) poznała w oparciu o informacje pochodzące od córki.

Faktem jest, że pokrzywdzona składając ustne zawiadomienie o popełnieniu przestępstwa, podała że weszła do domu oskarżonego, co mogłoby sugerować, że zrobiła to dobrowolnie. Nie można jednak zapomnieć, że powyższa relacja została złożona dzień po zajściu, kiedy to Maria Janik znajdowała się jeszcze w stanie silnego zdenerwowania. bolała ją głowa, a ponadto miała pewnego rodzaju wątpliwości czy złożyć wniosek o ściganie sprawców przestępstwa, których znała od wielu lat, utrzymywała z nimi stosunki koleżeńskie.

Jak już wyżej wspomniano pokrzywdzona diametralnie zmieniała swoje zeznania w czasie rozprawy przed Sądem, prezentując wersję wydarzeń bardzo korzystną dla Piotra Grabowskiego. Pomimo podjętych przez nią prób uwolnienia oskarżonego od odpowiedzialności karnej konsekwentnie zeznawała ona, że została wciągnięta do domu przez obu sprawców.

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2020
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE

W świetle przedstawionych wyżej argumentów, stwierdzić należy, że wyjaśnienia Piotra Grabowskiego nie polegają na prawdzie – są nielogiczne, brak w nich spójności, a dodatkowo podkreślić należy, że są one sprzeczne z zeznaniami Marii Janik, składanymi tak w postępowaniu przygotowawczym, jak i na rozprawie.

Pokrzywdzona opisując przebieg zajścia w dniu 7 września 2001r. podała, że rola Piotra Grabowskiego w całym zajściu ograniczała się w zasadzie do wciągnięcia jej do domu oraz przytrzymywaniu. Z kolei oskarżony wyjaśniał, że nie używał wobec wyżej wymienionej żadnej przemocy fizycznej, a jedynie ulegając emocjom wkładał jej członka do ust.

Mając na uwadze przytoczone wyżej okoliczności uznać należy, że dokonana wyżej ocena relacji Piotra Grabowskiego jest w pełni uzasadniona.

Zeznania Marii Janik złożone w trakcie śledztwa w pełni zasługują na wiarę, znajdują odzwierciedlenie w zebranych w sprawie dowodach, a w szczególności w opinii sądowo – lekarskiej, zeznaniach Janiny Janik, zeznaniach Tadeusza Wojnara.

Pokrzywdzona, pomimo pewnych oporów wynikających z dość bliskiej znajomości z Piotrem Grabowskim i Ireneuszem Zagają w dniu 17 maja 2001r. złożyła wniosek o ściganie karne w/w.

Jakkolwiek inicjatywa w tym zakresie wyszła od Janiny Janik, która wezwała do domu Policję, to ostateczna decyzja podjęta została przez samą pokrzywdzoną. W aktach sprawy znajduje się pisemne oświadczenie Marii Janik, z którego wynikało, że chce ona cofnąć złożony wcześniej wniosek. W trakcie przesłuchania w dniu 1 czerwca 2001r. pokrzywdzona wyjaśniła szczegółowo motywy takiego postępowania, stwierdzając że działała na prośbę rodziny Piotra Grabowskiego, a następnie oświadczyła, że w całości podtrzymuje złożone wcześniej zeznania.

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2019
Starszy Inspektor
Marcin Puźniak

Przytoczone wyżej okoliczności w znacznym stopniu tłumaczą również fakt zmiany zeznań przez Marię Janik przed Sądem. Niewątpliwie dodatkowym bodźcem motywującym wyżej wymienioną do przedstawienia odmiennej wersji wydarzeń była stosowana kwota pieniędzy, którą Maria Janik otrzymała od rodziny oskarżonego.

Zdaniem Sądu zeznania pokrzywdzonej złożone w czasie rozprawy, za wyjątkiem tej części, w której opisuje ona wstępną fazę zdarzenia oraz podaje, że oskarżony przytrzymywał ją za ręce, nie zasługują na wiarę, są nielogiczne, sprzeczne z zebranymi dowodami, w tym również wyjaśnieniami oskarżonego.

Maria Janik próbowała obarczyć całą odpowiedzialnością za feralne zdarzenie z dnia 16 maja 2001r. Ireneusza Zagaję, jednocześnie nie potrafiła w sposób racjonalny wyjaśnić rozbieżności występujące w jej relacjach. Argumentacja wyżej wymienionej , że była w szoku, że bała się Prokuratora, jest zupełnie nieprzekonywująca. Zdyskredytowana została również wersja Marii Janik, wskazująca na to, iż składając zeznania w postępowaniu przygotowawczym znajdowała się pod działaniem środków uspokajających otrzymanych od siostry Anny. Janina Janik zeznała bowiem, że Maria Janik nigdy takich środków nie brała, zaś jej starsza córka Anna od 10 lat mieszka w Giedlarowej i niezbyt często przyjeżdża do domu.

Reasumując uznać należy, że przedstawiona wyżej weryfikacja zeznań pokrzywdzonej koresponduje z zebranymi w sprawie dowodami oraz z zasadami logiki i doświadczenia życiowego.

Zeznania Waleriana Grabowskiego uznać należy zasadniczo za wiarygodne, aczkolwiek dotyczą kwestii drugorzędnych, nie mających bezpośredniego związku z zajściem z dnia 16 maja 2001r.

Zeznania Janiny Janik zasadniczo polegają na prawdzie, aczkolwiek dostrzega się w nich pewne rozbieżności. To ostatnie stwierdzenie dotyczy

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2016
Starszy Inspektor
Marcin Puźniak
SĄD OKRĘGOWY W RZESZOWIE

w szczególności relacji świadka w zakresie przedstawienia roli poszczególnych sprawców zdarzenia z dnia 16 maja 2001r. W trakcie postępowania przygotowawczego świadek ten dość dokładnie przekazał informacje uzyskane od córki, przytaczając nawet dość intymne szczegóły całego zajścia. Na rozprawie wyżej wymieniona w sposób dość zachowawczy relacjonowała przebieg zdarzenia, a wyjaśniając istniejące w jej zeznaniach różnice, zasłaniała się niepamięcią. Taka postawa świadka może wynikać z faktu utrzymywania dość bliskich kontaktów z rodziną Piotra Grabowskiego, jak również ze zmiany nastawienia córki Marii Janik do całej sprawy. Warto jeszcze zaznaczyć, że Janina Janik podawała, że pokrzywdzona skopana została po głowie, gdy tymczasem Maria Janik nie wspominała o takim fakcie. Rozważając tą kwestię, trzeba mieć na uwadze okoliczności, w jakich pokrzywdzona opowiadała matce, o tym co zdarzyło się w domu Piotra Grabowskiego – a więc lęk, silne zdenerwowanie, ból głowy, a nawet obawa przed reakcja najbliższych.

Zeznania Tadeusza Wojnara w pełni polegają na prawdzie. Świadek ten starał się w miarę dokładnie opisać przebieg oględzin, przeprowadzonych na miejscu zajścia. Należy przy tym dodać, że Tadeusz Wojnar jest osoba postronną, nie zainteresowaną w rozstrzygnięciu sprawy, na korzyść którejkolwiek ze stron.

Opinię biegłego Zbigniewa Szydłowskiego uznać należy za pełną i jasną w zakresie opisu obrażeń ciała występujących u Marii Janik oraz mechanizmu ich powstania. W pozostałej części opinia ta zawiera pewne niespójności, w pewnych fragmentach cechuje się niekonsekwencją – szczegółowe motywy dokonanej oceny omówione zostaną w dalszej części uzasadnienia.

Zeznania Krystyny Zagaji Sąd uznał za wiarygodne. Wyżej wymieniona nie była bezpośrednim świadkiem zajścia, nie posiadała na jego

Sąd Okręgowy w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2019
Starszy Inspektor
Marcin Puźniak

temat bliższych informacji, niemniej jednak jej relacja miała dość istotne znaczenie dla oceny zeznań Marii Janik. Otóż Krystyna Zagaja stwierdziła, że w czasie rozmowy pokrzywdzona powiedziała jej, że do Ireneusza Zagaji „nic nie ma", co niewątpliwie tłumaczyć należy w ten sposób, że nie ma do niego pretensji.

Zeznania świadka Sabiny Ochalskiej zasadniczo polegają na prawdzie, z tym że niewiele wnoszą do sprawy. Wyżej wymieniona potwierdziła okoliczność, że Maria Janik w dniu 16 maja 2001r. korzystała z jej roweru.

Analiza zebranych w sprawie dowodów, zdaniem Sądu , pozwala na przyjęcie, że oskarżony Piotr Grabowski swoim zachowaniem wyczerpał znamiona przestępstwa z art. 197 § 1 kk i art. 158 § 1 kk w zw. z art. 11 § 2 kk.

Omawiając znamiona strony przedmiotowej stwierdzić należy, że czynność sprawcza polegała na doprowadzeniu Marii Janik do obcowania płciowego. Zgodnie z utrwalonym poglądem „obcowanie płciowe" obejmuje swoim zakresem znaczeniowym akty spółkowania oraz jego surogaty, które traktować można jako ekwiwalentne w spółkowaniu. Zgwałcenie, o którym mowa w art. 197 § 1 kk ma zatem miejsce, gdy czynność sprawcza polega na bezpośrednim kontakcie płciowym ciała sprawcy z organami płciowymi ofiary lub z tymi częściami jej ciała, które sprawca traktuje równoważnie i na których lub za pomocą których wyładowuje swój popęd seksualny.

W świetle powyższego poglądu stwierdzić należy, że pod pojęciem „obcowanie płciowe" mieści się również stosunek oralny.

Dla bytu zgwałcenia niezbędny jest szczególny sposób działania sprawców. W przedmiotowej sprawie realizacja popędu seksualnego przybrała postać przemocy. Zasadniczą cechą przemocy jest obiektywna zdatność zastosowanych przez sprawcę środków do wywołania stanu przymusu. Przedmiotem oddziaływania było ciało ofiary.

Jak wynika z akt sprawy Maria Janik została siłą wciągnięta przez Ireneusza Zagaję i Piotra Grabowskiego do domu, tam była przytrzymywana za ręce, uderzona w twarz, popychana na ścianę. W wyniku tych działań doznała ona obrażeń ciała w postaci zasinienia na barku prawym, bolesności palpacyjnej okolicy potylicy z obrzękiem, zasinienia na ramieniu lewym, bolesności okolicy mostka i zasinienia na udzie prawym, co naruszyło czynności narządów jej ciała na okres poniżej 7 dni. Zdaniem Sądu opisane wyżej zachowanie obu sprawców narażało Marię Janik na nastąpienie skutku określonego w art. 157 § 1 kk.

Faktem jest, że słuchany na rozprawie biegły Zbigniew Szydłowski początkowo stwierdził, że brak jest podstaw do przyjęcia wyżej wymienionego narażenia, a równocześnie omawiając bardziej szczegółowo powyższą kwestię, przyznał że bardziej niż inne części ciała narażona na poważne urazy jest okolica potylicy. Podkreślić również należy, że z treści opinii wynikało, iż w realiach sprawy realne było narażenie Marii Janik na skutek określony w art. 156 § 1 kk , przy czym rzecz jasna skutek taki nie wystąpił. Godzi się ponadto zauważyć, że lekarz bezpośrednio badający pokrzywdzoną nie opisał wielkości powstałego u niej obrzęku, który mógł być maskowany przez włosy, zaś biegły Zbigniew Szydłowski stwierdził, że nie zna bliższych okoliczności, które doprowadziły do powstania urazu. Jednocześnie sformułował wniosek , że wyżej wymienione obrażenie zadane zostało z niewielką siłą.

Podane okoliczności uzasadniają zatem dokonaną wyżej ocenę przedmiotowej opinii.

W ocenie Sądu – biorąc pod uwagę posiadaną przez sprawców przewagę fizyczną atakowane przez sprawców okolice ciała pokrzywdzonej przyjąć należy, że istnieje podstawa do stwierdzenia, że Maria Janik był bezpośrednio

Za zgodność z oryginałem dnia 19.06.2018
Starszy Inspektor Marcin Puźniak
SĄD OKRĘGOWY W RZESZOWIE
Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski sędzia

narażona na niebezpieczeństwo nastąpienia skutku z art. 157 § 1 kk – co sprawcy sobie w pełni uświadamiali.

„Zgwałcenie" jest przestępstwem skutkowym. Doprowadzenie ofiary do obcowania płciowego jako skutek zgwałcenia wyznaczający moment popełnienia tego przestępstwa polega na wywołaniu takiego stanu rzeczy, gdy sprawca podjął już akt spółkowania lub jego ekwiwalent. Przenosząc powyższe rozważania na grunt przedmiotowej sprawy, stwierdzić należy, że skutek w postaci doprowadzenia Marii Janik do odbycia stosunku oralnego nastąpił.

W ocenie Sądu Piotr Grabowski działał umyślnie z zamiarem bezpośrednim. Niewątpliwie takie okoliczności jak zabór pokrzywdzonej roweru, wciągnięcie jej do niezamieszkałego domu, używanie przemocy, wskazują na celowe jego nastawienie w kierunku doprowadzenia pokrzywdzonej (która praktycznie w trakcie całego incydentu stawiała opór sprawcom) do niedobrowolnego aktu seksualnego.

Na gruncie aktualnie obowiązującego kodeksu karnego dla przyjęcia typu kwalifikowanego przestępstwa zgwałcenia wystarczające jest współsprawstwo dwóch osób. Jak już wyżej zaznaczono Piotr Grabowski współdziałał ze swoim kolegą Ireneuszem Zagają ( co do którego materiały śledztwa zostały wyłączone do odrębnego postępowania).

