UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In the Matter of the Extradition of | ) | Case No. 3:20-mc-00068 (WIG) |
| | ) | |
| Piotr Jan Grabowski a/k/a "Walerek" | ) | November 3, 2020 |

## GOVERNMENT'S OPPOSITION TO BAIL
## PENDING EXTRADITION PROCEEDINGS

The United States respectfully submits this memorandum opposing Piotr Jan Grabowski's

Motion for Release on Bail ("Motion for Bail"). Grabowski's Motion for Bail should be denied

because he cannot overcome the strong presumption against bail in international extradition cases.

He cannot meet his burden of showing that he poses no risk of flight or danger to the community,

and that special circumstances warrant his release.

## BACKGROUND[1]

According to information the Government of Poland has provided:

On October 3, 2001, the Provincial Court in Rzeszów, Poland, convicted Grabowski of

(1) rape, in violation of Article 197 § 3 of the Polish Penal Code; and (2) participating in a brawl

or beating leading to injury. The Polish court sentenced him to 2 years and 6 months imprisonment

and credited about four-and-a-half months that Grabowski had already spent in custody. On

December 20, 2001, the Court of Appeals in Rzeszów affirmed the judgment. On May 19, 2003,

after Grabowski failed to appear at the penal institution to serve his sentence, the Provincial Court

in Rzeszów issued a warrant for his arrest. At a date unknown—because Grabowski is suspected

to have entered the United States illegally—Grabowski fled Poland for the United States.

---

[1] A fuller recitation of the background facts is set forth in the Government's Memorandum of Extradition Law and Request for Detention Pending Extradition Proceedings. Doc. 6. This opposition memorandum will not repeat the full background facts found already provided to the Court, nor will it repeat the exposition on the legal framework of extradition proceedings found there; rather, this memorandum focuses on responding to Grabowski's Motion for Bail.

Grabowski was arrested by the United States Marshals Service on August 28, 2020, at the request of the Government of Poland, based on a complaint and arrest warrant issued by U.S. Magistrate Judge Sarah A. L. Merriam.  *See* Doc. Nos. 1, 2.  Grabowski is currently detained.

## ARGUMENT

### I.    LEGAL FRAMEWORK OF EXTRADITION PROCEEDINGS

Courts have a limited role in international extradition proceedings as international extradition is primarily an executive function.  *See* 18 U.S.C. § 3184.  Pursuant to 18 U.S.C. § 3184, the judicial officer's inquiry is confined to whether (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the treaty covers the offenses for which extradition is; and (5) there is sufficient evidence to support a finding of probable cause as to the offenses for which extradition is sought.  *See id.*; *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).  "If the judicial officer answers these questions in the affirmative, he or she 'shall certify' the extraditability of the fugitive to the Secretary of State."  *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000) (quoting 18 U.S.C. § 3184).  After a court certifies a fugitive as extraditable, the Secretary of State decides whether the fugitive will be surrendered to the requesting country.  *See* 18 U.S.C. §§ 3184, 3186.

A certification of extraditability is properly based on the authenticated documentary evidence and information that the requesting government has provided.  *See, e.g.*, *United States v. Amabile*, 14-M-1043, 2015 WL 4478466, at *9 (E.D.N.Y. July 16, 2015) (stating that "the certificate of extradition may be based on written statements provided by a foreign prosecutor,

investigator or judge").  Extradition treaties do not require, or even anticipate, the testimony of live witnesses at the hearing.  *See, e.g.*, *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).

The fugitive's defenses in an extradition proceeding are heavily circumscribed.  *See, e.g.*, *Yapp v. Reno,* 26 F.3d 1562, 1565 (11th Cir. 1994) (no Sixth Amendment Right to a speedy trial); *In re Extradition of McMullen*, 989 F.2d 603, 612-13 (2d Cir. 1993) (no Fifth Amendment guarantee against double jeopardy with respect to successive extradition proceedings); *Simmons v. Braun*, 627 F.2d 635, 636-37 (2d Cir. 1980) (no exclusionary rule); *Bingham,* 241 U.S. at 517 (no right to cross examination or invoke defenses that "savor of technicality"); *Charlton v. Kelly*, 229 U.S. 447, 461 (1913) (no right to introduce affirmative defenses); *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984) (no discovery rights).  Furthermore, "[i]n the exercise of the extraditing judge's discretion, a fugitive may be permitted to offer explanatory testimony, but may not offer proof which contradicts that of the demanding country."  *Id.*  Accordingly, "evidence of alibi or of facts contradicting the demanding country's proof or of a defense such as insanity may properly be excluded from the Magistrate's hearing."  *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973).  "[S]tatements [that] would in no way explain . . . or . . . obliterate the government's evidence, but would only pose a conflict of credibility . . . should properly await trial in [the country seeking extradition]."  *Id.* at 905 (internal quotation marks omitted).

Finally, all matters a fugitive might raise as defenses to extradition, other than those related to the requirements for certification, are to be considered by the Secretary of State, not by the Court.  *See* 18 U.S.C. §§ 3184, 3186.  This is consistent with the long-held understanding that the surrender of a fugitive to a foreign government is "purely a national act . . . performed through the

Secretary of State." *See In re Kaine*, 55 U.S. 103, 110 (1852); *see also, e.g.*, *Ahmad v. Wigen*, 910 F.2d 1063, 1066-67 (2d Cir. 1990).