Zdaniem Sądu w przedmiotowej sprawie oczywista jest możność przypisania winy oskarżonemu rozumianej jako zarzucalność procesu decyzyjnego w sytuacji rozpoznawalności bezprawności czynu i możliwości postąpienia w sposób zgodny z normami sankcjonowanymi. Piotr Grabowski jest człowiekiem dorosłym, o ukształtowanej osobowości, posiadającym odpowiedni poziom doświadczenia życiowego, odpowiednie wykształcenie, wolnym od chorób psychicznych w sensie psychozy. Powyższe pozwala na

Za zgodność z oryginałem
dnia 19-06-2019
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

uznanie, że brak było po jego stronie atypowej sytuacji motywacyjnej w zakresie nie dania posłuchu normie prawnej.

Wymierzając Piotrowi Grabowskiemu karę 2 lat i 6 miesięcy pozbawienia wolności Sąd uwzględnił jako okoliczności obciążające: rodzaj i charakter naruszonego dobra, znaczny rozmiar wyrządzonej przestępstwem szkody, niską motywację sprawcy, działanie w sposób zaplanowany, uprzednią karalność, okoliczność, że sprawca znajdował się pod wpływem alkoholu, intensywność, etapowość przedmiotowego zdarzenia, obranie przez wyżej wymienionego poniżającej i szczególnie dolegliwej dla pokrzywdzonej formy obcowania płciowego.

Jako okoliczności łagodzące Sąd uwzględnił natomiast wyrażoną przez Piotra Grabowskiego skruchę, materialne zrekompensowanie Marii Janik wyrządzonej szkody, prowadzony dotychczas przez oskarżonego w miarę ustabilizowany tryb życia.

Wszystkie wskazane wyżej okoliczności rozpatrywane łącznie, uzasadniają twierdzenie, że dolegliwość orzeczonej wobec Piotra Grabowskiego kary nie przekracza stopnia jego winy, który uznać należy za wysoki, (uwzględniając ciężar gatunkowy jego czynu i warunki osobiste), uwzględnia stopień społecznej szkodliwości jego czynu (który niewątpliwie jest znaczny), oraz cele zapobiegawcze i wychowawcze, jakie kara ma spełnić.

Zgodnie z treścią art. 63 § 1 kk Sąd zaliczył Piotrowi Grabowskiemu na poczet orzeczonej kary okres rzeczywistego pozbawienia wolności w sprawie.

Rozstrzygnięcie o kosztach oparte zostało o przepis art. 627 kpk. Na koszty te składają się: ryczałt za doręczenia, opłata za udzielenie informacji z rejestru skazanych, należności biegłego, opłata wymierzona w oparciu o przepis art. 2 ust. 1 pkt 5 ustawy o opłatach w sprawach karnych.

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2019
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE

208

Sygn. akt **II AKa 161/01**

# WYROK

# W IMIENIU RZECZYPOSPOLITEJ POLSKIEJ

Dnia 20 grudnia 2001 r.

Sąd Apelacyjny II Wydział Karny w Rzeszowie
w składzie:

Przewodniczący: **Wiceprezes S.A. Zbigniew Kallaus ( spr. )**
Sędziowie: **SSA Ryszard Kot**
**SSA Zbigniew Śnigórski**
Protokolant : **Elżbieta Dąbrowska**

przy udziale Prokuratora Prokuratury Apelacyjnej w Rzeszowie
- **Janusza Jarosiewicza**

zył strony
a następnie

po rozpoznaniu w dniu 20 grudnia 2001 r.
sprawy **Piotra Grabowskiego**
oskarżonego z art. 197 § 3 kk i art. 158 § 1 kk w zw. z art. 11 § 2 kk
na skutek apelacji wniesionych przez obrońcę oskarżonego i Prokuratora Rejonowego w Leżajsku od wyroku Sądu Okręgowego w Rzeszowie z dnia 3 października 2001 r. , sygn. akt II K 54/01

Za zgodność z oryginałem
dnia 19.06.2018

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE 2

209

I. **u t r z y m u j e** zaskarżony wyrok w mocy ,

II. **z w a l n i a** oskarżonego Piotra Grabowskiego od ponoszenia kosztów sądowych za II instancję , a kosztami związanymi z apelacją Prokuratora obciąża Skarb Państwa .

Za zgodność z oryginałem
dnia 19-06-2012
Starszy Inspektor
Marcin Puźniak
SĄD OKRĘGOWY W RZESZOWIE 2
Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

210

**Sygn.akt II AKa 161/01**

# U Z A S A D N I E N I E

Piotr Grabowski został oskarżony o to , że w dniu 16 maja 2001r. w Starym Mieście pow. leżajskiego , działając wspólnie i w porozumieniu z drugą ustaloną osobą, używając przemocy polegającej na rzuceniu o ścianę, przetrzymywaniu i uderzaniu ręką po twarzy, doprowadził Marię Janik do obcowania płciowego , powodując u niej obrażenia ciała w postaci zasinienia na barku prawym, bolesności palpacyjnej w okolicy potylicy z obrzękiem, zasinienia na ramieniu lewym, bolesności okolicy mostka i zasinienia na udzie prawym, co naruszyło czynności narządów ciała na okres nie przekraczający 7 dni, narażając ją na bezpośrednie niebezpieczeństwo nastąpienia skutku określonego w art. 157 § 1 kk

tj o przest. z art.197 § 3 kk i art.158 § 1 kk w zw. z art.11 § 2 kk .

Wyrokiem z dnia 3 października 2001r., sygn.akt II K.54/01 Sąd Okręgowy w Rzeszowie uznał oskarżonego Piotra Grabowskiego za winnego popełnienia czynu wyżej opisanego a stanowiącego przestępstwo z art. 197 § 3 kk i art. 158 § 1 kk w zw. z art. 11 § 2 kk i za czyn ten na mocy art. 197 § 3 kk w zw. z art. 11 § 3 kk skazał go na karę 2 (dwóch) lat i 6 (sześciu) miesięcy pozbawienia wolności .

Na zasadzie art. 63 § 1 kk zaliczył oskarżonemu na poczet orzeczonej kary pozbawienia wolności okres rzeczywistego pozbawienia wolności w sprawie od dnia 17 maja 2001r. godz. 13,20 do dnia 3 października 2001r.

Na zasadzie art. 627 kpk zasądził od oskarżonego na rzecz Skarbu Państwa koszty sądowe w kwocie 608,61 zł .

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2018
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE 2

Od powyższego wyroku wniesione zostały apelacje Prokuratora Rejonowego w Leżajsku oraz obrońcy oskarżonego Piotra Grabowskiego .

Apelacja Prokuratora **z a s k a r ż a** ten wyrok w części orzeczenia o karze na niekorzyść oskarżonego , **z a r z u c a** mu : rażącą niewspółmierność kary wymierzonej oskarżonemu przez orzeczenie kary tylko 2 lat i 6 m-cy pozbawienia wolności oraz **w n o s i** o zmianę zaskarżonego wyroku przez wymierzenie oskarżonemu Piotrowi Grabowskiemu kary 4 lat i 6 m-cy pozbawienia wolności i orzeczenie na zasadzie art. 46 § 2 kk nawiązki na rzecz pokrzywdzonej w kwocie 1.000 zł.

Natomiast apelacja obrońcy oskarżonego Piotra Grabowskiego

**I.** **z a s k a r ż a** powyższy wyrok w części dotyczącej orzeczenia o karze ,

**II.** **z a r z u c a** wyrokowi rażącą niewspółmierność orzeczonej kary pozbawienia wolności w stosunku do celów jakie kara ta winna spełniać w zakresie prewencji szczególnej i społecznego oddziaływania, a w szczególności pominięcie okoliczności wymienionych w art. 53 § 3 kk i nieuwzględnienie przesłanek określonych przepisem art. 54 § 1 kk.

**III.** **w n o s i** na podstawie przepisu art. 437 § 1 kpk zmianę orzeczenia w zaskarżonej części poprzez wymierzenie reformatoryjnym wyrokiem wobec w/w oskarżonego kary pozbawienia wolności w dolnej granicy ustawowego zagrożenia z warunkowym zawieszeniem jej wykonania na stosowny okres .

**Sąd Apelacyjny rozważył , co następuje :**

Obie apelacje nie zasługują na uwzględnienie .

Odnośnie apelacji Prokuratora zasadnie powołuje ona ustalone przez Sąd okoliczności w postaci naruszonego przez oskarżonego dobra prawnego (wolność w sferze seksualnej), niską motywację sprawcy, działanie pod wpływem alkoholu oraz poniżającą formę obcowania (stosunek oralny), której została poddana pokrzywdzona .

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem dnia 19.06.2018
Starszy Inspektor Marcin Puźniak

SĄD OKRĘGOWY W RZ...

Również niespornym faktem jest to, że oskarżony poprzez zabranie roweru pokrzywdzonej podstępnie zwabił ją do domu, jak też to, że oskarżony działał z drugą osobą .

Natomiast w odniesieniu do oskarżonego Grabowskiego podniesiony na jego niekorzyść argument wielokrotności aktów nierządnych odbiega od ustaleń faktycznych dokonanych przez Sąd. Jak ustalił Sąd I instancji, oskarżony ten włożył Marii Janik członka do ust (str. 2 – 3 uzasadnienia zaskarżonego wyroku , k.168 – 169). Większość cytowanych wyżej argumentów zawartych w uzasadnieniu apelacji Prokuratora dotyczy ustawowych znamion przypisanego oskarżonemu czynu z art. 197 § 3 kk i art. 158 § 1 kk w zw. z art. 11 § 2 kk bądź należy do jego istoty (działanie wspólne z drugą osobą, motywacja w postaci chęci zaspokojenia popędu płciowego, obcowanie płciowe w formie zastępczej, godzenie w wolność pokrzywdzonej, użycie wobec niej przemocy) .

Natomiast podwyższa stopień szkodliwości czynu oskarżonego fakt, że oprócz przemocy posłużył się on drugą postacią czynu z art. 197 kk, jaką stanowi podstęp oraz brutalny sposób działania (uderzenie znajomej koleżanki w twarz) .

Wszystkie podniesione w apelacji okoliczności, w tym uprzednia karalność oskarżonego działanie pod wpływem alkoholu Sąd uwzględnił przy wymiarze kary orzeczonej wobec oskarżonego . (str. 14 uzasadnienia zaskarżonego wyroku k. 180) .

Wymierzając oskarżonemu karę 2 lat i 6 m-cy pozbawienia wolności, nie orzekł Sąd I instancji wobec oskarżonego kary rażąco łagodnej, zwłaszcza biorąc pod uwagę stosunek pokrzywdzonej do oskarżonego . Słuchana na rozprawie pokrzywdzona Maria Janik wyraźnie pomniejszyła rolę oskarżonego Piotra Grabowskiego w relacji do jego rzeczywistego zachowania ustalonego przez Sąd .

Zmieniając swe zeznania pokrzywdzona stwierdziła , że na tle agresywnego zachowania drugiego sprawcy , zachowanie Piotra Grabowskiego ograniczyło się do przytrzymywania jej za ręce i „nic więcej"

Prezes Sądu Okręgowego w Rzeszowie

Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2018
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE

213

jej nie robili" (k. 134) . Pokrzywdzona wyraziła się nawet : „Chciałam nawet przeprosić Piotrka. Nie mam do niego żadnych roszczeń, żadnego żalu" (k. 135) .

W tym zakresie zgodzić się trzeba z apelacją obrońcy oskarżonego, że w kk z 1997r. wśród okoliczności szczególnie istotnych dla wymiaru kary wprowadzono – zachowanie się pokrzywdzonego . Na gruncie art. 53 § 2 i 3 kk zachowanie się pokrzywdzonego (szeroko rozumiane) urosło do rangi okoliczności mającej mieć szerszy wpływ na wymiar kary (por. Kodeks karny, część ogólna pod red. G.Rejman – Uniwersytet Warszawski , wyd. C.H. Beck, Warszawa 1999, s. 925) .

Natomiast błędnie w apelacji zarzucono, że Sąd I instancji nie uwzględnił przesłanek określonych przepisem art. 54 § 1kk, bowiem przepis ten wprowadzający priorytet oddziaływania wychowawczego wobec sprawcy młodocianego, nie ma zastosowania do oskarżonego Piotra Grabowskiego .
Oskarżony Piotr Grabowski jest ur. 10 grudnia 1978r. i w dacie przypisanego mu czynu – 16 maja 2001r. miał ukończone 22 lata. Art. 115 § 10 kk stanowi, że młodocianym jest sprawca, który w chwili popełnienia czynu zabronionego nie ukończył 21 lat i czasie orzekania w pierwszej instancji 24 lat .

Kodeks z 1997r. zmienił pojęcie młodocianego . O tym, czy sprawca jest młodocianym, decyduje przede wszystkim wiek w czasie popełnienia czynu, a nie wiek w chwili orzekania . Tylko dodatkowym kryterium oprócz tego pierwszego jest nadto nieukończenie przez sprawcę 24 lat w chwili orzekania w sądzie I instancji .

Na tle powołanych okoliczności sprawy nie można się zgodzić z tą apelacją , że Sąd wymierzył oskarżonemu karę rażąco surową . Groźne zjawiska występujące w zakresie zgwałceń nakazują docenić przy wymiarze kary wzmożony stopień ich szkodliwości społecznej . Należy uwzględnić przy ocenie tego stopnia nasilenie stosowanej przemocy np. czy przerodziła się ona w bicie jak to wystąpiło w działaniu oskarżonego Piotra Grabowskiego, który uderzył pokrzywdzoną w twarz.

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2019
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE 2

Okolicznościami szczególnie obciążającymi jest zuchwały sposób działania, do którego należy uprowadzenie kobiety podstępem jak też wynaturzone formy zaspokajania popędu płciowego (por. uchwałę połączonych Izb Karnej i Wojskowej Sądu Najwyższego z dnia 21 grudnia 1972r. – VI KZP 64/72), które to okoliczności obciążają oskarżonego . Wreszcie sam ustawodawca określił wysoki stopień szkodliwości społecznej zgwałceń zbiorowych, czyniąc typ kwalifikowany w art. 197 § 3 kk w wypadku działania dwóch sprawców .