## II.   GRABOWSKI'S MOTION FOR BAIL SHOULD BE DENIED

Bail should be granted in an extradition proceeding "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.). The federal statutes governing extradition in the United States, 18 U.S.C. §§ 3181 *et seq*., do not provide for bail. Further, the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., does not apply because an extradition proceeding is not a criminal prosecution. *See, e.g.*, *Austin v. Healey*, 5 F.3d 598, 603 (2d Cir. 1993). Rather, in extradition proceedings, there is a strong presumption against bail. Bail should be granted if, and only if, the subject of the extradition proceedings can show that he is not a flight risk, that he is not a danger to the community, *and* that special circumstances exist that warrant release. Grabowski has not met any of these qualifications, much less all three.

### A.   Applicable law

1.   <u>A strong presumption against bail governs in an international extradition proceeding</u>

Unlike in domestic criminal cases, courts have long recognized a "presumption against bail in extradition cases." *Id.*; *see In re Extradition of Rovelli*, 977 F. Supp. 566, 567 (D. Conn. 1997) ("There is a strong, and longstanding, presumption against bail in international extradition proceedings.") (citing *Wright v. Henkel*, 190 U.S. 40 (1903)); *see also, e.g., In re Extradition of Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1284 (S.D. Fla. 2017) ("[T]his is not a criminal case where bail would ordinarily be granted."). The Supreme Court established

4

this presumption against bail in *Wright*, explaining that when a foreign government makes a proper request pursuant to a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

190 U.S. at 62.

The prudential reasons for this presumption against bail in international extradition cases are clear and compelling.  When, as here, Poland meets the conditions of the Treaty, the United States has an "overriding interest in complying with its treaty obligations" to deliver the fugitive. *In Re Extradition of Garcia*, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009); *see also Wright*, 190 U.S. at 62.  It is important that the international community regard the United States as a country that honors its agreements, so that the United States will be in a position to demand that other nations meet their reciprocal obligations to the United States.  *See e.g., Martinelli*, 263 F. Supp. 3d at 1294 ("No amount of money could answer the damage that would be sustained by the United States were the appellant to be released on bond, flee the jurisdiction, and be unavailable for surrender, if so determined.") (quoting *Jimenez v. Aristiguieta*, 314 F.2d 649, 653 (5th Cir. 1963)).  Such reciprocity would be defeated if a fugitive flees after being released on bond.  Given the United States' overriding interest, and the presumption against bail, "release on bail in extradition cases should be an unusual and extraordinary thing." *Borodin v. Ashcroft*, 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001) (internal quotation marks and citations omitted).

5

2.    <u>Fugitives must be detained unless they establish "special circumstances" and also demonstrate that they are neither a flight risk nor a danger to the community</u>

In light of the strong presumption against bail established in *Wright*, fugitives may not be released on bail unless they meet their burden of establishing (1) that they are not a flight risk or a danger to the community *and* (2) that "special circumstances" warrant their release. *See, e.g.*, *Leitner*, 784 F.2d at 160; *Martinelli*, 263 F. Supp. 3d at 1292 ("For over a hundred years . . . circuit and district courts have . . . applied the 'special circumstances' test for bail determinations in extradition cases").[2]  "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act."  *In re Extradition of Kin-Hong*, 913 F. Supp. 50, 53 (D. Mass. 1996).

Crucially, the special circumstances inquiry is separate from considering danger to the community or risk of flight.  *See Rovelli*, 977 F. Supp. at 568 ("[The fugitive] must demonstrate not merely that he is not a flight risk, but that special circumstances exist which justify his being admitted to bail.") (citations omitted).  "Even a low risk of flight" is not a circumstance sufficiently "unique" to constitute a special circumstance.  *Leitner*, 784 F.2d at 161; *see also, e.g.*, *Borodin*, 136 F. Supp. 2d at 130 (citing cases).  Conversely, a fugitive who poses a danger to the community or a risk of flight should be denied bail, even in the face of special circumstances.

---

[2] Several courts have required fugitives to meet this burden with clear and convincing evidence, reasoning that the presumption against bail in extradition cases justifies a heightened standard of proof, *see, e.g., In re Extradition of Patel*, 08-mj-430, 2008 WL 941628, at *1 (D. Or. Apr. 4, 2008); *In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996); others have applied a preponderance of the evidence standard, *see, e.g., Extradition of Santos*, 473 F. Supp. 2d 1030, 1035 n.4 (C.D. Cal. 2006); and still other courts have found it unnecessary to resolve the issue because of the difficulty of satisfying either standard. *See, e.g., Perez-Cueva*, 16-0233, 2016 WL 884877, at *2 (C.D. Cal. Mar. 7, 2016).

Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition. *See, e.g.*, *Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992)). Courts generally determine special circumstances to exist based on a confluence of factors, as opposed to any single consideration. *See In re Sacirbegovic*, 280 F. Supp. 2d 81, 88 (S.D.N.Y. 2003) (collecting cases). Such findings are highly case-specific and within the Court's discretion, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

**B.    Analysis**

The Court should deny bail because Grabowski poses a flight risk and a danger to the community, and because he fails to show special circumstances that overcome the strong presumption against bail. Grabowski's Motion for Bail attempts to concoct special circumstances, but fails to assert any such circumstances that would differentiate him from other fugitives. Grabowski's limited argument that he is not a flight risk ignores his nearly two decades of evading justice and his flight of over 4,000 miles to avoid prison time. And despite having the burden to show that he is not a danger to the community, Grabowski makes no argument whatsoever regarding this requirement.