W zakresie prokuratorskiego wniosku apelacyjnego o orzeczenie nawiązki z art. 46 § 2 kk – brak jest wymaganego w tym zakresie wniosku pokrzywdzonej .

Mając na uwadze powyższe okoliczności zaskarżony wyrok utrzymano w mocy .

Orzeczenie wydano na podstawie art. 437 § 1 kpk i art. 456 kpk, zaś orzeczenie o kosztach sądowych za II instancję znajduje uzasadnienie w treści art. 624 § 1 kpk, gdyż oskarżony nie posiada żadnego majątku .

Za zgodność z oryginałem
dnia 19-06-2020
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE * 2 *

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

SĄD OKRĘGOWY
Wydział II Karny
35-959 Rzeszów, skr. poczt. 298
Pl. Śreniawitów 3

Oznaczenie Sądu

79

Komenda Powiatowa
Policji

w Leżajsku

(dokładny adres)

Data 19.05.2003 r.
Sygn. akt II K 54/01

## NAKAZ DOPROWADZENIA

Sąd Okręgowy w Rzeszowie Wydział II Karny

stosownie do zarządzenia z dnia 19.05.2003 r. ..........19..........r.

polecił doprowadzić przymusowo do Zakładu Karnego w Rzeszowie-Załężu ~~Sądu Okręgowego w Rzeszowie, Pl. Śreniawitów 3~~

na niezwłocznie ..........19.......... na godz. ..........

Piotra Grabowskiego s. Waleriana i Heleny,
(imię i nazwisko)
urodz. 10.12.1978 r. w Nowej Sarzynie,
przebywającego w zamieszkałego Stare Miasto 198 gm. Leżajsk

skazanego prawomocnym wyrokiem tut. Sądu
jako ~~oskarżonego~~ w sprawie II K 54/01 na karę 2 lat i 6 miesięcy pozbawienia wolności, za przest. z art. 197§3 kk i art. 158§1 kk w zw. z art. 11§ 2 kk

Osobie przymusowo doprowadzonej należy okazać niniejszy nakaz.

Pieczęć

PRZEWODNICZĄCY
Wydziału II Karnego
Sędzia:
Edward Kuś
Sędzia Sądu Okręgowego

Nakaz doprowadzenia został mi okazany dnia ..........19..........r.

(podpis)

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2018
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE 2

EXT_GRABOWSKI_036

87

Sygn. akt II Ko 335/03

# POSTANOWIENIE

**Dnia 17 lipca 2003 r.**

Sąd Okręgowy w Rzeszowie II Wydział Karny w składzie:

Przewodniczący: SSO Janusz Cenda
Protokolant: Marzena Knap

przy udziale Prokuratora Prokuratury Okręgowej w Rzeszowie – Ryszarda Bajaka

po rozpoznaniu na posiedzeniu w dniu 17 lipca 2003 r.

**z urzędu**
sprawy Piotra Grabowskiego skazanego wyroku wyrokiem Sądu Okręgowego w Rzeszowie z dnia 3 października 2001 r. – sygn. akt II K. 54/01 i wyrokiem Sądu Apelacyjnego w Rzeszowie z dnia 20 grudnia 2001 r. – sygn. akt II AKa 161/01 za przestępstwo przewidziane w art. 197 § 3 kk i art. 158 § 1 kk w zw. z art. 11 § 2 kk na karę 2 lat i 6 miesięcy pozbawienia wolności
**w przedmiocie zarządzenia poszukiwania oskarżonego litem gończym**

na podstawie art. 279 § 1 kpk

**postanawia**

**zarządzić** poszukiwania Piotra Grabowskiego s. Waleriana i Haliny zd. Dobosz, ur. 10 grudnia 1978 r. w Nowej Sarzynie, zam. Stare Miasto 198,

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2019
Starszy Inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE 2

8(

skazanego prawomocnym wyrokiem Sądu Okręgowego w Rzeszowie z dnia 3 października 2001 r. – sygn. akt II K. 54/01 listem gończym.

## Uzasadnienie

Przytoczonym wyżej wyrokiem oskarżony został skazany na karę 2 lat i 6 miesięcy pozbawienia wolności za przestępstwa przewidziane w art. 197 § 3 kk i art. 158 § 1 kk.

W związku z orzeczoną karą pozbawienia wolności skazany został wezwany do odbycia kary, lecz nie zgłosił się do zakładu karnego w wyznaczonym terminie.

Wobec skazanego Sąd Okręgowy w Rzeszowie zarządził poszukiwania litem gończym, który następnie uchylił, gdyż skazany wniósł o odroczenie wykonania kary w związku ze swoimi schorzeniami.

Postanowieniem z dnia 10 września 2002 r. – sygn. akt II Ko 284/02, Sąd Okręgowy w Rzeszowie uwzględnił wniosek skazanego i odroczył mu wykonanie orzeczonej kary pozbawienia wolności na okres 6 miesięcy, tj. do dnia 11 kwietnia 2003 r.

Mimo upływu terminu skazany nie zgłosił się do zakładu karnego, jak również nie złożył wniosku o ewentualne dalsze odroczenie wykonania kary pozbawienia wolności.

Z nadesłanej informacji policji wynika, że skazany nie przebywa w swoim miejscu zamieszkania, a z uzyskanego wywiadu wynika, że przebywa on poza granicami kraju we Włoszech i termin jego powrotu do kraju nie jest znany.

Skoro skazany nie wykonał na niego nałożonego obowiązku należało orzec jak w części dyspozytywnej postanowienia.

Prezes Sądu Okręgowego
w Rzeszowie

Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2018
Starszy inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE • 2 •

92

SĄD OKRĘGOWY
Wydział II Karny
35-959 Rzeszów, skr. poczt. 298
Pl. Śreniawitów 3

Oznaczenie Sądu

Dnia 2003-07-23 r.
Sygn. akt II K 54/01

W odpowiedzi należy podać datę pisma i sygn. akt

Komenda Powiatowa Policji w Leżajsku
(dokładny adres)

LIST GOŃCZY

Imię: Piotr
Nazwisko: Grabowski
Przezwisko:
Dzień, miesiąc i rok urodzenia: 10.12.1978 r.
Imię ojca: Walerian matki: Halina
z domu: Dobosz
Miejsce urodzenia: Nowa Sarzyna gmina:
województwo: podkarpackie
Ostatnie miejsce pracy:
Ostatnie miejsce zamieszkania (dokładny adres): Stare Miasto 198 pow.Leżajsk woj.podkarpackie
Adres rodziców lub rodziny:
Zawód:
Rysopis:
wzrost: nos:
włosy: usta:
twarz: uszy:
czoło: zarost:
oczy:
szczególne znaki:
~~Przestępstwo zarzucane~~ Skazany za przest.z art.197§3 kk i art.158 § 1 kk w zw.z art.11 § 2 kk

Prezes Sądu Okręgowego w Rzeszowie
Rafał Puchalski
sędzia

Za zgodność z oryginałem
dnia 19.06.2019
Starszy Inspektor
Marcin Puźniak

1*) Postanowienie o aresztowaniu wydano dnia .................................. 199..... r.

Wszystkie władze cywilne i wojskowe powinny zatrzymać i dostawić poszukiwanego do Sądu .................................. w ..................................

2*) Poszukiwany na mocy wyroku Sądu Okręgowego

w Rzeszowie

z dnia 3 października 2001 r. 199..... r. Sygn. II K 54/01

ma odbyć karę 2 lat i 6 miesięcy pozbawienia wolności.

Poszukiwanego należy zatrzymać i doprowadzić do najbliższego zakładu karnego.

pieczęć

PRZEWODNICZĄCY
Wydziału II Karnego
Edward Kuś
Sędzia Sądu Okręgowego

Uwaga: Do listu gończego rozesłanego w sprawie oskarżonego, co do którego zapadło postanowienie o tymczasowym aresztowaniu należy dołączyć odpis aktu oskarżenia; zaś do listu gończego rozesłanego za prawomocnie skazanym należy dołączyć odpis prawomocnego wyroku.

*) W razie rozesłania listu gończego za oskarżonym, co do którego zapadło postanowienie o tymczasowym aresztowaniu należy na druku skreślić tekst oznaczony Nr 2; w razie zaś rozesłania listu gończego za prawomocnie skazanym należy skreślić tekst oznaczony nr 1.

MS/K od-13 Punktgraf Lublin, ul. Łęczyńska 51, tel. 76-10-44 w. 102.

Za zgodność z oryginałem
dnia 19.06.2019
Starszy inspektor
Marcin Puźniak

SĄD OKRĘGOWY W RZESZOWIE • 2 •

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

TRANSLATOR OF ENGLISH
mobile ph +48 602 68 66 58

Certified translation from Polish
[Translator's comments are included within square brackets.]

Provincial Court in Rzeszów
II Criminal Division
Plac Śreniawitów 3
35-959 Rzeszów
Poland
tel. 0048 17 87 56 263
fax. 0048 17 87 56 264
e-mail: sis@rzeszow.so.gov.pl

**REQUEST**
**FOR ESTABLISHING THE EXACT LOCATION,**
**PROVISIONAL ARREST AND FOR EXTRADITION**
**OF A SENTENCED PERSON IN ORDER TO ENFORCE A SENTENCE**

The Provincial Court in Rzeszów, Poland,
under Art. 12 of an Annex to Agreement of June 9, 2006 signed at Warsaw between the Republic of Poland and the United States of America regarding applying an agreement between the Republic of Poland and the United States of America on Mutual Legal Assistance in criminal matters, on July 10, 1996 pursuant to Article 3(2) of a Treaty on Mutual Legal Assistance in criminal matters between the European Union and the United States of America, signed at Washington DC on June 25, 2003,
and also under Article 12 and Article 1 of an Annex to Agreement between the Republic of Poland and the United States of America regarding applying an agreement between the Republic of Poland and the United States of America on extradition, on July 10, 1996 pursuant to Article 3(2) of a Treaty on extradition signed at Washington DC on June 25, 2003,

**request to:**
- **ESTABLISH THE EXACT LOCATION (THE PLACE OF STAY),**
- **PROVISIONAL ARREST,**
- **EXTRADITION OF THE POLISH CITIZEN**

**Piotr Jan GRABOWSKI (Piotr Jan GRABOWSKI)**
[The first name and surname of the requested person appears twice, first in its inflected form and then it is repeated in the brackets in its base nominative form.]

PERSONAL DATA:

male, the son of Walerian (Walerian – [nominative case form]) and Halina (Halina – [nominative case form]) maiden Dobosz;
born on December 10, 1987 in Poland in the town of Nowa Sarzyna;
his last known address in Poland in the town of Stare Miasto 198, 37-330 Leżajsk;
Polish identification number PESEL [The abbreviation PESEL stands for: Universal Electronic System for Registration of Population]: 78121014833;
He might make use of a Polish ID: DD6372428;
He might use a Polish passport: AA9581400 with the expiry date: March 24, 2007;
He might use an alias: WALEREK

[Translator's stamp with signature]

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 502 69 88 58

ADDITIONAL INFORMATION:

According to the report received from the Police Piotr Jan GRABOWSKI is in New York, USA together with:

1. a wife – Barbara Wioletta Grabowska (Barbara Wioletta GRABOWSKA) maiden name: Berestka, the daughter of Jan and Ewa of maiden name Trojnar; born on July 17, 1981 in the town of Nowa Sarzyna, Poland;
2. the son – Kacper Jakub Grabowski (Kacper Jakub GRABOWSKI).

Piotr Jan GRABOWSKI and Barbara Wioletta GRABOWSKA contracted a marriage in New York, USA and their son Kacper Jakub GRABOWSKI goes to school.

The Police has also provided a piece of information regarding the fact, that the mother of Piotr Jan GRABOWSKI – Halina GRABOWSKA is supposed to stay in New York, USA, at the address: 13-18 50th AVE JACKSON HEIGHTS N.Y.11370; the last telephone contact (phone number) with Halina GRABOWSKA in the USA: 0017185076937.

GROUNDS FOR ADDRESSING THIS REQUEST:

By the enforceable judgment II K 54/01 of October 3, 2001 of the Provincial Court in Rzeszów Piotr Jan GRABOWSKI was found guilty of the following: on May 16, 2001 in Stare Miasto acting together and in agreement with another identified person, using violence in the form of throwing Maria Janik against a wall, holding her down and hitting her in the face with his hand, forced Maria Janik to have a sexual intercourse, and caused physical injuries to her such as bruising on the right shoulder, a palpable pain in the occipital area with edema, bruising on the left arm, some pain in the sternum and bruising on the right thigh, all of which constituted the physical injuries which did not exceed 7 days, and it exposed her to a direct danger of a consequence referred to in Article 157 § 1 of the Penal Code, i.e. committing an offence of Article 197 § 3 and Article 158 § 1 in connection with Article 11 § 2 of the Penal Code.

**The extract from the Penal Code provisions:**
Offences against Life and Health – Article 158 § 1 of the Penal Code,
Offences against Sexual Liberty and Decency – Article 197 § 3 of the Penal Code.

**Article 11 § 2 of the Penal Code:**
If an act has features specified in two or more provisions of penal law, the court shall sentence the perpetrator for one offence on the basis of all concurrent provisions.

**Article157 § 1 of the Penal Code:**
Whoever causes a physical injury or some impairment to health other than specified in Article 156 § 1, shall be subject to the penalty of the deprivation of liberty for a term of between 3 months and 5 years.



SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 882 68 65 58

**Article 158 § 1 of the Penal Code:**
Whoever participates in a brawl or a beating in which a human being is exposed to the immediate danger of the loss of life or to a consequence referred to in Article 156 § 1 or in Article 157 § 1, shall be subject to the penalty of deprivation of liberty for up to 3 years.