1.    Grabowski's history as a post-conviction fugitive demonstrates clearly that he is a flight risk

Grabowski poses a significant flight risk as evidence by his history of failing to appear and evading justice. Grabowski fled Poland not just after the filing of charges, but rather after he was convicted and sentenced, and after his sentence was affirmed on appeal. He was well aware of the charges, conviction, and the term of imprisonment he faced. Rather than serve the approximately two years of incarceration he had remaining, Grabowski chose to leave the country of his birth and leave his family. To avoid prison time, he fled 4,000 miles and has refused to surrender to Poland

to serve his sentence.  Grabowski's flight from justice after being convicted and sentenced for the crimes underlying this extradition request evidences that he poses a significant flight risk should he be released on bail.

In his Motion for Bail, Grabowski admits that he has been living in the United States for years and posits that he is not a flight risk because if he "was going to flee this country, he would have done so a long time ago."  Mot. for Bail at 17.  Grabowski's argument is based on the faulty premises that he "did nothing to hide for 17 years" and that the "extradition request did not come as a surprise to anyone."  *Id.*  In fact, Grabowski did hide by leaving Poland and travelling 4,000 miles to avoid imprisonment.  As such, he was far removed from anyone who may have known about his crime, charge, conviction, and sentence and had no need to hide in the United States.

Additionally, Grabowski was distanced from the conviction not only physically but also temporally.   He likely came to believe that his outstanding term of imprisonment was long forgotten.  Grabowski, now aware that Poland seeks his extradition from the United States, has strong incentive to flee further, whether to a third country – potentially one that may not have an extradition treaty with Poland – or to an underground location within the United States.

Moreover, as noted above, the upcoming extradition proceedings have limited scope and afford Grabowski few rights, and the government's burden to establish extraditability is relatively light.  *See, e.g.*, *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 483 (S.D. Tex. 2010) (finding that a fugitive has "virtually no incentive to appear at his extradition hearing, where, due to the Government's low burden of proof," he faces significant risk of extradition); *In re Extradition of Adame*, Misc. H-13-287, 2013 U.S. Dist. LEXIS 41682, at *7-8 (S.D. Tex. Mar. 25, 2013) (same); *see also, e.g.*, *In re Extradition of Shaw*, No. 14–MC–81475, 2015 WL 521183, at *9 (S.D. Fla.

Feb. 6, 2015) ("[T]he [fugitive] is facing serious criminal sanctions in Thailand, which fact provides him with a strong incentive to flee."). Given the applicable standard in the extradition proceedings, Grabowski may seriously fear being returned to Poland to serve his sentence and thus has incentive to flee.

Grabowski also argues that he should be released on bail because of his current community ties. *Id.* One imagines, however, that Grabowski had significant community ties in Poland – including family, friends, church ties, etc. – before he fled that country and travelled over 4,000 miles away to avoid imprisonment.

Grabowski's proposed bond package would not guarantee his appearance. Grabowski's ability to pledge the equity in his home demonstrates that he possesses significant assets that he can use in aid of further flight. Accordingly, no combination of bail conditions or promises can ensure his appearance before this Court and the United States' ability to fulfill its treaty obligations to Poland. The flight risk Grabowski poses is, alone, fatal to any bail application.

> 2. <u>Grabowski's convictions for rape and for participating in a brawl or beating leading to an injury render him a danger to the community</u>

Grabowski also poses a danger to the community, given the seriousness of his offenses. The Polish court documents reflect that he stands convicted of raping and beating the victim together with another assailant. Although Grabowski does not appear to have a criminal record since his conviction for these violent crimes, neither has he spent time in prison nor otherwise shown efforts at rehabilitation.

Grabowski's assertion that he has "has no criminal history whatsoever," *id.* at 9, ignores the violent crimes he committed, and for which he was convicted, in Poland. This violent criminal record evidences that Grabowski is a danger to the community and renders bail inappropriate.

9

3.     <u>No special circumstances exist warranting release on bail</u>

Grabowski presents six separate arguments for why special circumstances exist warranting his release on bail.  Despite this grab-bag approach, no individual circumstance asserted by Grabowski, nor the combination of any of them, provides the requisite special circumstances warranting relief.  Grabowski's assertions are wrong, not sufficiently unique to qualify as a special circumstance, or both.

a.     <u>Substantial likelihood of success against extradition is not a special circumstance, nor can Grabowski demonstrate such a substantial likelihood</u>

Grabowski asserts that a showing of a substantial likelihood of success against extradition is a special circumstance justifying release on bail.  Mot. for Bail at 6–8.  Such claims are irrelevant at a bond hearing.  Moreover, even if the Court were to entertain the possibility that such a showing could be deemed a special circumstance, Grabowski's argument would nevertheless fail because he is unable to make such a showing.

Most courts hold that arguments regarding the substantive merits of an extradition request are properly raised at the fugitive's extradition hearing and are immaterial to the prior bail determination.  *See United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 61 (D. Mass. 2010); *Sacirbegovic*, 280 F. Supp. 2d at 88 (stating that probability of success against extradition is a subject reserved for the extradition hearing); *In re Extradition of Sidali*, 868 F. Supp. 656, 658–59 (D.N.J. 1994) (stating that probability of success against extradition "relate[s] to whether [the fugitive] should be extradited[,] not whether he should be released on bail").  Accordingly, the Court should not entertain Grabowski's substantive challenges to the merits of the extradition request at this preliminary stage.  *See* 18 U.S.C. § 3184 (providing that *at the extradition hearing*,

10

the court will determine whether the evidence is "sufficient to sustain the charge under the provisions of the proper treaty or convention").