**The text of Article 197 § 3 of the Penal Code at the time of passing the judgment II K 54/01:**
If the perpetrator commits the rape specified in § 1 or 2, with particular cruelty, or commits it in common with other person, shall be subject to the penalty of the deprivation of liberty for a term of between 2 and 12 years.

**The current text of Article 197 § 3 of the Penal Code:**
If the perpetrator commits the rape with other person, shall be subject to the penalty of the deprivation of liberty for a term that is not shorter than 3 years.

**The change in the text of Article 197 § 3 of the Polish Penal Code does not affect the legal situation of the requested person.**

**Piotr Jan GRABOWSKI was sentenced to a 2 year-and-6 month penalty of deprivation of liberty by the judgment II K 54/01.**

**The actual time spent in custody with reference to this case, from May 17, 2001 to October 3, 2001 was credited towards the adjudicated sentence.**

**THE DESCRIPTION OF FACTS OF THE CASE:**

On the 16th of May 2001 the aggrieved Maria Janik, having done shopping, was returning home. On the way she met Piotr Grabowski and Ireneusz Zagaja who were under the influence of alcohol, who asked her to stop by for a while and to get off the bike. When Maria Janik went along with it, the above-mentioned men took her bike and went towards the defendant's house. The aggrieved followed them because she wanted to get the bike back as it belonged to her friend Sabina Ochalska. In the end these three people reached an unfinished residential building on the property of Piotr Grabowski (evidence from M. Janik's testimony file p. 13-15, 61-62, 88-89, in part file p.134-135, S. Ochalska's testimony, file p. 138/2 and 55, in part P. Grabowski's account file p.132-133, 23-25, 92-95). Maria Janik, not sensing anything wrong sat with the defendant and Ireneusz Zagaja on the little wall and was smoking cigarettes with them. At one point the above-mentioned men violently grabbed her by the arms and dragged her into the house, and more specifically to a room that was on the landing level. Piotr Grabowski and Ireneusz Zagaja started to undo Maria Janik's brasserie, were putting their hands under her clothes saying that she was the sexiest girl in Stare Miasto. Maria Janik attempted to break free from the assailants, but her efforts were ineffective. Ireneusz Zagaja asked a friend to leave the room. Piotr Grabowski went out for a while closing the door behind him. Ireneusz Zagaja took off the aggrieved woman's sweater. Then Maria Janik pushed him against the wall, started to cry and scream. Ireneusz Zagaja not being able to overpower the above-mentioned woman called Piotr Grabowski. The defendant, having entered the room, closed the door and then together with a friend tried to knock [continued overleaf]

MARTA NOWACKA SWORN TRANSLATOR OF ENGLISH Nowacka M. PhD

SWORN MARTA NOWACKA
TRANSLATOR
OF ENGLISH
mobile ph +48 602 69 66 58

the aggrieved over on the bed. As a result of Maria Janik' self-defence, the assailants' attempts did not bring any result. Piotr Grabowski announced to the aggrieved that only when she 'gave them a blow job' would they let her go, and he started to unzip her trousers. Maria Janik pushed the above-mentioned men away, ran to the window and began calling for help. Then Irenusz Zagaja hit the aggrieved in such a way that she in turn hit the wall with her head and after that he with the friend pushed her onto the bed and took off her clothes. The above-mentioned man sat on the aggrieved person's laps, held her by the arms and Piotr Grabowski sat on her abdomen. The two men had their trousers down. Then the defendant inserted his penis into Maria Janik's mouth and Ireneusz Zagaja to her palm. Maria Janik started to tussle and when Piotr Grabowski took his penis out of her mouth she began to scream. Then the defendant hit her in the face and at the same time added - using a vulgar language - that nobody was going to hear her. Next Ireneusz Zagaja put his fingers inside Maria Janik's vagina saying that perhaps in such a way he would be able to satisfy her more quickly. The two assailants began laughing and at last they got up off the aggrieved. Maria Janik put her clothes on (leaving her briefs and a watch) as she wanted to leave the room fast. Then Piotr Grabowski got into her way saying that only after he ejaculated would he let her go (evidence from M. Janik's testimony file p. 13-15, 61-62, 88-89, an inspection of the crime scene report file p. 57-60, T. Wojnar's testimony file p. 149/2-150). In the end the defendant opened the door wide, which was enough for Maria Janik to leave the room. Then Ireneusz Zagaja dragged the above-mentioned to the bathroom and started to unzip her trousers because he wanted to have an oral intercourse with her. Maria Janik was screaming and pushing the assailant away from her. At one moment Piotr Grabowski opened the bathroom door slightly. The aggrieved seized the moment, opened the door more and tried to escape. The defendant managed to grab her sweater and tore it off. Eventually, Maria Janik left the house of Piotr Grabowski, took the bike and rode off (evidence from M. Janik's testimony file p. 13-15). Janina Janik, having returned from church, was awaiting her daughter. When the aggrieved reached home she had her clothes torn, was under great stress and was crying. Janina Janik started to ask the above-mentioned about what had happened. At first she did not receive any answer. Only later, when she was trying to find out the reason for her daughter unusual behavior and appearance did she get to know without much detail what had occurred. Maria Janik told her mother that she had been dragged to the newly built house by Piotr Grabowski and Ireneusz Zagaja, by physical force the two assailants sexually assaulted her and wanted to have an oral intercourse with her (evidence from testimony of J. Janik file p.53-54, in part file p. 150-151). The following day in the morning Maria Janik still did not feel well and suffered from a pain in the head. Janina Janik decided to report the assault to the Police. The aggrieved tried convincing her mother to abandon this idea, explaining that they the whole incident did not need publicity. However, Janina Janik was consistent. After she reported to the police by phone, police officers came to Maria Janik's house, took her to the police headquarters, drove her for a medical check-up (evidence from J. Janik's testimony file p. 150-151, M. Janik file p. 13-15, in part file p. 134-136, a medical certificate file p. 3 and 33). The aggrieved filed a notification of a crime having been committed against her and a motion for prosecuting Piotr Grabowski and Ireneusz Zagaja. A few days later Maria Janik wrote a document, from the text of which it appeared that she wanted to withdraw the previously filed motion for criminal prosecution. In the course of further proceedings the aggrieved gave the reasons for such a decision, claiming that she had written the above-mentioned statement at the prompting of Piotr Grabowski's family (evidence from a notice of committing a crime file p.1, a written statement of Maria Janik file p. 47, testimony of M. Janik file p.51-62, in part file p. 134-136). [continued overleaf]

MARTA NOWACKA TŁUMACZ PRZYSIĘGŁY JĘZYKA ANGIELSKIEGO
Nowacka M. PhD

SWORN TRANSLATOR OF ENGLISH
mobile ph +48 602 69 66 52

According to a medico-legal report prepared for this case Maria Janik received physical injuries such as: bruising on the right shoulder with a palpable pain, edema and palpable pain in the occipital area, bruising on the left arm, pain in the sternum and a bruise on the right thigh. An expert witness reported that the above-mentioned injuries resulted in impairment of the functioning of bodily organs of the aggrieved for the period no longer than 7 days and could have been inflicted in the circumstances reported by her (medico-legal report evidence file p. 137-138 and file p. 72).

The court established the above-mentioned facts on the basis of the testimonies of the following: Maria Janik, Janina Janik, Sabina Ochalska, Tadeusz Wojnar; a statement of withdrawal (of a motion for prosecution), a notification of committing an offence, a medical certificate, medico-legal reports, and in part on the basis of Piotr Grabowski's account.

The defense counsel of Piotr Jan Grabowski and the prosecutor lodged appeals against the judgment II K 54/01.

By judgment II AKa 161/01 of December 20, 2001 the Court of Appeals in Rzeszów upheld the judgment II K 54/01 of October 3, 2001 of the Provincial Court in Rzeszów.

The judgment II K 54/01 of October 3, 2001 became final and binding on December 20, 2001.

Piotr Jan Grabowski did not collect a court summons to report to a penal institution that had been sent to him by post, and it appeared from post notes regarding this letter that the addressee had left the country.

On January 17, 2002, the Court instructed the Police to carry out an order for the convicted person to compulsorily appear in the penal institution.

The police document of February 21, 2002 informed the Court that the summons of forced appearance of the convicted person in the penal institution had not been answered because to their knowledge the convicted person did not live in his place of residence and was likely to have left the country.

By the decision of June 3, 2002 the court issued an order to search for the convicted person with a 'wanted' notice and on June 12, 2002 a 'wanted' notice for the convicted person was issued.

On August 7, 2002 the defense counsel of the convicted person filed a motion for deferment of sentence enforcement, the adjudicated penalty of deprivation of liberty.

By decision of September 10, 2002 the court, deferred the adjudicated penalty of deprivation of liberty for a period of 6 months that is to April 11, 2003.

On April 24, 2003 the Court sent to the convicted person a summons of April 23, 2003 to report to a penal institution in order to serve an adjudicated custodial sentence. On April 30, 2003, an adult household member (father) collected this letter and obliged himself to give it to the addressee.

On May 16, 2003 the Court received from the administrative office of the Penal Institution in Rzeszów a notification of the fact the convicted person had not reported to the penal institution in order to serve an adjudicated custodial sentence.

SWORN TRANSLATOR OF ENGLISH
mobile ph +48 662 69 56

On May 19, 2003 the Court again ordered the Police the forced appearance of the convicted person in the penal institution.

The Police informed the Court with the document of July 7, 2003 that the order of the forced appearance of the convicted person in the penal institution was not executed due to the fact that information available indicated that the convicted person did not live in his place of residence and he was likely to have left the country.

By the decision of July 17, 2003 the Court one more time issued an order to search for the convicted person in the form of a 'wanted' notice and on July 23, 2003 again a 'wanted' notice was issued.

The Police informed the Court with the document of September 29, 2003 that information available indicated that the convicted person did not live in his place of residence and he was likely to be living in Italy.

By the decision of November 14, 2003 the Court ordered the Police the search of the convicted person's last residence in the country in order to arrest the convicted person and alternatively to find some items that could make it possible to establish the convicted person's place of stay.

The Police informed the Court, with the document of November 25, 2003 that as a result of the search of the place of the convicted person's last residence in the country a phone number of the convicted person's sister, who was staying in Italy, was obtained and phone numbers and an address of the convicted person's mother staying in the United States of America.

The Court, with the document of March 23, 2004 instructed National Interpol Office - Central Police Headquarters to commence international search for the convicted person.

The Court issued a European arrest warrant on the convicted person by the decision of June 23, 2008.

By the decision of January 28, 2010 the Court suspended the conduct of the proceedings of the sentence enforcement with regard to the convicted person.

**Extract from the Criminal Enforcement Code:**

**Article 15.** of the Criminal Enforcement Code:
**§ 2.** If an impediment arises which prevents the conduct of proceedings for a lengthy period and, in particular, if the convicted person cannot be arrested or cannot participate in the proceedings because of mental disease or other long-term, serious illness, the proceedings shall be suspended in full or in part until such an impediment is removed.

By the decision of July 15, 2016 the Court gave its consent to the disclosure of personal data and the image of the convicted person on important grounds of public interest.

The convicted person was informed about his procedural rights and in the course of proceedings he exercised his procedural rights, including the assistance of self-appointed legal defense counsels, who filed procedural documents and participated in the proceedings.

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 69 66 52

**The remaining length of the penalty of deprivation of liberty is 2 years 1 month and 12 days of deprivation of liberty.**

**The time limit on the enforcement of the penalty of deprivation of liberty for the offence in the judgment II K54/01 passes on December 20, 2026 because the enforcement proceedings were suspended and the convicted person evades the execution of the penalty of deprivation of liberty.**

**Piotr Jan Grabowski did not serve an adjudicated penalty of deprivation of liberty because he had fled from Poland and keeps hiding from the Polish justice.**

**The extract from provisions of the Criminal Code:**

**Article 103. § 1.** A penalty may not be executed if, from the time when the judgment has become final and binding, the following number of years has elapsed:
1) 30 - in case of a sentence to a penalty of deprivation of liberty for a period exceeding 5 years or to a more severe penalty;
2) 15 - in case of a sentence to a penalty of deprivation of liberty not exceeding 5 years;
3) 10 - in case of a sentence to another penalty.

**The extract from the provisions of the Criminal Enforcement Code:**

**Article 15.** of the Criminal Enforcement Code:
**§ 3.** The suspension of the enforcement proceedings does not extend the statute of limitations unless the convicted person evades the execution of the penalty. The period of extending the statute of limitations cannot exceed 10 years.

**Pursuant to Article 9bis of Extradition Agreement we request to protect sensitive information such as the personal data and address of the aggrieved party Maria Janik in the course of all proceedings on account of the necessity to protect her right to privacy.**

**We inform that we refrained from collecting the statement from the aggrieved party to confirm if the person who is exhibited in the photograph is the same person who was convicted in this case and whom the request for extradition concerns. At the same time we inform that the aggrieved party at all stages of proceedings (both at the proceedings with the prosecutor and at the judicial proceedings) repeatedly indicated Piotr Jan Grabowski as a perpetrator of the offence. Our justification for refraining from collecting the above-mentioned statement from the aggrieved party is to spare the victim mental suffering, which would likely follow as a result of bringing back traumatic memories of events she suffered many years ago.**



TRANSLATOR OF ENGLISH

mobile ph +48 602 68 66 58

**ATTACHEMENTS TO THE REQUEST:**

- a photograph of Piotr Jan Grabowski taken in the years 2016-2017,
- a copy of a final and binding judgment II K 54/01 of October 3, 2001 with reasons for judgment,
- a copy of an appeal judgment II AKa 161/01 of December 20, 2001 with reasons for judgment,
- a copy of a summons of forced appearance of the convicted person in the penal institution of May 19, 2003,
- a copy of a decision of July 17, 2003 to search for the convicted person by a 'wanted' notice,
- a copy of a 'wanted' notice of July 23, 2003.

We do not have a dactyloscopic file of the convicted Piotr Jan Grabowski.