To the extent outlier courts have considered, at the bail stage, the likelihood that a fugitive will succeed on the merits, they mostly have required the fugitive to establish a "high" probability of success, not just a substantial likelihood. *See, e.g.*, *Kin-Hong v. United States*, 83 F.3d 523, 524-25 (1st Cir. 1996) (noting that "courts have held that [special] circumstances may . . . include the raising of substantial claims against extradition on which the [fugitive] has a *high probability* of success," but reversing order granting bail where, "[w]hile arguably [the fugitive] may ultimately prevail in his challenges to his extradition, the record does not establish probability of success one way or another) (emphasis added); *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *Garcia*, 615 F. Supp. 2d at 171; *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1216 (D. Nev. 1993) (finding no "high" probability of success).

Grabowski is unable to show any likelihood of success, much less a high probability. Assuming the judicial officer and court have jurisdiction to proceed, an extradition requires a determination whether (1) the applicable extradition treaty is in full force and effect; (2) the treaty covers offenses for which extradition is requested; and (3) there is sufficient evidence to support a finding of probable cause as to those offenses.  18 U.S.C. § 3184.  Grabowski disputes only the last of these determinations.  *See* Mot. for Bail at 6–8.

At the extradition hearing, the court determines whether probable cause exists to believe that the person before it committed the offenses underlying the extradition request – specifically, whether there exists "evidence sufficient to sustain the charge *under the provisions of the proper*

*treaty*." 18 U.S.C. § 3184 (emphasis added).[3]  Here, because Grabowski was convicted in Poland

after a trial for which he was present, the Polish judgment of conviction, which Poland's

extradition request includes, is definitive evidence of probable cause.  Article 9(4) of the Treaty

provides that where, as here, the extradition request pertains to a fugitive who already "has been

found guilty of the offense[s] for which extradition is sought," the request must include "(a) a copy

of the warrant or order of arrest, if any . . . ; (b) *a copy of the judgment of conviction* or, if such

copy is not available, a statement by a judicial authority that the person has been found guilty; (c)

information establishing that the person sought is the person to whom the finding of guilt refers;

(d) a copy of the sentence imposed, if the person sought has been sentenced," provided the foreign

proceedings were not "in absentia."  Treaty Art. 9(4) (emphasis added).[4]

The law is well-settled that a foreign conviction following a trial where the fugitive was

present establishes conclusive evidence of probable cause to certify extraditability.  *See, e.g.*,

*Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991) (citing *United States v. Clark*, 470 F.

Supp. 976, 978 (D. Vt. 1979); *In re Edmondson*, 352 F. Supp. 22, 24 (D. Minn. 1972); Rest. (Third)

of Foreign Relations of the Law of the United States § 476 comment b (2013) ("[w]ith respect to

persons whose extradition is sought after conviction in the requesting state, the requirement [of

---

[3] *See, e.g.*, *Cheung*, 213 F.3d at 88.  "[T]he function of the extraditing magistrate is not to decide guilt or innocence but merely to determine whether there is 'competent legal evidence which . . . would justify his apprehension and commitment for trial if the crime had been committed in that state.'"  *Shapiro*, 478 F.2d at 900-91 (quoting *Collins v. Loisel*, 259 U.S. 309, 315 (1922)); *see also*, *e.g.*, *Austin*, 5 F.3d at 603 ("[T]he order of extraditability expresses no judgment on [the fugitive's] guilt or innocence."); *Haxhiaj v. Hackman*, 528 F. 3d 282, 287 (4th Cir. 2008) ("The extradition hearing is not to serve as a full-blown trial and serves simply to permit a limited inquiry into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country.") (internal quotation marks omitted).

[4] Article 9(3), in contrast, provides that an extradition request concerning a fugitive "sought for prosecution" must include "(c) such information as would justify the committal for trial of the person if the offense had been committed in the Requested State".

probable cause] is met by proof of the judgment of conviction and, where applicable, of sentence.")); *Arias Leiva v. Warden*, 928 F.3d 1281, 1294 (11th Cir. 2019) (finding that Colombia satisfied treaty requirement by submitting copy of foreign judgment of conviction).  This would be so even if the Polish judgment of conviction merely recited the fact of conviction, though here, the Polish jurisprudence also discusses in detail the evidence underlying the conviction.

Moreover, the purported victim's recantation that Grabowski attaches to his motion would be inadmissible at the extradition hearing because he proffers it to contradict Poland's submissions and assert his innocence, not to explain Poland's submissions or to challenge their competence. *See Charlton v. Kelly*, 229 U.S. at 457–58; *Ordinola v. Hackman*, 478 F. 3d 588, 608–09 (4th Cir.), *cert. denied*, 128 S. Ct. 373 (2007) ("[T]he alleged fugitive's ability to challenge the government's evidence or to submit evidence of his own at the extradition hearing is . . .  significantly limited. For example, the fugitive has no right to introduce 'contradictory evidence' that conflicts with the government's probable cause evidence.") (citation omitted).  A fugitive may not introduce evidence in an effort to impeach the credibility of the foreign testimony against him.  *See, e.g.*, *Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993).  Accordingly, recantations are likewise generally inadmissible.  *See Santos v. Thomas*, 830 F.3d 987, 1003 (9th Cir. 2016) ("Recanting statements contest the credibility of the original statements, presenting a different version of the facts or offering reasons why the government's evidence should not be believed."); *Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir. 1981) (upholding decision to exclude witness declarations recanting prior testimony implicating fugitive in the crime, reasoning that "[t]he later statements do not explain the government's evidence, rather they tend to contradict or challenge the credibility of the facts implicating [the fugitive]").