Should you need any further explanations, additional information or documents, do not hesitate to contact us.

Yours faithfully,
[an illegible signature]
Marta Krajewska-Drozd
The Judge of the Provincial Court in Rzeszów, Poland
June 19, 2019

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

[On the right side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski*, Judge, [an illegible signature]



SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 69 66 52

[In this page there is a photograph of a man.]
[Below a photograph]

**A photograph of the convicted person Piotr Jan Grabowski, taken in the years 2016-2017, that was obtained by the police in the course of their investigation.**

**I hereby certify that the photograph shows a person, that was convicted in this case and that the request for extradition concerns this person.**

[an illegible signature]
Marta Krajewska-Drozd
The Judge of the Provincial Court in Rzeszów, Poland
June 19, 2019

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

[On the right side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

*I, Marta Nowacka, PhD, Licensed Sworn Translator of the Minister of Justice, Licence No. TP/2214/06 of 19th October 2006, do hereby certify that the foregoing translation truly and correctly corresponds with the contents of the document in Polish that I have been presented with.*

22156 characters = 20 pages

Rzeszów, August 22, 2019

Reg. no. 7/2019

Sworn Translator, PhD
Marta Nowacka, *Nr TP/2214/06*
Nowacka Marta, PhD



mobile ph +48 602 68 66 88

**File reference No. II K. 54/01**

[In the center, there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

[On the right, there is a stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

19 [hand-written]

[In the center, there is an emblem of the Republic of Poland, an eagle with a crown.]

**JUDGMENT**
**IN THE NAME OF THE REPUBLIC OF POLAND**

Dated: October 3, 2001

The Provincial Court in Rzeszów, II Criminal Division composed of the following:
Presiding judge - Marzena Ossolińska-Pręs Delegated Judge of the Regional Court
Lay magistrates – Mieczysław Błoniarz
Józef Gubernat
The recording clerk – Joanna Bolanowska

with the participation of Prosecutor of the Regional Prosecution Office in Leżajsk – Lucyna Pełka,

having reviewed, at the trials on September 7 and October 3 2001,

the case of :

**Piotr Grabowski** - the son of Walerian and Halina maiden Dobosz, born on December 10, 1987 in Nowa Sarzyna, the place of residence: Stare Miasto 198, with a criminal record

charged with the following:
on May 16, 2001 in Stare Miasto, a county of Leżajsk, together and in agreement with another identified person, using violence in the form of throwing Maria Janik against a wall, holding her down and hitting her in the face with his hand, forced Maria Janik to have a sexual intercourse, and caused physical injuries to her such as bruising on the right shoulder, palpable pain in the occipital area with edema, bruising on the left arm,

[At the bottom of the page there is the following information on the publisher of the form]: MS/K judgment 1. Judgment of the Court of First Instance. Publishing house No. 1, 02-521 Warsaw, Rakowiecka 37, tel. (0-22) 640-81-70, fax. (0-22) 849-94-97, Order 1108. Approved for publication on March 17, 2000.

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 68 66 58

pain in the sternum and bruising on the right thigh, all of which constituted the physical injuries which did not exceed 7 days, and it resulted in a direct danger of a consequence referred to in Article 157 § 1 of the Penal Code,

i.e. committing an offence of Article 197 § 3 of the Penal Code and Article 158 § 1 of the Penal Code in connection with Article 11 § 2 of the Penal Code.

**finds**

**the defendant Piotr Grabowski guilty** of committing the afore-mentioned offence of Article 197 § 3 of the Penal Code and Article 158 § 1 of the Penal Code in connection with Article 11 § 2 of the Penal Code and

for this offence under Article 197 § 3 of the Penal Code in connection with Article 11 § 3 of the Penal Code

**sentences**

him to a 2-(two)-year-and-6-(six)-month penalty of deprivation of liberty,

Pursuant to Article 63 §1 of the Penal Code the period of an actual deprivation of liberty in this case from May 17, 2001, 1.20 pm to October 3, 2001 is credited to the imposed penalty of deprivation of liberty.

In accordance with Article 627 of the Criminal Procedure Code the Court **awards** the defendant the court costs of 608.61 PLN (six hundred and eight PLN zloty and 61 PLN groszy) for the benefit of the State Treasury.

[three illegible signatures]

[At the bottom of the page:]
[On the left there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

[In the center, there is a stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak

[On the right, the round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

*I, Marta Nowacka, PhD, Licensed Sworn Translator of the Minister of Justice, Licence No. TP/2214/06 of 19th October 2006, do hereby certify that the foregoing translation truly and correctly corresponds with the contents of the document in Polish that I have been presented with.*

3984 characters = 4 pages
Rzeszów, August 22, 2019
Reg. no. 8/2019

Sworn Translator, PhD
Marta Nowacka, *Nr TP/2214/06*

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 68 66 68

[hand-written:] 167

File act no. II K 54/01

# REASONS FOR JUDGMENT

**of October 3, 2001**

On the 16th of May 2001 the aggrieved Maria Janik, having done shopping, was returning home. On the way she met Piotr Grabowski and Ireneusz Zagaja who were under the influence of alcohol, who asked her to stop by for a while and to get off the bike. When she went along with it, the above-mentioned men took her bike and went towards the defendant's house. The aggrieved followed them as she wanted to get the bike back because it belonged to her friend Sabina Ochalska. In the end these three people reached the unfinished residential building on the property of Piotr Grabowski (evidence fom M. Janik's testimony file p.13-15, 61-62, 88-89, in part file p. 134-135, S. Ochalska's testimony, file p. 138/2 and 55, in part P. Grabowski's account file p. 132-133, 23-25, 92-95).

Maria Janik, not sensing anything wrong sat with the defendant and Ireneusz Zagaja on the little wall and was smoking cigarettes with them. At one point the above-mentioned men violently grabbed her by the arms and dragged her into the house, and more specifically to a room that was on the landing level. Piotr Grabowski and Ireneusz Zagaja started to undo Maria Janik's brasserie, were putting their hands under her clothes, saying that she was the sexiest girl in Stare Miasto. [continued overleaf]

[At the bottom of the page:]
[On the left side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

[The stamp with the following contents]: I hereby certify that this is a true copy of the original document.
dated: 19.06.2019 [the date is hand-written]
[illegible signature]
Senior Court Clerk
Marcin Puźniak

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.



TRANSLATOR
OF ENGLISH

mobile ph +48 602 68 66 57

[hand-written:] 168

Maria Janik attempted to break free from the assailants, but her efforts were ineffective. Ireneusz Zagaja asked a friend to leave the room. Piotr Grabowski went out for a while closing the door behind him. Ireneusz Zagaja took off the aggrieved woman's sweater. Then Maria Janik pushed him against the wall, she started to cry and scream. Ireneusz Zagaja not being able to overpower the above-mentioned woman called Piotr Grabowski. The defendant, having entered the room, closed the door and then together with a friend tried to knock the aggrieved over on the bed. As a result of Maria Janik' self-defence, the attackers' attempts did not bring any result. Piotr Grabowski said to the aggrieved that only when she 'gave them a blow job' would they let her go and he started to unzip her trousers. Maria Janik pushed the above-mentioned men away, ran to the window and began calling for help. Then Irenusz Zagaja hit the aggrieved in such a way that she in turn hit the wall with her head and after that he with the friend pushed her onto the bed and took off her clothes. The above-mentioned man sat on her laps, held her by the arms and Piotr Grabowski sat on her abdomen. The two men had their trousers down. Then the defendant inserted his penis into Maria Janik's mouth and Ireneusz Zagaja to her palm. Maria Janik started to tussle and when Piotr Grabowski took her penis out of her mouth she began to shout. The defendant hit her in the face and at the same time added - using a vulgar language - that nobody was going to hear her. Next Ireneusz Zagaja put his fingers inside Maria Janik's vagina saying that perhaps in such a way he would be able to satisfy her more quickly. The two assailants began laughing and at last they got up off the aggrieved. Maria Janik put her clothes on (leaving her briefs and a watch) as she wanted to leave the room fast. Then Piotr Grabowski got into her way saying that only when he ejaculates would he let her go (evidence from M. Janik's testimony file p. 13-15, 61-62, 88-89, an inspection of the crime scene report file p. 57-60, T. Wojnar's testimony k 149/2-150). In the end the defendant opened the door wide, which was enough for Maria Janik to leave the room. Then [continued overleaf]

[At the bottom of the page]:
[On the left side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

[The stamp with the following contents]: I hereby certify that this is a true copy of the original document, dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA

mobile ph +48 602 68 66 56

Ireneusz Zagaja dragged the above-mentioned to the bathroom and started to unzip her trousers because he wanted to have an oral intercourse with her. Maria Janik pushed the assailant away from her and started to scream. At one moment Piotr Grabowski opened the bathroom door slightly. The aggrieved seized the moment, opened the door more and tried to escape. The defendant managed to grab her sweater and tore it off. Eventually, Maria Janik left the house of Piotr Grabowski, took the bike and rode off (evidence from M. Janik's testimony file p. 13-15). Having returned from church Janina Janik was awaiting her daughter. When the aggrieved came home she had her clothes torn, was under great stress and was crying. Janina Janik started to ask the above-mentioned about what had happened. At first she did not receive any answer. Only later, when she tried to find out the reason for her daughter unusual behavior and appearance did she get to know in general what had occurred. Maria Janik told her mother that she had been dragged to the newly built house by Piotr Grabowski and Ireneusz Zagaja, by physical force the two assailants had sexually assaulted her and wanted to have an oral intercourse with her (evidence from testimony of J. Janik file p.53-54, in part file p. 150-151). The following day in the morning Maria Janik still did not feel well and suffered from a pain in the head. Janina Janik decided to report the assault to the Police. The aggrieved tried to convince her mother to abandon this idea, explaining that the whole incident did not need to be broadcast. However, Janina Janik was consistent. After she reported to the police by phone, police officers came to Maria Janik's house and took her to the police station, drove her for a medical check-up (evidence from J. Janik's testimony file p. 150-151, M. Janik file p.13-15, in part file p. 134-136, a medical certificate file p. 3 and 33). The aggrieved filed a notification of a crime having been committed against her and a motion for criminal prosecution of Piotr Grabowski and Ireneusz Zagaja. A few days later Maria Janik wrote a document, from the text of which [continued overleaf]

[At the bottom of the page]:
[The stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak.

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

[On the right side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski*, Judge, [an illegible signature]

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA mobile ph +48 602 68 66 56

170 [hand-written]

it appeared that she wanted to withdraw the previously filed motion for criminal prosecution. During a further investigation the aggrieved gave the reasons for this decision, claiming that she had written the above-mentioned statement at Piotr Grabowski's family's prompting (evidence from a report of a crime file p.1, a written statement of Maria Janik file p. 47, testimony of M. Janik file p. 51-62, in part file p. 134-136).

According to a medico-legal report prepared for this case Maria Janik received physical injuries such as: bruising on the right shoulder with a palpable pain, edema and palpable pain in the occipital area, bruising on the left arm, pain in the sternum and a bruise on the right thigh. An expert witness reported that the above-mentioned injuries resulted in impairment of the functioning of bodily organs of the aggrieved for the period no longer than 7 days and could have been inflicted in the circumstances reported by her (medico-legal report evidence file p.137-138 and file p.72).

The court established the above-mentioned facts on the basis of the testimonies of the following: Maria Janik, Janina Janik, Sabina Ochalska, Tadeusz Wojnar; a statement of withdrawal (of a motion for prosecution), a notification of committing an offence, a medical certificate, medico-legal reports, and in part on the basis of Piotr Grabowski's account.

Piotr Grabowski is currently a 23 year-old bachelor, with no children, does casual odd jobs, and in the past was convicted of committing an offence of Article 212 § 1 of a former Penal Code [of 1969] and 203 §1 of a former Penal Code [of 1969].

The defendant Piotr Grabowski admittedly owned up to having committed the act that he was charged with, nevertheless his version of events leads to a completely different conclusion.

On evaluating the explanations of the defendant it should be indicated at the very beginning that they are characterized by a significant lack of consistency. In the course of the first hearing, which took place on May 18, 2001, Piotr Grabowski [continued overleaf]

[At the bottom of the page]:
[On the left side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski*, Judge, [an illegible signature]

[The stamp with the following contents]: I hereby certify that this is a true copy of the original document.; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak.

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

TRANSLATOR
OF ENGLISH
mobile ph +48 602 68 66 58

categorically denied that he had had a closer physical contact with the aggrieved and denied that had had an oral intercourse with her. The above-mentioned said that for a moment he was talking to Maria Janik and then he left her with Ireneusz Zagaja and went to the old house to eat something.

On July 17, 2001 Piotr Grabowski recounted the course of this event in a slightly different way. He then explained that Ireneusz Zagaja had called him to the room in which he was with Maria Janik. The above-mentioned had already been naked, the aggrieved kneeled down and Ireneusz Zagaja stood in front of her.

Piotr Grabowskich stated that the whole situation had affected him in such away that he could not suppress his emotions, undressed and took Maria Janik by her chin and she took his penis into her mouth of her own free will. The defendant also admitted that he had wanted to have a classic intercourse with the aggrieved but on account of her disagreement he abandoned it. Piotr Grabowski denied having used physical force together with Ireneusz Zagaja against Maria Janik.

The defendant sustained the above-mentioned version of events at the trial.

In the assessment of the Court, Piotr Grabowski's accounts are not consistent with the truth, are illogical and incoherent (what have been mentioned above), contradictory to the evidence that have been collected in that case. To begin with, it should be emphasized that the defendant was not able to explain how the physical injuries (included in the medico-legal report) had been inflected on Maria Janik, why her clothes had been ripped and torn and why, after all, in the building, in which the incident had taken place (a room on the landing level) the aggrieved person's watch and underwear were found by the police officers. If the even in question had occurred as recounted by Piotr Grabowski, that is if Maria Janik of her own free will had had an oral intercourse with the above-mentioned and his friend, the above-mentioned facts would have not taken place. [continued overleaf]

[At the bottom of the page]:
[On the left side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski*, Judge, [an illegible signature]

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

[The stamp with the following contents]: I hereby certify that this is a true copy of the original document.; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak.