13

U.S. extradition courts have been reluctant to consider recantation evidence where they cannot assess the credibility of the recantation without a trial. *United States v. Pena-Bencosme*, No. 05-MJ-1518 (SMG), 2007 WL 3231978, at *6 (E.D.N.Y. Oct. 30, 2007) (internal quotation marks and citation omitted). The existence of evidence "contradicting or calling into question the requesting state's primary evidence ordinarily has no import as it does not vitiate or obliterate probable cause, but rather merely 'pose[s] a conflict of credibility'" that a U.S. extradition court is not positioned to adjudicate. *In re Pena-Bencosme*, 341 F. App'x 681, 683 (2d Cir. 2009) (quoting *Shapiro*, 478 F.2d at 905).

Finally, even if the Court were to consider the material Grabowski proffers, probable cause would remain. *See, e.g.*, *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006) (finding that court did not err in excluding recantation evidence because recantation did not negate probable cause); *Escobedo v. United States*, 623 F.2d 1098, 1102 n.13 (5th Cir. 1980). The victim's recantation was fully considered by the adjudicator in Poland and rejected. *See* Doc. No. 1-2 at 57–59.

The Polish jurisprudence in the extradition request expressly recounts that the victim recanted at trial, presenting a revised version of events more favorable to Grabowski, in which she claimed, Grabowski participated in dragging her into the house and held her arms down but did not personally rape or assault her. *See* Doc. No. 1-2 at 57–59, 70–71. The Polish jurisprudence also discusses in detail why the Polish trial court discredited this recantation at the trial and, instead, credited the victim's prior statements, from during the investigation, which more fully inculpated Grabowski. It notes that (1) the victim made her previous statements in close proximity to the incident, a mere one day afterwards (and, in fact several times); (2) the victim made the prior statements during the investigation despite the doubt she expressed about whether to move to

prosecute the assailants, whom she had known for years and with whom she had been friends; (3) these statements were consistent with what the victim told her mother after the assault, the victim's documented physical injuries, the distress and torn clothing the victim's mother observed immediately after the incident, the victim abandoning her watch and underwear at the scene, and Grabowski's eventual admission to having oral sex with the victim; and (4) Grabowski's denials were not credible because he changed his story and could not account for the victim's injuries and torn clothing.  *See* Doc. 1-2 at 54–62.

Moreover, the criminal court considered Grabowski's initial denial of having had close physical contact or oral sex with the victim on the date in question as well as his later reversal and statement that he became overwhelmed with desire when he walked into the room where his co-defendant and the victim were present, and claim that that victim willingly performed oral sex on him after declining traditional intercourse.

Finally, the Polish court also noted that Grabowski's family had asked the victim to recant, and that "an essential fact in the case" was that "Grabowski's family gave [the victim] a certain amount of money, which was supposed to financially gratify the harm that had been suffered by her."  Doc. 1-2 at 57.

The Polish court heard evidence that included the victim's initial statement, her mother's statement, the victim's recantation, evidence from a medical exam of the victim's injuries, and physical evidence such as the victim's torn clothing and her watch and underwear being found at the scene of the rape and assault.  That court was in the best position to make a credibility determination and factual finding.  It discredited the victim's purported explanations for recanting, including that she was in a state of shock and was afraid of the prosecutor, and her suggestion that

15

she was under the influence of tranquilizers during the preliminary proceedings. *See* Doc. 1-2 at 60. Thus, a judge in the best position to review all of the evidence, including the victim's initial statements, recantation, and testimony and her motivations for the same, concluded not only that there was probable cause but that Grabowski was guilty of the offenses charged.

For all these reasons, Grabowski's claims about how he will fare on the merits at the extradition hearing are not a special circumstance warranting bail.

<blockquote>

b.   <u>The extradition process will not be lengthy and is not unique to Grabowski</u>
</blockquote>

Grabowski argues that he should be released because he will engage in a protracted fight against extradition. *See* Mot. for Bail at 8–9. He argues that Poland has produced "voluminous materials" that "will take significant time to review and analyze." *Id.* at 8. Poland's extradition request is relatively short – 79 pages in total, approximately half of which is the English translation of the Polish originals. Nothing is special about the length of the materials Poland has submitted. Moreover, the materials were provided to Grabowski more than two months ago.

Next, he argues that he "intends to raise numerous, meritorious challenges to his extradition" and that "he will need significant time to track down and gather evidence that will prove the falsity of the accusations." *Id.* He cites only one such challenge – his argument that no probable cause exists based on the victim's affidavit discussed above. He has already obtained the affidavit. Otherwise, Grabowski does not provide any other information on what "evidence" he will gather and why gathering this evidence will lead to protracted proceedings or what challenges he will raise. And, as discussed above, his ability to present evidence that contradicts the extradition request is quite limited. In short, he does not provide anything resembling special circumstances that other similarly situated subjects of extradition could not raise.