MARTA NOWAK PRZYSIĘGŁY JĘZYKA

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 68 66 58

172 [hand-written]

However, in the light of the medical records included in the case files (Zbigniew Szydłowski - the expert's opinion, the certificate issued by Anna Markocka, MD) Maria Janik received physical injuries in the form of bruising on the right shoulder with some palpable pain, edema with some palpable pain in the occipital area, bruising on the left arm, pain in the sternum and bruising on the right thigh. The above-mentioned injuries correspond to the description of the individual perpetrators' actions that were given by Maria Janik (in the course of preliminary proceedings). Zbigniew Szydłowski, the expert stated that the above-mentioned physical injuries could have been caused in the circumstances that had been depicted by the aggrieved.

Additionally, the visual inspection report, photographic documentation and Tadeusz Wojnar's - the police officer's testimony – all of these unanimously conclude that in the building that belongs to the defendant, more precisely in the room with a bed, Maria Janik's possessions such as a watch and female briefs were found.

The above-mentioned findings of the visual inspection correspond to the aggrieved person's testimony in which she stated that thanks to one moment of not paying attention by Piotr Grabowski and Ireneusz Zgraja, she had managed to put on her trousers quickly and leave the house fast.

It is also an essential fact in the case that Piotr Grabowski's family gave Maria Janik a certain amount of money, which was supposed to financially gratify the harm that had been suffered by her.

If the situation had taken place as described by the defendant, such an action would have been completely irrational.

The defendant's explanations do not hold up when confronted with Maria Janik's testimonies that were given in the course of preliminary proceedings. [continued overleaf]

[At the bottom of the page:]
[On the left side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.
[The stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak.

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 68 66 56

173 [hand-written]

[At the top of the page]:
[On the left side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.
[The stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak.

It should also be emphasized that at a trial the above-mentioned aggrieved completely changed the earlier version of events – this fact will be the subject of the Court's further consideration.

At several hearings in the course of relevant investigation Maria Janik in detail described the actions of the individual perpetrators. In the light of her accounts, Piotr Grabowski's role in the event in question had not been secondary, quite the opposite the defendant very actively participated in this incident, had shown considerable brutality and great determination to force the aggrieved to have a sexual intercourse with him.

Moreover, Maria Janik described the circumstances in which she found herself in the building, the property of the Grabowski's family and stated that she had been dragged inside the house by the two assailants. This account was confirmed by Janina Janik who admittedly had not been a witness of the event, nevertheless she had got to know its general course on the basis of her daughter's description.

The fact is that the aggrieved person while making an oral notification of committing the offence, stated that she had entered the house of the defendant, what could suggest that she had done it of her own free will. It cannot be forgotten that the above-mentioned account was done one day after the incident, when Maria Janik was under high stress, had a headache, and also had some sort of doubts if she should file a motion for prosecution of the offenders, whom he had known for many years and had been friends with.

As presented above, the aggrieved was completely changing her testimonies at the court trial, and she presented the description of events that was very advantageous to Piotr Grabowski. In spite of her attempts to make the defendant not liable for the crime, she consequently testified that she had been dragged to the house by two perpetrators. [continued overleaf]

MARTA NOWACKA TŁUMACZ PRZYSIĘGŁY JĘZYKA ANGIELSKIEGO
Nowacka M, PhD

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 68 66 56

[At the top of the page]:
[On the left side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

[The stamp with the following contents]: I hereby certify that this is a true copy of the original document. dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

In the light of the above-mentioned arguments, it should be alleged that Piotr Grabowski's accounts are not consistent with the truth, are illogical and they also lack consistency; in addition, it should be emphasized that they are contradictory to Maria Janik's testimony, that had been given in preparatory proceedings and also at a trial.

The aggrieved, describing the course of the incident on the 7th of September 2001 stated that in the whole incident Piotr Grabowski' role had been essentially limited to dragging her into the house and holding her down. On the other hand, the defendant explained that he had not used any form of physical violence against the above-mentioned woman, but as he was succumbing to emotions, he was inserting his penis into her mouth.

Having taken the above-mentioned circumstances in to account, it should be acknowledged that the above-mentioned assessment of Piotr Grabowski's accounts is fully justified.

Maria Janik's testimony that was given during the investigation deserves to be fully trusted, corresponds to the evidence gathered in this case and in particular in the medico-legal report, Janina Janik's testimony and Tadeusz Wojnar's testimony.

The aggrieved, despite some doubts resulting from being in close acquaintance with Piotr Grabowski and Ireneusz Zagaja, filed a motion for prosecution of the above-mentioned men on May 17, 2001.

It is true that Janina Janik initiated filing this motion, because she called the police to her house, however, the final decision was taken by the aggrieved herself. In case files there is Maria Janik's written statement, which implies that she wanted to withdraw a motion that she had earlier filed. At the hearing on June 1, 2001, the aggrieved explained in detail the reason for such an action, and said that she had acted at the request of Piotr Grabowski's family and then stated that she fully abode by her earlier testimony. [continued overleaf]

MARTA NOWACKA TŁUMACZ PRZYSIĘGŁY JĘZYKA ANGIELSKIEGO

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA

mobile ph +48 602 58 66 58

[At the top of the page]:
[On the left side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

[The stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak.

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

The above-mentioned circumstances to a considerable extent provide an explanation of Maria Janik's change of testimony before the Court. Undoubtedly, the substantial amount of money, which Maria Janik had received from the defendant's family, was an additional incentive that prompted the above-mentioned to provide a different version of events.

In the Court's opinion the testimony of the aggrieved person given at a trial - excluding that part in which she describes the initial phase of the incident and states that the defendant was holding her arms down - does not deserve to be trusted, is not logical, and is contrary to the collected evidence as well as contrary to the defendant's accounts.

Maria Janik was trying to make Ireneusz Zagaja entirely responsible for this unfortunate incident of May 16, 2001 and at the same time she was not able to explain in a rational way the discrepancies in her accounts. The arguments of the above-mentioned person, that she was in a state of shock, was afraid of the Prosecutor, are totally unconvincing. Maria Janik's version of events, implying that at the time of giving her testimony in the preliminary proceedings she was under the influence of tranquilizers that she had received from her sister Anna, was discredited. Janina Janik testified that Maria Janik had never been taking such medicines and that her elder daughter, Anna had lived in Giedlarowa for 10 years and did not often visit her family home.

To sum up, we shall acknowledge that the above-mentioned verification of testimonies of the aggrieved corresponds with the evidence collected in this case, the laws of logic and life experience.

Walerian Grabowski's testimony should generally be regarded as credible, although it concerns secondary matters, that do not have a direct connection with the incident of May 16, 2001.

Janina Janik's testimony is generally consistent with the truth, although some discrepancies can be noted. The divergence concerns especially [continued overleaf]

Nowacka, M. PhD

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 662 68 66 ..

[At the top of the page]:
[On the left side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

[The stamp with the following contents]: I hereby certify that this is a true copy of the original document. dated: 19.06.2019 [the date is hand-written]
[illegible signature], Senior Court Clerk, Marcin Puźniak

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

the witness' account of the role of the individual perpetrators of the event of May 16, 2001. In the course of preliminary proceedings, this witness submitted quite detailed pieces of information that she had received from her daughter, containing even very intimate details of the whole incident. At a trial the above-mentioned person was giving an account of the event in a very cautious manner and in explaining the discrepancies existing in her testimony she covered them by failure to recall. Such a conduct of the witness can result from being in close contacts with Piotr Grabowski's family and also from the fact that Maria Janik's daughter changed her attitude to the whole matter. It is also noteworthy that Janina Janik reported that the aggrieved had been kicked in the head several times whereas Maria Janik did not mention such a fact. On considering this matter, one needs to be bear in mind the circumstances in which the aggrieved was telling her mother about what had happened in Piotr Grabowski's house – that is fear, being under great stress, a headache and even feeling anxious about the reaction of her family members.

Tadeusz Wojnar's testimony is completely consistent with the truth. This witness made an attempt to describe in detail the course of the inspection that had been done at the place of incident. It should be emphasized that Tadeusz Wojnar who acts as an outsider, is not interested in deciding a case in favor of any party.

Zbigniew Szydłowski' opinion deserves to be recognized as complete and clear in terms of the description of Maria Janik's physical injuries and the cause of these injuries. In the latter part of this opinion a lack of cohesion and lack of coherence in certain excerpts can be observed – a detailed examination of the said opinion will be included in the further part of the present reasons for judgment.

Krystyna Zagaja's testimony was acknowledged as credible. The above-mentioned was not a direct eye-witness of the incident, did not have any particulars relating to it,

[continued overleaf]



[At the top of the page]:
[On the left side there is a stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

[The stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak.

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

however, her account was significant for the assessment of Maria Janik's testimony. Krystyna Zagaja stated that during conversation the aggrieved told her that: "she had nothing against" Ireneusz Zagaja, which should undoubtedly be interpreted as: she had no grudge against him.

Sabina Ochalska's testimony is generally consistent with the truth but it does not contribute much to the case. The above-mentioned confirmed the circumstance of Maria Janik's use of her bike on May 16, 2001.

In the Court's opinion, the examination of the evidence collected in the case is sufficient to conclude that the defendant Piotr Grabowski's action met the features of a criminal offence of Article 197 § 1 of the Penal Code and Article 158 § 1 of the Penal Code in connection with Article 11 § 2 of the Penal Code.



In the discussion concerning the essentials of the aspect of the offence as to the act it should be acknowledged that the causative act consisted in subjecting Maria Janik to a sexual activity. According to the established view 'sexual activity' comprises coition and its surrogates which can be treated as equivalent to coition. Rape, as referred to in Article 197 § 1 of the Penal Code occurs when a causative act consists in a direct sexual contact of a perpetrator's body with sexual organs of a victim or those parts of his/her body, that are treated as equivalent to sexual organs or on which or by means of which the perpetrator satisfies his/her sexual drive.

In the light of the above-mentioned view it should be acknowledged that the term 'sexual activity' also comprises an oral intercourse.

The specific action of perpetrators is essential for it to be referred to as rape. In the case in question the satisfying of the sexual drive gave rise to the act of violence. The objective usefulness of the measures taken by the perpetrator to create a state of coercion is a fundamental characteristic of the act of violence. The victim's body was impacted by this

[continued overleaf]

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 68 66 58

As it appears from case files, Maria Janik was by force dragged by Ireneusz Zagaja and Piotr Grabowski into the house, there she was being held by the arms, hit in the face and pushed against a wall. As a result of these actions she received physical injuries such as bruising on the right shoulder, palpable pain in the occipital area with edema, bruising on the left arm, pain in the sternum and bruising on the right thigh, all of which constituted the physical injuries that did not exceed 7 days. In the Court's opinion the above-mentioned actions of the two perpetrators exposed Maria Janik to a consequence referred to in Article 157 § 1 of the Penal Code.

The fact is that Zbigniew Szydłowski, the expert that was heard at the trial, first claimed that there were no grounds to acknowledge the above-mentioned exposure but at the same time while he was describing the above-mentioned matter in more detail, he admitted that the occipital area, more than any other part of the body is exposed to severe injuries. It should also be emphasized that the content of the opinion indicated that in realities of the case exposing Maria Janik to a consequence referred to in Article 156 § 1 of the Penal code, was possible, however, which is clear, such a consequence did not follow. Moreover, it should also be taken into account that a physician, who directly examined the aggrieved, did not describe the size of the observed edema, which could have been masked by her hair, and Zbigniew Szydłowski, the expert, noted that he did not know the very circumstances that lead to the said injury. He also concluded that the above-mentioned injury had been caused with the use of a little force.

Thus, the described circumstances justify the above-mentioned assessment of the subject matter.

In the Court's assessment – having taken into account: the perpetrators' physical advantage, and the parts of the aggrieved person's body attacked by the perpetrators it should be recognized that there are grounds to recognize that Maria Janik was directly exposed to a danger of a consequence referred to in Article 157 § 1 of the Penal code, which the perpetrators were fully aware of. [continued overleaf]

[At the bottom of the page]: [The stamp with the following contents]: I hereby certify that this is a true copy of the original document. dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *

[A stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 69 66 58

'Rape' is an offence with an effect. Forcing a victim to a sexual activity – the moment of committing this offence constituting an effect of rape – consists in causing such a factual state of affairs when a perpetrator has started the sexual intercourse or its equivalent. When these considerations are related to the matter in question, it should be acknowledged that the effect followed, in the form of forcing Maria Janik to have an oral intercourse.

In the assessment of the Court Piotr Grabowski acted deliberately and with a direct intent. Undoubtedly, such circumstances as unlawful taking of the bike from the aggrieved, dragging her to the uninhabited house and using violence exhibit his deliberate intention to force the aggrieved (who generally in the course of the whole incident attempted to resist the perpetrators) to involuntary sexual act.

Pursuant to the currently biding Penal Code, complicity of the two persons is sufficient to recognize a type of a qualified offence of rape. As it has been mentioned earlier Piotr Grabowski acted together with his friend Ireneusz Zagaja (whose investigation documents have been excluded here and will be the subject of separate proceedings).

In the Court's opinion in the case in question, the feasibility of finding the defendant guilty is clear, understood as the alleged decision-making process in the context of being aware of the unlawfulness of the action and possibilities of acting in a manner that complies with the approved norms. Piotr Grabowski is an adult of an already shaped personality, has a sufficient amount of life experience, sufficient education, he is free from mental diseases such as psychosis. [continued overleaf]

[At the bottom of the page]:
[The stamp with the following contents]: I hereby certify that this is a true copy of the original document. dated: 19.06.2019 [the date is hand-written]
[illegible signature], Senior Court Clerk, Marcin Puźniak

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2*.