16

Finally, he states his intention "to pursue all avenues of relief, including filing a petition of habeas corpus, appealing to the Second Circuit, and requesting relief from the State Department." Yet, again, despite the burden being on him to show special circumstances that are unique to his case, Grabowski does not provide any specifics that differentiate him from any other subject of extradition who could similarly voice an intention to "pursue all avenues of relief."

        c.      <u>Grabowski's lack of a criminal record in the United States is not a special circumstance warranting release</u>

Grabowski states that "[a]nother special circumstance is where a [fugitive] 'has no prior record and is not charged with a crime of violence.'" Mot. for Bail at 9 (citing *United States v. Taitz*, 130 F.R.D. 446 (S.D. Cal. 1990)). First, while the fugitive in *Taitz* was merely charged with non-violent offenses, Grabowski stands *convicted* of two *violent* offenses. Moreover, the focus of the *Taitz* opinion is on the complexity of the "substantial question" whether the offense charged "is an extraditable offense under the treaty," *id.* at 445, and whether there is "diplomatic necessity for denying bail," *id.* at 446–47.[5] The *Taitz* court also noted three other potential special circumstances including that "Taitz has no prior record and is not charged with a crime of violence. There is no allegation that he is a danger to any community on the basis of violence or continuing criminal conduct." *Id.* at 446. Those two sentences were the extent of the discussion of Taitz's lack of a criminal record. The finding that special circumstances existed in *Taitz* meriting release was not a finding that a lack of a criminal record in the United States is a special circumstance.

The second case cited by Grabowski for the proposition that a lack of a criminal record is a special circumstance found that the individuals whose extradition was sought – Duane Lee

---

[5] The apartheid government of South Africa was seeking Taitz's extradition in 1990.

Chapman, the star of the television show Dog: the Bounty Hunter, and family members with whom he worked and appeared on the show – "pose[d] no danger to any community on the basis of violence or criminal conduct" because their "livelihoods and public images rest on their commitment to upholding the law. *In re Extradition of Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006). It did not discuss whether Chapman had a criminal record and is no way analogous to the case at hand, where Grabowski has been convicted of two violent crimes.

In the third case cited by Grabowski, the subject of the extradition request asserts that "his character and demeanor amply justify release on bail. He emphasizes his marriage of seventeen years with two children, *lack of any noteworthy prior criminal record*, and success as an entrepreneur noted for integrity and honesty. To bolster his assertions regarding character and demeanor, [the subject of the extradition request] supplied the court with eighty-five letters from business associates and others, primarily residents of Mexico, who know him and can attest to his character." *Nacif-Borge*, 829 F. Supp. at 1220. The *Nacif-Borge* court concluded, however, that his assertions "do not establish a 'special circumstance.'" *Id.* Thus, it stands for the opposite proposition of what Grabowski asserts. Grabowski's lack of a criminal record in the United States is not a special circumstance warranting release.

> d.     Speculation regarding any potential effect of the COVID-19 pandemic on Grabowski does not constitute special circumstances

Grabowski asserts that his health amid the global COVID-19 pandemic justifies release. He does not present any evidence of an increased risk that he would suffer serious illness or death were he to contract this virus. Consequently, he has not differentiated himself from other individuals subject to extradition requests in order to show the special circumstances necessary to warrant release on bail.

Since the global outbreak of COVID-19, a number of extradition courts have denied bond on the basis that the virus is not a "special circumstance." *See In re Extradition of Taylor,* No. 20-MJ-1069-DLC, 2020 WL 3893049, at *1 (D. Mass. July 10, 2020); *In re Extradition of Rollo*, No. 20-80746-MC-UNA/BER, at 7 (S.D. Fla. May 28, 2020); *Risner v. Fowler*, 3:19-cv-03078, 2020 WL 2110579, at *7 (N.D. Tex. May 1, 2020); *Flynn v. Barr*, Case No. 20-60610-CIV-SMITH, at 2 (S.D. Fla. Apr. 29, 2020); *Valentino v. United States Marshal*, No. 4:20-CV-304, 2020 WL 1950765, at *2 (S.D. Tex. Apr. 15, 2020).

Two broad themes arise from these cases. First, the mere possibility of contracting the virus is not a "special circumstance." *See Risner*, 2020 WL 2110579, at *7 (noting that "general concern" of 76-year-old fugitive with history of hypertension and heart conditions "that he may contract COVID-19 while incarcerated, while understandable, does not warrant release"); *Valentino*, 2020 WL 1950765, *2 (73-year-old, hypertensive fugitive's "general arguments based on the pandemic, without any specific identified risks to him, do not suffice as a 'special circumstance'"); *see also Flynn*, at 2 (noting that the "[fugitive] has shown no special vulnerability to the Corona virus while in custody . . . . Indeed, [fugitive's] reasoning would compel release of all inmates at the jail because there is a health crisis throughout the entire community.").

Second, bail is unwarranted where the fugitive's health is not deteriorating and/or the facility in which he is held can address his medical needs. *Rollo*, No. 9:20-mc-80746-UNA, at 3-4 (COVID-19 not "special circumstance" when no evidence that jail "is unable to provide adequate medical treatment should [fugitive] contract COVID-19"); *Risner*, 2020 WL 2110579, at *7 (denying bail "[g]iven the absence of evidence that [fugitive] has been exposed to COVID-19 at FCI Seagoville, or that FCI Seagoville has any significant number of infections, and the lack of an

19

evidence to show FCI Seagoville would not be able to treat [him] if he contracted COVID-19");
*Valentino*, 2020 WL 1950765, *2 (finding that COVID-19 is not a "special circumstance" where
73-year-old fugitive with hypertension "does not identify any actual deterioration in his health or
any serious medical need that cannot be met at his facility during the pandemic").[6]