[A stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski*, Judge, [an illegible signature]

MARTA NOWACKA PRZYSIĘGŁY JĘZYKA ANGIELSKIEGO Nowacka Marta PhD

SWORN MARTA NOWACKA
TRANSLATOR
OF ENGLISH
mobile ph +48 602 69 66 52
SWORN
TRANSLATOR
OF ENGLISH
mobile ph

The above-mentioned reasoning allows us to acknowledge that with reference to him there was no atypical motivational context that is not complying with a legal norm.

On sentencing Piotr Grabowski to 2years-and-6-months deprivation of liberty, the Court has taken into account as incriminating circumstances: the type and nature of the infringed interests, a great scope of damage inflicted by committing the offence, low motivation of the perpetrator, acting in a planned manner, his earlier criminal records, a circumstance that the perpetrator was under the influence of alcohol, intensity, different stages of the incident in question, the above-mentioned person's selection of a humiliating form of a sexual activity that was particularly distressing for the aggrieved.

As extenuating circumstances, the Court has taken into account the fact that he showed remorse for his own actions, gave financial compensation to Maria Janik for the damage and the fact that the defendant has up-to-date moderately settled down.

All the above-mentioned circumstances jointly considered, justify the claim that the burden of the penalty adjudicated to Piotr Grabowski does not exceed the degree of his guilt, which needs to be recognized as high, (taking into consideration the severity of the offence and personal situations), takes into account the degree of social noxiousness of the act (which is undoubtedly significant) and the preventive and disciplinary aims that the penalty is intended to fulfill.

In accordance with Article 63 § 1 of the Penal code the Court included the period of Piotr Grabowski's actual deprivation of liberty in that case into the term of adjudicated penalty.

The decision about awarding the costs is based on a provision in Article 627 of Criminal Procedure Code. The costs include: a flat rate for serving, a fee for obtaining information from the register of convicted persons, the expert's fee, a fee which is imposed pursuant to a provision of Article 2, section 1, item 5 of Act on charges in criminal proceedings.

[At the bottom of the page]: [illegible signature]
[A stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski*, Judge, [an [an illegible signature]
[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2*.
[The stamp with the following contents]: I hereby certify that this is a true copy of the original document. dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak.

---

*I, Marta Nowacka, PhD, Licensed Sworn Translator of the Minister of Justice, Licence No. TP/2214/06 of 19th October 2006, do hereby certify that the foregoing translation truly and correctly corresponds with the contents of the document in Polish that I have been presented with.*

35639 characters = 32 pages

Rzeszów, August 22, 2019
Sworn Translator, PhD Marta Nowacka, *Nr TP/2214/06*

Reg. no. 9/2019



SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 68 66 58

208 [hand-written]

**File reference No. II AKa 161/01**

[In the center, there is an emblem of the Republic of Poland, an eagle with a crown.]

**JUDGMENT**
**IN THE NAME OF THE REPUBLIC OF POLAND**

Dated December 20, 2001

The Court of Appeal II Criminal Division in Rzeszów
composed of the following:
Presiding judge – **Zbigniew Kallaus (reporting judge), The Vice-President of the Court of Appeal**
Judges – **Ryszard Kot, Judge of the Court of Appeal**
**Zbigniew Śnigórski, Judge of the Court of Appeal**
The recording clerk – **Elżbieta Dąbrowska**

With the participation of Prosecutor of the Appellate Public Prosecutor's Office in Rzeszów – **Janusz Jarosiewicz,**

having reviewed on December 20, 2001,

the case concerning: **Piotr Grabowski**

charged under Article 197 § 3 of the Penal Code and Article 158 § 1 of the Penal Code in connection with Article 11 § 2 of the Penal Code
following the appeals lodged by the defense counsel of the defendant and Regional Prosecutor in Leżajsk against the judgment of the Provincial Court in Rzeszów of October 3, 2001, file reference no. II K 54/01

[A stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

[A stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written][illegible signature], Senior Court Clerk, Marcin Puźniak.

[The round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.



SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 68 66 68

2

209 [hand-written]

I. **upholds** the sentence in force,

II. **exempts** the defendant Piotr Grabowski from the second instance court costs and the cost concerning the Prosecutor's appeal is charged to the State Treasury.

[Three illegible signatures]

[At the bottom of the page:]
[The stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak

[On the right, the round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

[The stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski,* Judge, [an illegible signature]

---

*I, Marta Nowacka, PhD, Licensed Sworn Translator of the Minister of Justice, Licence No. TP/2214/06 of 19th October 2006, do hereby certify that the foregoing translation truly and correctly corresponds with the contents of the document in Polish that I have been presented with.*

2372 characters = 3 pages

Rzeszów, August 22, 2019

Reg. no. 10/2019

Sworn Translator, PhD
Marta Nowacka, *Nr TP/2214/06*

Nowacka M. PhD

SWORN  MARTA ░░░░░░
TRANSLATOR
OF ENGLISH

mobile ph +48 602 68 66 ☞

210 [hand-written]

**File reference No. II AKa 161/01**

### REASONS

Piotr Grabowski was charged with the following: on May 16, 2001 in Stare Miasto in Leżajsk county, acting together and in agreement with another identified person, using violence in the form of throwing Maria Janik against a wall, holding her down and hitting her in the face with his hand, forced Maria Janik to have a sexual intercourse, and caused physical injuries to her such as bruising on the right shoulder, palpable pain in the occipital area with edema, bruising on the left arm, pain in the sternum and bruising on the right thigh, all of which constituted the physical injuries which did not exceed 7 days, and exposed her to a direct danger of a consequence referred to in Article 157 § 1 of the Penal Code,

i.e. committing an offence of Article 197 § 3 of the Penal Code and Article 158 § 1 of the Penal Code in connection with Article 11 § 2 of the Penal Code.

With the enforceable judgment of October 3, 2001, file reference no. II K 54/01 of the Provincial Court in Rzeszów the defendant Piotr Grabowski was found guilty of committing the act, that is described above and that is an offence under Article 197 § 3 of the Penal Code, and Article 158 § 1 of the Penal Code in connection with Article 11 § 2 of the Penal Code and for this act he was sentenced to 2 (two)-year and 6 (six)-month penalty of deprivation of liberty.

Pursuant to Article 63 §1 of the Penal Code the period of an actual deprivation of liberty in the case from May 17, 2001, 1.20 pm to October 3, 2001 was credited to the imposed penalty of deprivation of liberty.

In accordance with Article 627 of the Criminal Procedure Code the Court awarded the defendant with the court costs of 608.61PLN for the benefit of the State Treasury.

[At the bottom of the page:]

[The stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski*, Judge, [an illegible signature]

[The stamp with the following contents]:
I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak

[On the right, the round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA

mobile ph +48 602 68 66 58

Two appeals were lodged against this judgment, one by the Regional Prosecutor in Leżajsk and the other by the defense counsel of Piotr Grabowski.

The Prosecutor's appeal **appeals** against this judgment in relation to adjudicating a penalty to the defendant's disadvantage, **objects to** gross incommensurability of punishment imposed on the defendant by adjudging a penalty of 2 years and 6 months of deprivation of liberty and **petitions** for a change of the appealed judgment, that is sentencing Piotr Grabowski to a 4-year and 6-month penalty of deprivation of liberty and adjudicating exemplary damages of 1,000.00 PLN for the benefit of the aggrieved under Article 46 § 2 of the Penal Code.

On the other hand, the appeal lodged by the defense counsel of Piotr Grabowski:

I. **appeals against** the above-mentioned judgment with reference to adjudicating a penalty,

II. **object to** gross incommensurability of adjudicated punishment of deprivation of liberty compared to the objectives the penalty should fulfill as an individual crime prevention and social influence, and in particular omitting circumstances referred to in Article 53 § 3 of the Penal Code and not including a prerequisite referred to in a provision of Article 54 § 1 of the Penal Code.

III. **petitions** under a provision of Article 437 § 1 of Criminal Procedure Code for a change of a decision in the appealed scope by sentencing the above-mentioned defendant, by means of an altered judgment, to a minimum statutory penalty of deprivation of liberty conditionally suspended for a sufficient period.

**The Court of Appeal has considered what follows:**

Both appeals do not merit consideration.

With reference to the Prosecutor's appeal, it legitimately quotes circumstances established by the Court in the form of legal interest infringed by the defendant (liberty in a sexual sphere), low motivation of the perpetrator, acting under the influence of alcohol and forcing upon the aggrieved a humiliating form of a sexual activity (oral intercourse).

[At the bottom of the page:]

[The stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski*, Judge, [an illegible signature].

[The stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak.

[On the right, the round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA

mobile ph +48 602 68 66 57

212 [hand-written]

It is also an indisputable fact that the defendant by taking a bicycle from the aggrieved lured her insidiously to his house, as well as that the defendant acted together with another person.

As regards the defendant Grabowski, the argument that was raised against him, concerning repeatability of indecent acts diverges from the facts established by the Court. As established by the Court of First Instance the said defendant inserted his penis into Maria Janik's mouth (pages: 2 -3 of the reasons for the appealed judgment, file p. 168 - 169).

Most of the above-quoted arguments included in the reasons for Prosecutor's appeal concern statutory features of the act imputed unto the defendant of Article 197 § 3 of the Penal Code and Article 158 § 1 of the Penal Code in connection with Article 11 § 2 of the Penal Code or they belong to its nature (acting together with another person, reasons in the form of an urge to satisfy a sexual drive, sexual intercourse in a surrogate form, the violation of the aggrieved person's liberty, using some physical violence against her).

However, the fact that the defendant, apart from using physical violence, also made use of a secondary nature of the act of Article 197 of the Penal Code, which is deceit and a brutal way of acting (hitting a friend in the face) increases the gravity of noxiousness of the defendant's act.

On sentencing the defendant to an adjudicated penalty, the Court took into consideration all the circumstances raised in the appeal, including the fact that the defendant had previously been convicted, was acting under the influence of alcohol (file p. 14 of reasons for the appealed judgment, file p. 180).

The Court of First Instance did not decide an unduly lenient penalty, when it sentenced the defendant to a 2-year and 6-month penalty of deprivation of liberty, especially if the aggrieved person's attitude to the defendant is taken into account. At the trial the aggrieved Maria Janik clearly diminished the defendant Piotr Grabowski's role in comparison with his actual conduct that had been established by the Court.

Having changed her testimony, the aggrieved stated that when compared to the aggressive behavior of the other perpetrator, the acting of Piotr Grabowski was limited to holding her down by the arms and "They did nothing more to her." (file p.134).



SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA
mobile ph +48 602 58 56 58

213 [hand-written]

The aggrieved even said: "I even wanted to apologize to Piotr. I have no claims against him, no grudge." (file p. 135).

We agree with the appeal of the defendant's defense counsel in that respect, i.e. in Criminal Code of 1997 the aggrieved person's conduct was introduced to circumstances that are particularly essential for sentencing. Under Article 53 § 2 and 3 of the Penal Code the conduct of the aggrieved (in its general sense) assumed the proportions of a circumstance that should have a greater influence on sentencing (cf. General Part of *Penal Code*, p. 925 - Rejman, G. (Ed.). (1999). *Penal Code*. Warszawa: C.H. Beck.)

However, it was wrongly imputed that the Court of First Instance did not take into account prerequisites referred to in Article 54 § 1 of the Penal Code because this provision that introduces a priority of juvenile delinquent resocialization does not apply to Piotr Grabowski.

The defendant Piotr Grabowski, was born on December 10, 1978 and on the date of the act imputed upon him – May 16, 2001 he had reached 22 years. Pursuant to Article 115 § 10 of the Penal Code a juvenile is a perpetrator who, at the time of the commission of a prohibited act has not reached the age of 21 years and has not reached the age of 24 years at the time of the trial in the first-instance court.

The Code of 1997 changed the notion of a juvenile. The age of the perpetrator at the time of the commission of a prohibited act but not the age at the time of the judgment. Apart from the first requirement the fact that the perpetrator did not reach 24 years at the time of the trial in the first-instance court is an additional criterion.

On the basis of the above-quoted circumstances of the case one cannot agree with the appeal that the Court sentenced the defendant with an extremely severe penalty. In the area of rape there are some dangerous phenomena that require the increased degree of social noxiousness to be taken into account when a penalty is imposed. The intensity of violence used, e.g. if it lead to hitting as it was the case in the act of the defendant Piotr Grabowski, who hit the aggrieved in the face – has to be taken into account when the above-mentioned degree is considered.





SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA

mobile ph +48 602 68 66 56

214 [hand-written]

An insolent way of acting, that is kidnapping a person by deceit and also perverted forms of the satisfying of the sexual drive classify as particularly aggravating circumstances (cf. a resolution of joint Criminal Law Division Chamber and Military Chamber of the Supreme Court of December 21, 1972 – VI KZP 64/72), the said circumstance with which the defendant is charged against. At last the legislator defined a high degree of social noxiousness of gang rape, by making a classified type in Article 197 § 3 of the Penal Code in case of the act of two perpetrators.

When it comes to the Prosecutor's petition for appeal to decide on compensatory damages of Article 46 § 2 of the Penal Code - the required relevant motion by the aggrieved person is not submitted.

Having considered all the above-mentioned circumstances the judgment is upheld in force.

The decision was issued under Article 437 § 1 of the Criminal Procedure Code and Article 456 of the Criminal Procedure Code, and the decision about the Second Instance court costs has its grounds in Article 624 § 1 of the Criminal Procedure Code because the defendant does not have any property.

[three illegible signatures]

[At the bottom of the page:]
[The stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak.