   In this case, Grabowski has presented no evidence that he is at an increased risk of serious
illness or death should he contract COVID-19.  His Motion for Bail merely asserts that he "is a
42-year-old man who is in poor physical and mental health.  Given his age and poor health, the
stress of a prolonged detention will almost surely result in a serious deterioration of [Grabowski's]
health."  Mot. for Bail at 14.  Grabowski, however, submitted no evidence suggesting he is in poor
health.  Quite the contrary, the letters Grabowski submitted from his friends and family describe
an active and fit man in his early 40s who works ten or twelve hour days in a physically demanding
job before coming home to play with his kids during the week and who plays soccer with his
friends every Sunday.  Neither has Grabowski alleged and provided evidence that the facility
where he is held would be unable to render adequate medical care should he contract COVID-19.
Grabowski's alleged fears that he will contract COVID-19 do not differentiate him from other
subjects of extradition requests and do not constitute a "special circumstance."

---

[6] In an opinion early on in the pandemic, one Magistrate Judge found that a 74-year old was "at risk of serious
illness or death if he remains in custody," which constituted a special circumstance warranting release on bail.
*Matter of Extradition of Toledo Manrique*, 445 F. Supp. 3d 421, 422 (N.D. Cal. 2020) (decided March 19, 2020).
This decision, after emphasizing that shelter-in-place orders were imposed for the San Francisco Bay area and the
international travel bans that were imposed, which that court believed would make flight more difficult, failed to
articulate what about the fugitive – besides his age – rendered him at risk of serious illness or death if he remained in
custody.

> e.   Under the rule of non-inquiry, the executive branch has sole authority to determine whether to proceed with an extradition to Poland based on concerns regarding the fairness of Poland's judiciary

Humanitarian claims – and, more specifically here, vague attacks on the integrity of the Polish judicial system – are not a special circumstance that could justify granting bail.  In fact, it is unclear why it should be a consideration at all when it comes to a bail determination.  The question of whether to extradite based on the judicial integrity of the requesting state is properly left to the executive branch and should not be considered by courts even at extradition hearings, much less at a bail determination.

"Under the settled rule of non-inquiry, the executive branch has sole authority to consider . . . humanitarian considerations in deciding on extradition requests."  *Noeller v. Wojdylo*, 922 F.3d 797, 808 (7th Cir. 2019) (citing *Hoxha*, 465 F.3d at 563); *see also Ahmad*, 910 F.2d at 1067 ("It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds.") (citations omitted); *Quinn v. Robinson*, 783 F.2d 776, 789–90 (9th Cir. 1986) (noting that Secretary of State has "sole discretion . . . to refuse extradition on humanitarian grounds") (internal citations omitted).  Once a court certifies a fugitive as extraditable, the Secretary of State "exercises broad discretion and may properly consider factors affecting both the individual [fugitive] as well as foreign relations in deciding whether extradition is appropriate." *Hoxha*, 465 F.3d at 563 (internal quotation marks and citation omitted).

The rule of non-inquiry limits a U.S. extradition court from "investigating the fairness of a requesting nation's justice system . . . ."  *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).  As the Second Circuit has held, "[i]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.  Such

an assumption would directly conflict with the principle of comity upon which extradition is based." *Jhirad v. Ferrandina*, 536 F.2d 478, 484–85 (2d Cir. 1976) (citing *Factor v. Laubenheimer*, 290 U.S. 276 (1933)).

Such issues are best left for the executive branch, "which has both final say and greater discretion in these proceedings," to resolve. *Id.* at 111; *see also Noeller*, 922 F.3d at 808 (explaining that the rule of non-inquiry "is intended to prevent extradition courts from engaging in improper judgments about other countries' law enforcement and judicial procedures" and "serves interests of international comity by relegating to political actors the sensitive foreign policy judgments that are often involved in the question of whether to refuse an extradition request") (quoting *Hoxha*, 465 F.3d at 563); *Ahmad*, 910 F.2d at 1067 ("The interests of international comity are ill-served by requiring a foreign nation . . . to satisfy a United States district judge concerning the fairness of its laws and the manner in which they are enforced.").

While Grabowski asserts that courts outside the United States have, in isolated cases, under unknown circumstances, declined to extradite individual fugitives to Poland, the existence of any such isolated foreign cases is not material to the determination this Court will make, at the extradition hearing, concerning whether the elements to certify extradition for the Secretary's further consideration are present. *See* 18 U.S.C. § 3184 (requiring that if, upon conducting the extradition hearing, the judicial officer "deems the evidence sufficient to sustain the charge under the provisions of the proper treaty . . . , he *shall* certify the same, together with a copy of all the testimony taken before him, to the Secretary of State") (emphasis added); *see also*, *e.g.*, *In re Extradition of Czerech*, No. MAG 19-6763, 2020 WL 603998, at *6 (D.N.J. Feb. 6, 2020) (certifying extradition to Poland for offense of rape). If the Court certifies Grabowski's

22

extradition, Grabowski may submit any humanitarian concerns to the Secretary for consideration. There is no reason, however, for this Court to usurp the role of the Secretary of State – thereby deviating from Congressional intent, legal precedent, and the well-established rule of non-inquiry – to entertain Grabowski's vague suggestion that Poland's judiciary has lost its fairness and independence.