[The round seal with the emblem of the Republic of Poland, an eagle with a crown, in the center and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

[The stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski*, Judge, [an illegible signature]

*I, Marta Nowacka, PhD, Licensed Sworn Translator of the Minister of Justice, Licence No. TP/2214/06 of 19th October 2006, do hereby certify that the foregoing translation truly and correctly corresponds with the contents of the document in Polish that I have been presented with.*

11253 characters = 10 pages

Rzeszów, August 22, 2019

Reg. no. 11/2019

Sworn Translator, PhD

Marta Nowacka, *Nr TP/2214/06*

SWORN MARTA NOWACKA
TRANSLATOR
OF ENGLISH
mobile ph +48 602 83 86 88

79 [hand-written]

THE PROVINCIAL COURT
II Criminal Division
35-959 Rzeszów, PO box 298
Pl. Śreniawitów 3
Date: 05/19/2003
File reference no. II K 54/01

County Police Headquarters in Leżajsk
(exact address)

AN ARREST WARRANT

The Provincial Court in Rzeszów, II Criminal Division pursuant to the ruling of 05/19/2003 orders to take Piotr Grabowski forcibly and immediately to the Penal Institution in Rzeszów-Załęże. [Piotr Grabowski] a son of Walerian and Helena, born on 12.10.1978 in Nowa Sarzyna, the resident of Stare Miasto 198, Leżajsk commune, sentenced by the enforceable judgment of the Provincial Court in Rzeszów in the case II K 54/01 for 2-year and 6-month penalty of deprivation of liberty for an offence of Article 197 § 3 of the Penal Code and Article 158 § 1 of the Penal Code in connection with Article 11 § 2 of the Penal Code.

This arrest warrant should be shown to the person that is forcibly taken to the penal institution.

The stamp:

PRESIDING JUDGE
II Criminal Division
*Edward Kuś*
Judge of the Provincial Court
[an illegible signature]

[At the bottom of the page]:
[The stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski* Judge, [an illegible signature]

[The stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written], [illegible signature], Senior Court Clerk, Marcin Puźniak.

[On the right, the round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

---

*I, Marta Nowacka, PhD, Licensed Sworn Translator of the Minister of Justice, Licence No. TP/2214/06 of 19th October 2006, do hereby certify that the foregoing translation truly and correctly corresponds with the contents of the document in Polish that I have been presented with.*

1603 characters = 2 pages
Rzeszów, August 22, 2019
Reg. no. 12/2019

Sworn Translator, PhD
Marta Nowacka, *Nr TP/2214/06*

Marta Nowacka, PhD

SWORN TRANSLATOR OF ENGLISH MARTA NOWACKA

mobile ph +48 602 68 66 58

Notice: A copy of a relevant indictment should be attached to a 'wanted' notice that is circulated with reference to the defendant, to whom a decision on a provisional arrest has been issued. A copy of an enforceable judgment should be attached to a 'wanted' notice circulated with reference to the convicted person.

*) When a 'wanted' notice is circulated with reference to the defendant, to whom a decision on a provisional arrest has been issued, the text referred to as no. 2 should be crossed out in this document. When a 'wanted' notice is circulated with reference to the convicted person, the text referred to as no. 1 should be crossed out in this document.

[At the bottom of the page there is the following information on the publisher]: MS/K od-13 Punktgraf Lublin, ul. Łęczyńska 51, tel. 76-10-44, w. 102 [extension].

[The stamp with the following content]: President of the Provincial Court in Rzeszów, *Rafał Puchalski*, Judge [an illegible signature]

[The stamp with the following contents]: I hereby certify that this is a true copy of the original document; dated: 19.06.2019 [the date is hand-written],[illegible signature], Senior Court Clerk, Marcin Puźniak

[On the right, the round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

---

*I, Marta Nowacka, PhD, Licensed Sworn Translator of the Minister of Justice, Licence No. TP/2214/06 of 19th October 2006, do hereby certify that the foregoing translation truly and correctly corresponds with the contents of the document in Polish that I have been presented with.*

3052 characters = 3 pages

Rzeszów, August 22, 2019

Reg. no. 14/2019

Sworn Translator, PhD

Marta Nowacka, *Nr TP/2214/06*

Nowacka M., PhD.



MINISTRY OF JUSTICE
REPUBLIC OF POLAND
www.ms.gov.pl

Warszawa, 27 February 2020

**Department of International Cooperation and Human Rights**
**Division of International Legal Cooperation in Criminal Matters**

**DWMPC-II.8041.353.2019**
(please quote when replying)

**David S. Silverbrand**
**Trial Attorney**
**Office of International Affairs**
**Criminal Division**
**United States Department of Justice**
**1301 New York Avenue, NW**
**Washington, DC 20530**

**Extradition Treaty between the Republic of Poland and the United States of America signed in Washington on July 10, 1996.**

**Extradition of Polish citizen Piotr Jan GRABOWSKI from the USA to Poland**

**Your reference : Unknown**

Dear Mr. Silverbrand,

In reference to the email correspondence concerning the request for extradition from the United States to Poland of Polish citizen **Piotr Jan GRABOWSKI**, the Ministry of Justice of the Republic of Poland sends herewith the supplementary information on relevant provisions of the Polish Criminal Code, together with English translation.

Sincerely yours,

Tomasz Chałański

Head of the Division
of International Legal Cooperation
in Criminal Matters

By: M. Augustyniak

Sąd Okręgowy w Rzeszowie
II Wydział Karny
Plac Śreniawitów 3
35-959 Rzeszów
Polska
tel. 0048 17 87 56 263
faks 0048 17 87 56 264
e-mail: sis@rzeszow.so.gov.pl

**UZUPEŁNIENIE WNIOSKU
O USTALENIE DOKŁADNEGO MIEJSCA ZNAJDOWANIA SIĘ (POBYTU),
TYMCZASOWE ARESZTOWANIE ORAZ
WYDANIE OSOBY SKAZANEJ W CELU WYKONANIA KARY**

Sąd Okręgowy w Rzeszowie, Polska, uzupełniając wniosek z dnia 19 czerwca 2019r. o ustalenie dokładnego miejsca znajdowania się (pobytu), tymczasowe aresztowanie oraz wydanie obywatela polskiego,

**Piotra Jana GRABOWSKIEGO (Piotr Jan GRABOWSKI),**
**urodzonego 10 grudnia 1978r. w Polsce w miejscowości Nowa Sarzyna,**

przekazuje treść artykułów 197 § 1 i 2 oraz 156 § 1 kodeksu karnego.

**Treść artykułu 197 § 1 i 2 kodeksu karnego z chwili wydania wyroku II K 54/01:**
Art. 197.
§ 1. Kto przemocą, groźbą bezprawną lub podstępem doprowadza inną osobę do obcowania płciowego, podlega karze pozbawienia wolności od roku do lat 10.
§ 2. Jeżeli sprawca, w sposób określony w § 1, doprowadza inną osobę do poddania się innej czynności seksualnej albo wykonania takiej czynności, podlega karze pozbawienia wolności od 3 miesięcy do lat 5.

**Aktualna treść artykułu 197 § 1 i 2 kodeksu karnego:**
Art. 197.
§ 1. Kto przemocą, groźbą bezprawną lub podstępem doprowadza inną osobę do obcowania płciowego, podlega karze pozbawienia wolności od lat 2 do 12.
§ 2. Jeżeli sprawca, w sposób określony w § 1, doprowadza inną osobę do poddania się innej czynności seksualnej albo wykonania takiej czynności, podlega karze pozbawienia wolności od 6 miesięcy do lat 8.

**Zmiana treści artykułu 197 § 1 i 2 kodeksu karnego nie ma wpływu na sytuację prawną osoby, której dotyczy wniosek o wydanie.**

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

**Treść artykułu 156 § 1 kodeksu karnego z chwili wydania wyroku II K 54/01:**
Art. 156.
§ 1. Kto powoduje ciężki uszczerbek na zdrowiu w postaci:
1) pozbawienia człowieka wzroku, słuchu, mowy, zdolności płodzenia,
2) innego ciężkiego kalectwa, ciężkiej choroby nieuleczalnej lub długotrwałej, choroby realnie zagrażającej życiu, trwałej choroby psychicznej, całkowitej lub znacznej trwałej niezdolności do pracy w zawodzie lub trwałego, istotnego zeszpecenia lub zniekształcenia ciała,
podlega karze pozbawienia wolności od roku do lat 10.

**Aktualna treść artykułu 156 § 1 kodeksu karnego:**
Art. 156.
§ 1. Kto powoduje ciężki uszczerbek na zdrowiu w postaci:
1) pozbawienia człowieka wzroku, słuchu, mowy, zdolności płodzenia,
2) innego ciężkiego kalectwa, ciężkiej choroby nieuleczalnej lub długotrwałej, choroby realnie zagrażającej życiu, trwałej choroby psychicznej, całkowitej albo znacznej trwałej niezdolności do pracy w zawodzie lub trwałego, istotnego zeszpecenia lub zniekształcenia ciała,
podlega karze pozbawienia wolności na czas nie krótszy od lat 3.

**Zmiana treści artykułu 156 § 1 kodeksu karnego nie ma wpływu na sytuację prawną osoby, której dotyczy wniosek o wydanie.**

Z wyrazami szacunku i poważania,

31 stycznia 2020r.

SĄD OKRĘGOWY W RZESZOWIE * 2 *

Przewodniczący
II Wydziału Karnego
Tomasz Mucha
Sędzia Sądu Okręgowego

MINISTER SPRAWIEDLIWOŚCI * 6 *

Prezes Sądu Okręgowego
w Rzeszowie
Rafał Puchalski
sędzia

SWORN MARTA NOWACKA
TRANSLATOR
OF ENGLISH
mobile ph +48 602 69 66 58

**Certified translation from the Polish language**
**[Translator's comments are included within square brackets.]**

Provincial Court in Rzeszów
II Criminal Division
Plac Śreniawitów 3
35-959 Rzeszów
Poland
tel. 0048 17 87 56 263
fax. 0048 17 87 56 264
e-mail: sis@rzeszow.so.gov.pl

## A SUPPLEMENTATION OF THE APPLICATION FOR ESTABLISHING THE EXACT LOCATION, PROVISIONAL ARREST AND FOR EXTRADITION OF A SENTENCED PERSON IN ORDER TO ENFORCE A SENTENCE

The Provincial Court in Rzeszów, Poland, is submitting the content of Articles 197 § 1 and 2 and 156 § 1of the Penal Code as a supplementation of the application of June 19, 2019 for establishing the exact location (stay), provisional arrest and for extradition of a Polish citizen,

**Piotr Jan GRABOWSKI (Piotr Jan GRABOWSKI),**
**born on December 10, 1987 in Poland in the town of Nowa Sarzyna.**

**The content of article 197 § 1 and 2 of the Penal Code at the time of passing the judgment II K54/01:**
Article 197.
§ 1. Whoever, by force, illegal threat or deceit subjects another person to sexual intercourse, shall be subject to the penalty of the deprivation of liberty for a term of between 1 and 10 years.
§ 2. If the perpetrator, in the manner specified in § 1, makes another person submit to other sexual act or to perform such an act, they shall be subject to the penalty of the deprivation of liberty for a term of between 3 months and 5 years.

**The current content of Article 197 § 1 and 2 of the Penal Code:**
Article 197.
§ 1. Whoever, by force, illegal threat or deceit subjects another person to sexual intercourse, shall be subject to the penalty of the deprivation of liberty for a term of between 2 and 12 years.
§ 2. If the perpetrator, in the manner specified in § 1, makes another person submit to other sexual act or to perform such an act, they shall be subject to the penalty of the deprivation of liberty for a term of between 6 months and 8 years.

**The change of the content of Article 197 § 1 and 2 of the Penal Code does not affect the legal situation of the requested person for extradition.**

[The stamp with the following content:]
**President of the Provincial Court**
**in Rzeszów**
[an illegible signature]
***Rafał Puchalski***
**judge**

**The content of Article 156 § 1 of the Penal Code at the time of passing the judgment II K54/01:**
Article 156.
§ 1. Whoever causes grievous bodily harm in a form which:
1) deprives a human being of sight, hearing, speech or the ability to procreate, or
2) inflicts on another a serious crippling injury, an incurable or prolonged illness, an illness actually dangerous to life, a permanent mental illness, a permanent total or substantial incapacity to work in an occupation, or a permanent serious bodily disfigurement or deformation,
shall be subject to the penalty of the deprivation of liberty for a term of between 1 and 10 years.

**The current content of Article 156 § 1 of the Penal Code:**
Article 156.
§ 1. Whoever causes grievous bodily harm in a form which:
1) deprives a human being of sight, hearing, speech or the ability to procreate, or
2) inflicts on another a serious crippling injury, an incurable or prolonged illness, an illness actually dangerous to life, a permanent mental illness, a permanent total or substantial incapacity to work in an occupation, or a permanent serious bodily disfigurement or deformation,
shall be subject to the penalty of the deprivation of liberty for a term of not less than 3 years.

**The change of the content of Article 156 § 1 of the Penal Code does not affect the legal situation of the requested person for extradition.**

Yours faithfully,

January, 31st 2020

[On the left, the round seal with the emblem of the Republic of Poland, an eagle with a crown in the center, and the following text in the rim:] THE PROVINCIAL COURT * IN RZESZÓW * 2 *.

[The stamp with the following content:] Presiding Judge of II Criminal Division, *Tomasz Mucha,* Judge of the Provincial Court, [an illegible signature]

[The stamp with the following content:] President of the Provincial Court in Rzeszów, [an illegible signature], *Rafal Puchalski,* judge

*I, Marta Nowacka, PhD, Licensed Sworn Translator of the Minister of Justice, Licence No. TP/2214/06 of 19th October 2006, do hereby certify that the foregoing translation truly and correctly corresponds with the contents of the document in Polish that I have been presented with.*

3925 characters = 4 pages
Rzeszów, January 5, 2020
Reg. no. 1/2020

Sworn Translator, PhD
Marta Nowacka, *Nr TP/2214/06*

MINISTER SPRAWIEDLIWOŚCI

Marta Nowacka, PhD