> f.   An application for asylum is not a special circumstance warranting release on bail

That Grabowski plans to file, or has filed, an application for asylum is not a special circumstance warranting bail in these proceedings.  Grabowski asserts that he is applying for asylum and suggests that the Court should not certify extradition before the immigration proceeding concludes.  A petition for asylum, however, would not preclude or stay the Court's certification of extradition.  And again, it is unclear why an asylum application should be a consideration at all when it comes to a bail determination pending extradition proceedings.

As a threshold matter, the United States extradites its own citizens pursuant to its treaty obligations with requesting countries.  Asylum, or even United States citizenship, is not, by itself, sufficient for a court to refuse to certify an extradition request. *See, e.g., Mironescu v. Costner*, 345 F. Supp. 2d 538, 546 (M.D.N.C. 2004) ("Individuals who have been granted an asylum are still eligible for extradition for non-political crimes, just as even United States citizens may be extradited for crimes committed in other countries with whom we have extradition treaties.").  In addition, as previously stated, the Secretary of State, not a court, determines whether alleged humanitarian concerns should preclude extradition. *See Munaf v. Geren*, 553 U.S. 674, 700 (2008) (observing that, in a case seeking habeas relief from extradition, allegations that a transfer to Iraqi custody would result in torture "are of course a matter of serious concern" but finding that "in the

present context those allegations generally must be addressed by the political branches, not the Judiciary"); *In re Extradition of Simeonov*, No. 19 CR 344, 2019 WL 2994521, at *5 (N.D. Ill. July 9, 2019) (holding that because a fugitive's pending asylum claim "does not relate to certification, it must be considered by the Secretary of State, not this Court").

Immigration and extradition proceedings serve different purposes, and different laws and procedures apply to them. *See Castaneda-Castillo v. Holder*, 638 F.3d 354, 361 (1st Cir. 2011) (noting that "although asylum and extradition proceedings are related insofar as they both bear on whether [a person] will ultimately be forced to return to [his home country], they are rooted in distinct sources of law, governed by procedures specified in distinct statutory regimes, and responsive to different sets of policy concerns"; *see also Noeller*, 922 F.3d at 809 (noting that it "may often make sense" for an immigration court to stay the *asylum proceeding* pending the outcome of the fugitive's extradition case).   Asylum proceedings under the Immigration and Nationality Act are not a substitute for extradition proceedings, which address the return of fugitives to face trial or to serve time for crimes charged by a separate sovereign. *See Barapind v. Reno*, 225 F.3d 1100, 1104–05 (9th Cir. 2000) (noting that extradition "provides a separate and independent procedure from exclusion or removal proceedings initiated under the INA for the removal of an alien from the United States").

For all of the reasons provided above, the United States submits that no special circumstances exist that would warrant granting bail in this case.

        4.     <u>Grabowski's argument that due process requires his release asks this Court to ignore binding Supreme Court precedent</u>

Grabowski concludes his Motion for Bail by arguing that should he be found not to be a flight risk, due process requires his release.  Mot. for Bail at 18–20.  For this bold assertion,

Grabowski relies almost entirely on *Parretti v. United States*, 122 F.3d 758, 761 (9th Cir. 1997), *opinion withdrawn on reh'g*, 143 F.3d 508 (9th Cir. 1998).[7]  A district judge found that Parretti was not a flight risk, but then denied bail.  The Ninth Circuit panel reversed the denial "and ordered him released on two independent grounds: first, that his arrest violated the Fourth Amendment because the government had failed to make the required evidentiary showing of probable cause to believe Parretti had committed an extraditable crime; and second, that his detention without bail violated the Due Process Clause of the Fifth Amendment in light of the district court's finding that he was not a flight risk." *Id.* at 763–64 (9th Cir. 1997).  The panel's opinion was withdrawn when the Ninth Circuit granted rehearing *en banc*, and the appeal was then dismissed because Parretti, who had been found not to be a flight risk by the district judge and who was ordered released by the Ninth Circuit panel, fled the country.  *Parretti*, 143 F.3d at 510.

Granting bail on this ground would require this Court to ignore binding Supreme Court precedent – *Wright*, *v. Henkel*, 190 U.S. 40 (1903), which established the presumption against bail based on the obligation of the United States to deliver, after he is apprehended, the person sought by a foreign government pursuant to a valid treaty.  Grabowski asks this Court to ignore *Wright* because, as Grabowski describes it, the Supreme Court's decision is "dated."  Mot. for Bail at 19. The Supreme Court has had more than 100 years to reconsider *Wright* and has not done so, and this Court must follow that valid, binding precedent.

---

[7] It should be noted that Parretti was arrested pursuant to a diplomatic note from France requesting his provisional arrest, not pursuant to a formal extradition request.  *Id.*

## **CONCLUSION**

For the foregoing reasons, the United States requests that Grabowski be detained until the

conclusion of the extradition process.[8]


                                        JOHN H. DURHAM
                                        UNITED STATES ATTORNEY

                        By:   _____

                                        KONSTANTIN LANTSMAN
                                        ASSISTANT UNITED STATES ATTORNEY
                                        FEDERAL BAR NO. phv10692
                                        Konstantin.Lantsman@usdoj.gov
                                        157 Church Street, 25th Floor
                                        New Haven, CT 06510
                                        Tel: (203) 821-3700

---

[8] Should, however, the Court be inclined to grant bail in this case, the United States respectfully requests that the Court submit special written findings as to those specific matters that are found to constitute "special circumstances." Moreover, in order to protect the ability of the United States to meet its treaty obligations to the Government of Poland, the United States also requests that the Court notify the parties within a reasonable amount of time in advance of any contemplated release order.