UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

In the Matter of the Extradition of          :
                                             :
PIOTR JAN GRABOWSKI                          :          Case No. 3:20-mc-00068 (WIG)
   a/k/a "Walerek"                          :
                                             :          November 17, 2020
                                             :

**<u>MEMORANDUM OF LAW IN SUPPORT OF EXTRADITION</u>**

## I.    Background

On October 3, 2001, the Provincial Court in Rzeszów, Poland, convicted Piotr Jan Grabowski ("Grabowski" or the "fugitive") of (1) rape; and (2) participating in a brawl or beating leading to injury. The Polish court sentenced him to 2 years and 6 months' imprisonment and credited about four-and-a-half months that Grabowski had already spent in custody. On December 20, 2001, the Court of Appeals in Rzeszów affirmed the judgment. On May 19, 2003, after Grabowski failed to appear at the penal institution to serve his sentence, the Provincial Court in Rzeszów issued a warrant for his arrest. At a date unknown—because Grabowski is suspected to have entered the United States illegally—Grabowski fled Poland for the United States.

Poland now seeks Grabowski's extradition in order to compel Grabowski to complete his sentence. The United States, in fulfillment of its treaty[1] obligations to Poland and pursuant to 18 U.S.C. §§ 3181 *et seq.*, filed a complaint in this District seeking a warrant for Grabowski's arrest. U.S. Magistrate Judge Sarah A.L. Merriam issued an arrest warrant, and Grabowski was arrested

---

[1] *See* Extradition Treaty Between the United States of America and the Republic of Poland, U.S.-Pol., July 10, 1996, S. TREATY DOC. NO. 105-13 (1997) and Agreement Between the United States of America and the Republic of Poland on the application of the Extradition Treaty Between the United States of America and the Republic of Poland signed 10 July 1996, U.S.-Pol., June 9, 2006, S. TREATY DOC. NO. 109-14 (2006) (together, the "Treaty," filed as an exhibit to the Complaint).

on August 28, 2020, in Connecticut.  *See* Doc. Nos. 1, 2.  Grabowski is currently in the custody of the U.S. Marshals Service.

The United States seeks Grabowski's extradition in accordance with its treaty obligations to Poland.  The judicial officer handling the extradition must hold a hearing to consider the evidence of criminality that Poland has presented and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention."  18 U.S.C. § 3184.  If the judicial officer finds the fugitive extraditable, he must certify that conclusion to the Secretary of State, who decides whether to surrender the fugitive.  Because the law regarding extradition is *sui generis*, differing substantially from ordinary criminal or civil proceedings, the United States offers this memorandum as a guide to the nature of the extradition hearing and the Treaty's application to the facts of this case.  As detailed here, the evidence Poland has submitted fulfills the relevant Treaty requirements.  The Court should therefore "certify the same" to the Secretary of State, who will then decide whether to surrender the fugitive "according to the treaty."  *Id.*[2]

## II.    Statement of Facts

According to information the Government of Poland has provided, including the trial court's Judgment in the Name of the Republic of Poland and Reasons for Judgment (collectively, the "Polish Judgment") (Doc. No. 1-2 at 50–65), Grabowski was convicted in 2001 of (1) rape, in violation of Article 197 § 3 of the Polish Penal Code and (2) participating in a brawl or beating leading to injury, in violation of Article 158 § 1 and Article 157 § 1 of the same Code.  The Polish court sentenced him to 2 years and 6 months' imprisonment.  As discussed herein, the criminal

---

[2] After the Court completes its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender."  *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993).  "The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual [fugitive] as well as foreign relations, which the extradition magistrate may not."  *Id.*

conduct underlying these convictions, and the extradition request, corresponds to crimes under United States and Connecticut law.

Poland's submissions in support of extradition, including the Polish jurisprudence from Grabowski's conviction, reflect that the victim told Polish police the following:  On May 16, 2001, in Stare Miasto, when the victim was returning home from shopping, she saw Piotr Jan Grabowski and his co-defendant, Ireneusz Zagaja ("Zagaja").  (Doc. No. 1-2 at 52).  The two men, who appeared to be under the influence of alcohol, asked her to stop by for a while and to get off her bike.  *Id.*  When the victim went along with this, the two men took away her bike and went toward Grabowski's house.  *Id.*  The victim followed the men because she wanted to get the bike back, as it belonged to her friend.  *Id.*  They reached an unfinished residential building on Grabowski's property, where they sat on a little wall and smoked cigarettes.  *Id.*

At one point, the two men grabbed the victim by the arms, dragged her into a room on the landing level of the house, started to undo her bra, put their hands under her clothing, and told her she was the sexiest girl in Stare Miasto.  *Id.*  Zagaja asked Grabowski to leave the room, which Grabowski did for a while.  *Id.* at 53.  Zagaja removed the victim's sweater.  *Id.*  The victim resisted, pushing Zagaja against the wall, crying, and screaming.  *Id.*  Zagaja called for Grabowski, who came back into the room and closed the door.  *Id.*  The two assailants tried, initially without success, to knock the victim over onto a bed.  *Id.*  Grabowski told the victim that they would allow her to leave only after she performed oral sex on them, and he started to unzip her trousers.  *Id.*  The victim ran to the window and called for help.  *Id.*  Zagaja hit the victim, which caused her head to hit the wall.  *Id.*  The assailants pushed the victim onto the bed.  *Id.*  Zagaja held the victim's arms, and Grabowski sat on her abdomen.  *Id.*

Grabowski put his penis into the victim's mouth, and Zagaja put his penis in the victim's palm. *Id.* The victim tussled and, when Grabowski removed his penis from her mouth, screamed. *Id.* Grabowski hit the victim in the face and told her nobody would hear her. *Id.* Zagaja put his fingers inside the victim's vagina, commenting that perhaps this would satisfy her more quickly. *Id.*

The assailants laughed and got up from the victim's body. *Id.* The victim put her clothing on (leaving behind her watch and underwear, which were eventually found by police), as she wanted to leave quickly. *Id.* Grabowski blocked her way and said he would let her leave only after he ejaculated. *Id.* Although the victim managed to exit the room, Zagaja dragged her to the bathroom and started unzipping her trousers. *Id.* at 53–54. When Grabowski opened the bathroom door slightly, the victim tried to escape. *Id.* at 54. Grabowski grabbed the victim's sweater and tore it. *Id.* Eventually, the victim escaped the house, took the bike, and rode home. *Id.*

The victim's mother told police that when the victim reached home, the victim's clothes were torn, and she was crying and in great distress. *Id.* The victim told her mother that Grabowski and Zagaja had dragged her to the newly built house and used physical force to assault her sexually. *Id.*

A medical exam the day after the assault indicated that the victim suffered injuries including bruising to the right shoulder with palpable pain, edema in the occipital area with palpable pain, bruising to the left arm, pain in the sternum, and a bruise on the right thigh. *Id.* at 54–55.

Although Grabowski initially denied having close physical contact or oral sex with the victim on the date in question, he later stated, in July 2001, that he became overwhelmed with

desire when he walked into the room where Zagaja and the victim were present, and claimed that that victim willingly performed oral sex on him after declining traditional intercourse.  *Id.*  at 55–56.  Grabowski did not explain how the victim sustained physical injuries, why her clothing was ripped, and why she abandoned her watch and underwear in the room where the incident occurred. *Id.* at 56.

The Polish Trial Judgment expressly recounts that the victim recanted at trial, presenting a revised version of events more favorable to Grabowski, in which, she claimed Grabowski participated in dragging her into the house and held her arms down but did not personally rape or assault her.  *Id.* at 57–59; *see also id.* at 70–71 (Polish appellate court reaching the same conclusion).  The Polish court, in its Reasons for Judgment, discusses in detail why it discredited this recantation at the trial and, instead, credited the victim's prior statements, which more fully inculpated Grabowski.  *Id.* at 57–59.

Specifically, the Provincial Court explained that it credited the victim's earlier statements because (1) the victim spoke with police in close proximity to the incident, a mere one day afterwards (and, in fact, several times); (2) the victim made these statements despite the doubt she expressed about whether to move to prosecute the assailants, whom she had known for years and with whom she had been friends; (3) these statements were consistent with what the victim told her mother after the assault, the victim's documented physical injuries, the distress and torn clothing the victim's mother observed immediately after the incident, the victim abandoning her watch and underwear at the scene, and Grabowski's eventual admission to having oral sex with the victim; and (4) Grabowski's denials were not credible because he changed his story and could not account for the victim's injuries and torn clothing.  *Id.*  The Provincial Court also noted that

5

the victim had known the defendants for years, that Grabowski's family had asked her to recant, and that Grabowski's family had given her money.  *Id.*

On August 28, 2020, U.S. Marshals Service personnel arrested Grabowski at his home in Greenwich, Connecticut.  He was brought before this Court on the same day.  His oral motion for bond, Doc. No. 8, was denied without prejudice, Doc. No. 9.  His subsequent motion for release on bond, Doc. No. 17, was denied after a hearing on November 4, 2020.  Doc. No. 21.

## III.    Applicable Law Concerning International Extradition Hearings and Argument

The extradition process is *sui generis*, neither a criminal nor a civil proceeding. Accordingly, we have outlined the United States' extradition scheme below, and have detailed the court's circumscribed role in the extradition process.

### A.    The limited role of the Court in extradition proceedings

Extradition is a means by which a fugitive is returned to a foreign country, typically pursuant to a treaty, to face criminal charges or to serve a sentence of imprisonment.  In the United States, international extradition is primarily an executive function, with a limited role carved out for the judiciary pursuant to the federal extradition statute.  *See* 18 U.S.C. § 3184.  Pursuant to 18 U.S.C. § 3184, the judicial officer's inquiry is confined to whether (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the treaty; and (5) there is sufficient evidence to support a finding of probable cause as to the charges for which extradition is sought.  *See id.*; *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *see also Skaftouros v. United States*, 667 F.3d 144, 154-55 (2d Cir. 2011).  "If the judicial officer answers these questions in the affirmative, he or she 'shall certify'

6

the extraditability of the fugitive to the Secretary of State." *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000) (quoting 18 U.S.C. § 3184). After a court certifies a fugitive as extraditable, the Secretary of State decides whether the fugitive will be surrendered to the requesting country. *See* 18 U.S.C. §§ 3184, 3186; *see also, e.g.*, *Lo Duca v. United States*, 93 F.3d 1100, 1103-04 (2d Cir. 1996).

Thus, extradition is primarily an executive function with a specially defined, limited, role for a judicial officer, who is authorized by statute to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge." 18 U.S.C. §§ 3184; 3186; *Lo Duca*, 93 F.3d at 1110 n.10; *Martin*, 993 F.2d at 828. The Secretary of State, and not the court, makes the decision regarding whether the fugitive should ultimately be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; *Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir. 1980) ("The ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct its foreign affairs."). The extradition judge is assigned the limited duty of determining the request's sufficiency under the applicable treaty provisions. *Martin*, 993 F.2d at 828–29. That judicial function is carried out by conducting a hearing pursuant to 18 U.S.C. § 3184. "This bifurcated procedure reflects the fact that extradition proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

At the extradition hearing, the court should consider the evidence presented on behalf of the requesting country and determine whether the legal requirements for certification—as defined

in the Treaty, statutes, and case law—have been established. *Quinn v. Robinson*, 783 F.2d 776, 786 n.3 (9th Cir. 1986) (citing *Charlton v. Kelly*, 229 U.S. 447, 461 (1913)); *In re Extradition of Garcia*, 825 F. Supp. 2d 810, 815 (S.D. Tex. 2011). If the fugitive offers any explanatory evidence, the court should rule on its admissibility. Once the evidentiary record is complete, the court should make written findings of fact and conclusions of law as to each of the elements for certification, including separate findings for each offense as to which extradition is sought. *Shapiro v. Ferrandina*, 478 F.2d 894, 905–06 (2d Cir. 1973), *cert. dismissed*, 414 U.S. 884 (1973). If the court finds that the requirements for certification have been met, the court must furnish the certification to the Secretary of State, together with a copy of the evidence and a transcript of any testimony presented at the hearing, and must commit the fugitive to the custody of the United States Marshal to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184; *see Sidali v. I.N.S.*, 107 F.3d 191, 195 (3d Cir. 1997); *Ordinola v. Hackman*, 478 F.3d 588, 597 (4th Cir. 2007).

In fulfilling its function under Section 3184, the judicial officer should construe liberally the applicable extradition treaty in order to effect its purpose, namely, the surrender of fugitives to the requesting country. *See Factor v. Laubenheimer*, 290 U.S. 276, 303 (1933) ("Extradition treaties are to be liberally, not strictly, construed."); *In re Extradition of Aquino*, 697 F. Supp. 2d 586, 590 (D.N.J. 2010) ("In construing such treaties, form is not to be insisted upon beyond the requirements of safety and justice.") (citations omitted); *McElvy v. Civiletti*, 523 F. Supp. 42, 47 (S.D. Fla. 1981); *In re Extradition of Nezirovic*, No. CIV.A. 7:12MC39, 2013 WL 5202420, at *5 (W.D. Va. Sept. 16, 2013) ("Treaties are construed liberally to favor the obligation to surrender fugitives.") (citation omitted). As the Supreme Court explained in *Factor*:

> In choosing between conflicting interpretations of a treaty obligation, a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them.

290 U.S. at 293. To carry out a treaty obligation, the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure." *Id.* at 298. This country does not expect foreign governments to be versed in our criminal laws and procedures. *Grin v. Shine*, 187 U.S. 181, 184 (1902). Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." *Fernandez*, 268 U.S. at 312.

A court should afford great weight to statements by the U.S. Department of State regarding treaty interpretation. *See El Al Israel Airlines*, *Ltd. v. Tseng*, 525 U.S. 155, 168 (1999); *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 184–85 (1982) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight."); *Ahmad v. Wigen*, 726 F. Supp. 389, 402 (E.D.N.Y. 1989), *aff'd*, 910 F.2d 1063 (2d Cir. 1990) ("The State Department's view deserves deference, unless it represents a substantial departure from national or international norms.").

Similarly, a U.S. extradition court "is not entitled to second guess [the requesting country]'s compliance with its own laws." *Jean v. Mattos*, No. CIV. 13-5346 KSH, 2014 WL 885058, at \*4 (D.N.J. Mar. 5, 2014) (citation omitted).

### B.    The Requirements for Certification Are Satisfied

An extradition certification is in order where: (1) The judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the

applicable treaty is in full force and effect; (4) the crimes for which extradition is requested are covered by the applicable treaty; and (5) sufficient evidence exists to support a finding of probable cause as to each charge for which extradition is sought.   18 U.S.C. § 3184; *see Fernandez*, 268 U.S. at 312; *Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006); *Sidali*, 107 F.3d at 195.   Each of these requirements are satisfied here, as discussed in turn below.

### 1.  The Court Has Authority Over the Proceedings

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State."  18 U.S.C. § 3184.  As such, the judicial officer conducting the extradition hearing that Section 3184 prescribes does not exercise "any part of the judicial power of the United States" but, rather, acts in a "non-institutional capacity by virtue of a special authority."  *In re Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993) (internal quotation marks and citations omitted).  Both magistrate judges and district judges may render a certification under Section 3184.  *See* Local R. 72.1(B) (expressly authorizing magistrate judges to conduct extradition proceedings).

### 2.  The Court Has Jurisdiction Over Grabowski

A court has jurisdiction over a fugitive found within its jurisdictional boundaries.   18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person found within his jurisdiction . . . issue his warrant for the apprehension of the person so charged."); *see Pettit v. Walshe*, 194 U.S. 205, 219 (1904); *In re Pazienza*, 619 F. Supp. 611, 616 (S.D.N.Y. 1985). Because Grabowski was found in this District when he was arrested on the aforementioned extradition warrant, the personal jurisdictional requirement of 18 U.S.C. § 3184 is met.

### 3.   The Relevant Treaty Is in Full Force and Effect

The extradition statute, 18 U.S.C. § 3184, provides for extradition where a treaty or convention is in force between the requesting state and the United States.   *See, e.g.*, *Hoxha*, 465 F.3d at 562; *United States ex rel Saroop v. Garcia*, 109 F.3d 165, 171 (3d Cir. 1997).

Here, the government has provided, and filed with the Complaint, a declaration from Tom Heinemann, an attorney in the Office of the Legal Adviser for the Department of State, attesting that there is a treaty in full force and effect between the United States and Poland (the "Heinemann Declaration"; *see* Doc. No. 1-1 at 1–2).   The Department of State's determination is entitled to deference from the Court.   *See Charlton*, 229 U.S. at 468; *Terlinden v. Ames*, 184 U.S. 270, 288 (1902); *Kastnerova v. United States*, 365 F.3d 980, 985–87 (11th Cir.), *cert. denied*, 541 U.S. 1090 (2004); *Garcia*, 109 F.3d at 171; *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996).

### 4.   The Treaty Covers the Crimes for Which Poland Seeks Extradition

Extradition treaties create an obligation for the United States to surrender fugitives under particular circumstances.   Here, the Treaty provides for the extradition of "persons whom the authorities in the Requesting State seek for prosecution or have found guilty of an extraditable offense."   Treaty Art. 1.   Further, the Treaty provides that "[a]n offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty."   *Id.* Art. 2(1).   The Treaty also provides that an offense "shall be an extraditable offense" regardless of whether "the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction."   *Id.* Art. 2(3)(b).

11

Consequently, the Court should examine the description of criminal conduct that Poland has provided in support of the charge and decide whether that conduct would have been criminal under U.S. law if committed in this country.  Dual criminality exists if the conduct involved in the foreign offense would be criminal under either U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states.  *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107-108 (9th Cir. 1981); *In re Extradition of Manzi*, 888 F.2d 204, 207 (1st Cir. 1989); *Quintanilla v. United States*, 582 F. App'x 412, 414 (5th Cir. 2014).

 Because extradition treaties should be "interpreted with a view to fulfil our just obligations to other powers[,]" *Grin*, 187 U.S. at 184; *see Factor*, 290 U.S. at 303, a court should "approach challenges to extradition with a view toward finding the offense within the treaty," *McElvy*, 523 F. Supp. at 48; *see also Martinez v. United States*, 828 F.3d 451, 463 (6th Cir. 2016) ("The point of an extradition treaty after all is to facilitate extradition . . . .").

Thus, Poland is not obliged to establish that its crimes are identical to ours.  See Treaty Art. 2(3)(a) (providing that an offense shall be extraditable regardless of whether the laws in the Contracting States "place the offense within the same category offenses or describe the offense by the same terminology").  In *Collins v. Loisel*, the Supreme Court held that dual criminality exists "if the particular act charged is criminal in both jurisdictions," even if the name of the offense or the scope of the liability differs in the two countries.  259 U.S. 309, 312 (1922); *see United States v. Riviere*, 924 F.2d 1289, 1302 (3d Cir. 1991) ("[T]he rule of double criminality does not require that the elements, purposes, or punishment for foreign offenses be identical to ours.").[3]

---

[3] Furthermore, the treaty provides that "[i]f extradition has been granted for an extraditable offense, it shall also be granted for any other offense specified in the request, even if the latter offense is punishable by deprivation of liberty for one year or less, provided that all other requirements for extradition are met."  Treaty Ar. 2(5) (Doc. No. 1-1 at 11–12).

Dual criminality exists in this case.  Poland seeks Grabowski's extradition for the offenses of (1) rape, in violation of Article 197 § 3 of the Polish Penal Code;[4] and (2)  participating in a brawl or beating leading to injury, in violation of Article 158 § 1 (and Article 157 § 1) of the same Code.[5]   Grabowski has been convicted of the offenses and sentenced to two and a half years of imprisonment, of which he served and was credited for nearly five months.

According to the submissions from the Polish government, the relevant conduct comprised:

> [O]n May 16, 2001 in Stare Miasto[, Poland,] [Grabowski,] acting together and in agreement with another identified person, using violence in the form of throwing [the victim] against a wall, holding her down and hitting her in the face with his hand, forced [the victim] to have [] sexual intercourse, and caused physical injuries to her such as bruising on the right shoulder, a palpable pain in the occipital area with edema, bruising on the left arm, some pain in the sternum and bruising on the right thigh, all of which constituted the physical injuries. . .

(Doc. No. 1-2 at 43).

---

[4] The version of Article 197 in effect during the relevant period provided:

§ 1.  Whoever, by force, illegal threat or deceit subjects another person to sexual intercourse, shall be subject to the penalty of the deprivation of liberty for a term of between 1 and 10 years.

§ 2.  If the perpetrator, in the manner specified in § 1, makes another person submit to other sexual act or to perform such an act, they shall be subject to the penalty of the deprivation of liberty for a term of between 3 months and 5 years.

§ 3.  If the perpetrator commits the rape specified in § 1 or § 2, with particular cruelty, or commits it in common with other person, shall be subject to the penalty of the *deprivation of liberty for a term of between 2 and 12 years*.

(Doc. No. 1-2 at 43, 78 (emphasis added)).

[5] Article 158 § 1 of the Polish Penal Code provides that "[w]hoever participates in a brawl or beating in which a human being is exposed . . . to a consequence referred to in Article 157 § 1, shall be subject to the penalty of *deprivation of liberty for up to 3 years*."  (Doc. No. 1-2 at 43 (emphasis added)).  Article 157 § 1 provides that "[w]hoever causes a physical injury or some impairment to health other than specified in Article 156 § 1, shall be subject to the penalty of the deprivation of liberty for a term of between 3 months and 5 years."  (Doc. No. 1-2 at 42).  The version of Article 156 § 1 in effect during the relevant period covered "grievous bodily harm in a form which:  (1) deprives a human being of sight, hearing, speech or the ability to procreate, or (2) inflicts on another a serious crippling injury, an incurable or prolonged illness, an illness actually dangerous to life, a permanent mental illness, a permanent total or substantial incapacity to work in an occupation, or a permanent serious bodily disfigurement or deformation."  (Doc. No. 1-2 at 79).

Grabowski's conduct underlying the Polish criminal conviction for rape, had he committed the activity in the United States, would be subject to prosecution under laws including 18 U.S.C. § 2241(a) (aggravated sexual abuse, punishable by life imprisonment);[6] 18 U.S.C. § 2244(b) (abusive sexual contact, punishable by two years imprisonment);[7] and Conn. Gen. Stat. § 53a-72a (sexual assault in the third degree, punishable by one to five years imprisonment).[8]

Grabowski's conduct underlying the Polish criminal conviction for participating in a brawl or beating leading to injury, had he committed the activity in the United States, would be subject to prosecution under laws including 18 U.S.C. § 113(a)(2) (assault, punishable by up to ten years imprisonment).[9] Even if Grabowski's assaultive conduct does not rise to the level of a state or federal felony, the Treaty explicitly provides that if extradition is granted for an extraditable offense, such as the conduct underlying the rape conviction, then extradition "shall also be granted for any other offense specified in the request, even if the latter offense is punishable by deprivation

---

[6] 18 U.S.C. § 2241(a) provides, in relevant part that anyone who, in the special maritime and territorial jurisdiction of the United States, knowingly causes, or attempts to cause, another person to engage in a sexual act (1) by using force against that other person or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; is subject to penalties including life imprisonment.  18 U.S.C. § 2246(1) defines "sexual act" to include:  "(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus."

[7] 18 U.S.C. § 2244(b) provides that anyone who, in the special maritime and territorial jurisdiction of the United States, knowingly engages in, or causes, sexual contact with another person without that other person's permission, is subject to penalties including two years imprisonment.  18 U.S.C. § 2246(3) defines sexual contact as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

[8] Conn. Gen. Stat. § 53a-72a(a) provides that a "person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person . . ., or (B) by the threat of use of force against such other person . . ., which reasonably causes such other person to fear physical injury to himself or herself. . . ."  Conn. Gen. Stat. § 53a-72a(b) provides that sexual assault in the third degree is a class D felony, which subjects the offender to one to five years of imprisonment.

[9] 18 U.S.C. § 113(a)(2) provides, in relevant part that anyone who, in the special maritime and territorial jurisdiction of the United State, is guilty of an assault with intent to commit any felony except murder or a violation of section 2241 or 2242, shall be punished by up to ten years imprisonment.

of liberty for one year or less, provided that all other requirements for extradition are met."  Treaty at Article 2, ¶ 5 (Doc. No. 1-1 at 11–12).  Accordingly, the Treaty covers both of the offenses for which Poland seeks to extradite Grabowski.

### 5.   Probable Cause Exists to Believe that Grabowski Committed the Offenses

To certify the evidence to the Secretary of State, the Court must conclude that probable cause exists to believe that Grabowski committed the offenses for which Poland seeks his extradition.  *See, e.g.*, *Cheung*, 213 F.3d at 88.  It is well-established that "the function of the extraditing magistrate is not to decide guilt or innocence but merely to determine whether there is 'competent legal evidence which . . . would justify his apprehension and commitment for trial if the crime had been committed in that state.'"  *Shapiro*, 478 F.2d at 900–91 (quoting *Collins*, 259 U.S. at 315); *see also, e.g.*, *Austin v. Healey,* 5 F.3d 589, 603 (2d Cir.1993) ("[T]he order of extraditability expresses no judgment on [the fugitive's] guilt or innocence."); *Haxhiaj v. Hackman*, 528 F. 3d 282, 287 (4th Cir. 2008) ("The extradition hearing is not to serve as a full-blown trial and serves simply to permit a limited inquiry into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country.") (internal quotation marks omitted).

The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to 18 U.S.C. § 3184 is the familiar domestic requirement of probable cause.  The court must conclude that probable cause exists to believe that the crime Poland alleges were committed, and that the person before the Court committed it.  *See Hoxha*, 465 F.3d at 561; *Sidali*, 107 F.3d at 199 ("[T]he probable cause standard applicable in extradition proceedings is identical to that used by courts in federal preliminary hearings.").  "Section 3184 requires the extradition court to conduct

essentially the same preliminary inquiry typically required for issuance of a search warrant or an arrest warrant." *Haxhiaj*, 528 F.3d at 287. "This is a relatively modest standard that requires the Court consider 'the totality of the circumstances' involved." *In re Extradition of Jean*, No. MAG. 13-3588 MF, 2013 WL 4502102, at *3 (D.N.J. Aug. 22, 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The evidence is sufficient, and probable cause exists, if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). "[T]he foreign government is not required to present its entire case in this country. The evidence presented need only support a reasonable belief'" that the fugitive committed the offense. *Jean*, 2013 WL 4502102, at *4 (quoting *Austin,* 5 F.3d at 605). The Supreme Court stated in *Benson v. McMahon* that:

> [T]he proceeding before the commissioner is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him.

127 U.S. 457, 463 (1888); *see also Fernandez*, 268 U.S. at 312 ("Competent evidence to establish reasonable grounds is not necessarily evidence competent to convict."); *Collins*, 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); *accord Ordinola*, 478 F.3d at 608 ("It is fundamental that the person whose extradition is sought is not entitled to a full trial at the magistrate's probable cause hearing . . . . That is the task of the . . . courts of the other country.").

16

More critically in this case, Grabowski is not being sought to stand trial; rather, he has been convicted and sentenced, and his conviction and sentence were affirmed on appeal.  Because Grabowski was convicted in Poland after a trial for which he was present, the Polish judgment of conviction, which Poland's extradition request includes, is definitive evidence of probable cause. Article 9(4) of the Treaty provides that where, as here, the extradition request pertains to a fugitive who already "has been found guilty of the offense[s] for which extradition is sought," the request must include "(a) a copy of the warrant or order of arrest, if any . . . ; (b) *a copy of the judgment of conviction* or, if such copy is not available, a statement by a judicial authority that the person has been found guilty; (c) information establishing that the person sought is the person to whom the finding of guilt refers; (d) a copy of the sentence imposed, if the person sought has been sentenced," provided the foreign proceedings were not "in absentia."  Treaty Art. 9(4) (emphasis added).[10]

A foreign conviction following a trial where the fugitive was present establishes conclusive evidence of probable cause to certify extraditability.  *See, e.g.*, *Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991) (citing *United States v. Clark*, 470 F. Supp. 976, 978 (D. Vt. 1979); *In re Edmondson*, 352 F. Supp. 22, 24 (D. Minn. 1972); Rest. (Third) of Foreign Relations of the Law of the United States § 476 comment b (2013) ("[w]ith respect to persons whose extradition is sought after conviction in the requesting state, the requirement [of probable cause] is met by proof of the judgment of conviction and, where applicable, of sentence.")); *Arias Leiva v. Warden*, 928 F.3d 1281, 1294 (11th Cir. 2019) (finding that Colombia satisfied treaty requirement by submitting

---

[10] Article 9(3), in contrast, provides that an extradition request concerning a fugitive "sought for prosecution" must include "(c) such information as would justify the committal for trial of the person if the offense had been committed in the Requested State."

copy of foreign judgment of conviction).  This would be so even if the Polish judgment of conviction merely recited the fact of conviction, though here, the Polish Judgment also discusses in detail the evidence underlying the conviction.  This evidence included the victim's nearly contemporaneous account, physical evidence such as the injuries the victim suffered and her watch and underwear being found at the scene, and Grabowski's inconsistent explanations.

Importantly, Grabowski cannot rely on evidence that contradicts Poland's submissions. *Charlton*, 229 U.S. at 457–58.  Grabowski has argued that probable cause does not exist because of a purported recantation by the victim.  But the affidavit Grabowski has previously submitted, (Doc. No. 17-1), is inadmissible at this extradition hearing because Grabowski proffers it to contradict Poland's submissions and assert his innocence, not to explain Poland's submissions or to challenge their competence.  *See infra* section III.C.3.  Recantations like the one offered by Grabowski are generally inadmissible.  *See Santos v. Thomas*, 830 F.3d 987, 1003 (9th Cir. 2016) ("Recanting statements contest the credibility of the original statements, presenting a different version of the facts or offering reasons why the government's evidence should not be believed."); *Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir. 1981) (upholding decision to exclude witness declarations recanting prior testimony implicating fugitive in the crime, reasoning that "[t]he later statements do not explain the government's evidence, rather they tend to contradict or challenge the credibility of the facts implicating [the fugitive]").[11]

---

[11] The Ninth Circuit held in *Santos* that "[r]eliable evidence that the government's evidence was obtained by torture or coercion," in contrast, "goes to the competence of the government's evidence," 830 F.3d 987 at 1003, such that the "fact of coercion" may be explanatory . . . because . . . it addresses the circumstances under which the government's witnesses made inculpatory statements," *id.* at 1004 (internal quotation marks and citation omitted).  The *Santos* court held that if, without "engag[ing] in mini trials on the question of coercion or torture," *id.* at 1007, a court can determine whether the allegation of coercion or torture is credible, and determines that the allegation is credible, the court should determine whether probable cause still exists without the tainted evidence, *id.* at 1006 (9th Cir. 2016) (citation omitted).  Further, the *Santos* court held that if the facts concerning the allegation of torture or coercion are contested, and the court "concludes that it is impossible to determine the credibility of the allegations [of torture or coercion]

U.S. extradition courts have put recantation evidence aside where they cannot assess the credibility of the recantation without a trial and issued certificates of extradition. *See, e.g.*, *United States v. Pena-Bencosme*, No. 05-MJ-1518 (SMG), 2007 WL 3231978, at *6 (E.D.N.Y. Oct. 30, 2007). The existence of evidence "contradicting or calling into question the requesting state's primary evidence ordinarily has no import as it does not vitiate or obliterate probable cause, but rather merely 'pose[s] a conflict of credibility'" that a U.S. extradition court is not positioned to adjudicate. *In re Pena-Bencosme*, 341 F. App'x 681, 683 (2d Cir. 2009) (quoting *Shapiro*, 478 F.2d at 905).

Furthermore, even if the Court were to consider the affidavit Grabowski proffers, probable cause would remain. *See, e.g.*, *Hoxha*, 465 F.3d at 561 (finding that court did not err in excluding recantation evidence because recantation did not negate probable cause); *Escobedo*, 623 F.2d at 1102 n.13. The victim's earlier recantation was fully considered by the adjudicator in Poland and rejected. *See* Doc. No. 1-2 at 57–59.

The Polish Judgment expressly recounts that the victim recanted at trial, presenting a revised version of events more favorable to Grabowski, in which, she claimed, Grabowski participated in dragging her into the house and held her arms down but did not personally rape or

---

without exceeding the scope of an extradition court's limited review, the court has fulfilled its obligation . . . [and] the inquiry ends. Probable cause is not undermined, and the court must certify the extradition." *Id.* at 1007 (emphasis added). Additionally, the court held, "the fact that evidence of torture can properly be considered by the extradition court as 'explanatory' evidence does not mean that all evidence of torture must be admitted. The extradition court still has broad discretion to determine the admissibility of the evidence before it." *Id.* at 1007. Here, however, the victim does not allege that the Polish police obtained her statements, on which the Polish court subsequently relied, through torture or coercion. In fact, she asserts that she recanted at the trial despite the Polish prosecutor's threat to charge her with perjury. *Cf. In re Extradition of Atta*, 706 F. Supp. 1032, 1050-51 (E.D.N.Y. 1989) (rejecting, as lacking evidentiary basis, fugitive's claim that accomplice confessions implicating him were "coerced" and resulted from torture, and noting that even if accomplice confessions had resulted from long periods of confinement or torture, they nevertheless would be worthy of belief because they were, among other things, full of factual detail and corroborated by other evidence). In fact, the Polish submissions are clear that the victim recanted at trial.

assault her.  *See* Doc. No. 1-2 at 57–59, 70–71.  The Polish Judgment also discusses in detail why the Polish trial court discredited this recantation at the trial and, instead, credited the victim's prior statements, from during the investigation, which more fully inculpated Grabowski.  It notes that (1) the victim made her previous statements in close proximity to the incident, a mere one day afterwards (and, in fact several times); (2) the victim made the prior statements during the investigation despite the doubt she expressed about whether to move to prosecute the assailants, whom she had known for years and with whom she had been friends; (3) these statements were consistent with what the victim told her mother after the assault, the victim's documented physical injuries, the distress and torn clothing the victim's mother observed immediately after the incident, the victim abandoning her watch and underwear at the scene, and Grabowski's eventual admission to having oral sex with the victim; and (4) Grabowski's denials were not credible because he changed his story and could not account for the victim's injuries and torn clothing.  *See* Doc. 1-2 at 54–62.

Moreover, the criminal court considered Grabowski's initial denial of having had close physical contact or oral sex with the victim on the date in question, as well as his later reversal and statement that he became overwhelmed with desire when he walked into the room where his co-defendant and the victim were present, and his claim that that victim willingly performed oral sex on him after declining traditional intercourse.

Finally, the Polish court also noted that Grabowski's family had asked the victim to recant, and that "an essential fact in the case" was that "Grabowski's family gave [the victim] a certain amount of money, which was supposed to financially gratify the harm that had been suffered by her."  Doc. 1-2 at 57.

The Polish court heard evidence that included the victim's initial statement, her mother's statement, the victim's recantation, evidence from a medical exam of the victim's injuries, and physical evidence such as the victim's torn clothing and her watch and underwear being found at the scene of the rape and assault.  That court was in the best position to make a credibility determination and factual findings.  It discredited the victim's purported explanations for recanting, including that she was in a state of shock and was afraid of the prosecutor, and her suggestion that she was under the influence of tranquilizers during the preliminary proceedings. *See* Doc. 1-2 at 60.  Thus, a judge in the best position to review all of the evidence, including the victim's initial statements, recantation, and testimony and her motivations for the same, concluded not only that there was probable cause but that Grabowski was guilty of the offenses charged.

Accordingly, the extradition request satisfies the probable cause requirement.

## C.   EXTRADITION IS *SUI GENERIS* AND FOLLOWS UNIQUE PROCEDURES

### 1.   An Extradition Hearing Is Not a Criminal Proceeding

As stated above, an extradition hearing is not a criminal proceeding.  Its purpose is to decide the sufficiency of the charges under the treaty, not to determine the guilt or innocence of the accused; that is for the foreign court.  *See, e.g.*, *Collins*, 259 U.S. at 316; *Neely v. Henkel*, 180 U.S. 109, 123 (1901); *Benson*, 127 U.S. at 463.   Because of the limited nature of the hearing, special procedural and evidentiary rules that apply.

For example, the rights available to a defendant in a criminal trial do not attach to a fugitive in international extradition proceedings.  *See Neely*, 180 U.S. at 122 (rights available to one charged with criminal offense in this country not applicable to offenses committed outside the United States against the laws of another country); *accord Charlton*, 229 U.S. at 461; *Martin*, 993

F.2d at 829.  The purpose of an extradition hearing under Section 3184 is not to try the underlying charge; that is for the foreign court.  *Neely*, 180 U.S. at 123.

Accordingly, neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to extradition proceedings.[12]  *See Balzan v. United States*, 702 F.3d 220, 224 (5th Cir. 2012).  Moreover, the fugitive has no right to discovery.  *See Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984); *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005).  The fugitive's right to present evidence is severely constrained, and his Constitutional rights are limited.  For example, the fugitive has no right to cross-examine witnesses who might testify at the hearing or confront his accusers, *see Ordinola*, 478 F.3d at 608; *Bingham v. Bradley*, 241 U.S. 511, 517 (1916); and no Sixth Amendment right to a speedy extradition, *see McDonald v. Burrows*, 731 F.2d 294, 297 (5th Cir. 1984); *Martin*, 993 F.2d at 829; *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978).  The exclusionary rule is inapplicable, *see Simmons v. Braun*, 627 F.2d 635, 636–37 (2d Cir. 1980); and the Fifth Amendment guarantee against double jeopardy does not apply to successive extradition proceedings, *see Collins v. Loisel* 262 U.S. 426, 429 (1923); *In re Extradition of McMullen*, 989 F.2d 603, 612–13 (2d Cir. 1993).

## 2.   Extradition Hearings Rely on Written Submissions and Do Not Require Live Witnesses

A certification of extradition may be, and typically is, based entirely on the authenticated documentary evidence and information that the government seeking extradition has provided.  *See, e.g.*, *Shapiro*, 478 F.2d at 902-03; *Bovio v. United States*, 989 F.2d 255, 259–61 (7th Cir. 1993) (finding Swedish investigator's statement sufficient to establish probable cause); *O'Brien v.*

[12] Fed. R. Crim. P. 1(a)(5)(A) states: "Proceedings not governed by these rules include . . . the extradition and rendition of a fugitive."  Fed. R. Evid. 1101(d)(3) provides: "These rules – except for those on privilege – do not apply to . . . miscellaneous proceedings such as extradition or rendition."

*Rozman*, 554 F.2d 780, 783 (6th Cir. 1977); *Mainero*, 990 F. Supp. at 1212–13 (finding statements of co-conspirators and other witnesses sufficient in extradition to Mexico); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1433-1434 (S.D. Fla. 1993) (finding documents and statements sufficient for extradition to Honduras), *aff'd*, 28 F.3d 116 (11th Cir. 1994). The finding also may rest upon written statements from a foreign prosecutor or judge summarizing the evidence. *Rice v. Ames*, 180 U.S. 371, 375–76 (1901).

Extradition treaties do not require, or even anticipate, live witness testimony at the hearing. *See Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986). Requiring the "demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty." *Bingham*, 241 U.S. at 517.

Hearsay evidence is admissible at an extradition hearing and may fully support the court's findings leading to a certification under Section 3184. *See Collins*, 259 U.S. at 317; *Hoxha*, 465 F.3d at 561; *Haxhiaj*, 528 F.3d at 292 ("[C]ourts have consistently concluded that hearsay is an acceptable basis for a probable cause determination in the extradition context. Unsworn statements can be sufficient to support a probable cause determination.") (citations omitted); *O'Brien v. Rozman*, 554 F.2d 780, 783 (6th Cir. 1977) (citing cases).

Federal statute and the applicable treaty govern the nature and admissibility of evidence at an extradition hearing. In this matter, Article 9 of the Treaty lists the submissions that the state seeking extradition must make in support of its request. Most pertinent for this hearing, Article 9(4) of the Treaty provides that where, as here, the extradition request pertains to a fugitive who already "has been found guilty of the offense[s] for which extradition is sought," the request must include "(a) a copy of the warrant or order of arrest, if any . . . ; (b) a copy of the judgment of

conviction . . .; (c) information establishing that the person sought is the person to whom the finding of guilt refers; (d) a copy of the sentence imposed, if the person sought has been sentenced," provided the foreign proceedings were not "in absentia."  Treaty Art. 9(4).

Article 10 of the Treaty provides that documents bearing the certificate or seal of the Ministry of Justice, or the Ministry or Department responsible for foreign affairs, of the Requesting State "shall be admissible in extradition proceedings . . . without further certification, authentication, or other legalization.  Treaty Art. 10.  Here, as the Heinemann Declaration states, the documents that Poland has submitted comply with the Treaty requirements for admissibility at the extradition hearing because they bear the certificate or seal of Poland's Ministry of Justice.  (*See* Heinemann Decl. ¶ 6.; Doc. No. 1-1 at 2).

### 3.   The Fugitive's Evidence Is Very Limited

Due to the nature and limited purpose of an extradition hearing under 18 U.S.C. § 3184 and the importance of the United States' fulfilling its obligations under an extradition treaty, a fugitive's opportunity to challenge the evidence introduced against him is very circumscribed.  A fugitive may not introduce evidence that contradicts the evidence the government submits on behalf of the requesting country, but may only introduce evidence explaining the submitted evidence.  *See Charlton*, 229 U.S. at 457–58; *Hoxha*, 465 F.3d at 561 ("Courts have traditionally distinguished between inadmissible 'contradictory evidence,' which merely conflicts with the government's evidence, and admissible 'explanatory evidence,' which entirely eliminates probable cause.").  *Ordinola*, 478 F.3d at 608.[13]  Accordingly, "evidence of alibi or of facts contradicting

---

[13] The extent to which a fugitive may offer explanatory proof is largely within the court's discretion.  *See Koskotas*, 931 F.2d at 175 (1st Cir. 1991); *Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir. 1978); *In re Extradition of Singh*, 124 F.R.D. 571, 572–73 (D.N.J. 1987) (citing cases); *United States ex rel Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir. 1963) (citing cases).

the demanding country's proof or of a defense such as insanity may properly be excluded from the Magistrate's hearing." *Shapiro*, 478 F.2d at 901. "[S]tatements [that] would in no way explain . . . or . . . obliterate the government's evidence, but would only pose a conflict of credibility . . . should properly await trial in [the country seeking extradition]." *Id.* at 905 (internal quotation marks omitted).

A contrary rule might compel the "demanding government to produce all its evidence . . . both directing and rebutting, in order to meet the defense thus gathered from every quarter." The Supreme Court in *Collins* quoted with approval a district court's reasoning as to why the scope of an extradition hearing is very limited:

> If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here. This would be in plain contravention of the intent and meaning of the extradition treaties.

259 U.S. at 316 (quoting *In re Extradition of Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883)); *accord Charlton*, 229 U.S. at 461.

Courts routinely reject technical and affirmative defenses in extradition proceedings. *See Bingham*, 241 U.S. at 517 (rejecting objections that "savor of technicality"); *Charlton*, 229 U.S. at 462; *Collins*, 259 U.S. at 316–17; *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978); *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1112 (7th Cir. 1997). A fugitive may not introduce evidence that

(1) merely conflicts with the evidence the requesting state has submitted, *see Collins*, 259 U.S. at 315–17; *Hoxha*, 465 F.3d at 561; (2) attempts to establish an alibi, *Shapiro*, 478 F.2d at 901; (3) suggests an insanity defense, *see Charlton*, 229 U.S. at 462; or (4) seeks to impeach the credibility of the requesting country's witnesses, *see Bovio*, 989 F.2d at 259; *Singh*, 124 F.R.D. at 573 (*"While the accused may produce evidence to explain matters, the court may exclude evidence which merely contradicts government testimony, poses conflicts of credibility or establishes a defense."*) (emphasis in original, citations omitted).   Such matters, which require factual and credibility determinations, are for a Polish court to resolve.  *See Soares v. Hendricks*, No. CIV.A. 11-7134 JLL, 2012 WL 161747, at *3 (D.N.J. Jan. 19, 2012) ("[R]eviewing the entirety of the evidence is a task reserved to the [requesting country's] Courts.").

Here, Grabowski's attempt to introduce an affidavit from the victim is precisely the type of evidence that Courts have excluded.  It does not attempt to explain his conviction, but rather contradicts the determinations of the Polish trial and appellate courts.  Further, it requests this Court to weigh the affidavit, which attempts to discredit the conviction.  Supreme Court and Second Circuit precedent clearly counsel against such an approach because the Polish court, not this Court, was in the best position to make the necessary credibility determinations – and did make them.  By design, this Court is being presented with a summary of the determination made in Poland, and it lacks the full scope of the evidence and the live witnesses that were available to the Polish court in making that determination.

### 4.  The Executive Branch Considers Matters Other Than Sufficiency; Rule of Non-Inquiry

Other than the sufficiency of the evidence, all matters that a fugitive may raise as defenses to extradition are to be considered by the Secretary of State, not by this Court.  *See* 18 U.S.C. §§

3184, 3186.  In making extradition determinations, "[t]he Secretary exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations—factors that may be beyond the scope of the magistrate judge's review."  *Sidali*, 107 F.3d at 195 n.7.  The Secretary considers humanitarian claims and applicable statutes, treaties, or policies regarding appropriate treatment in the requesting country.  *See Escobedo*, 623 F.2d at 1105.  This is consistent with the long-held understanding that deciding whether to surrender a fugitive to a foreign government is "purely a national act . . . performed through the Secretary of State" within the executive's powers to conduct foreign affairs.  *In re Kaine*, 55 U.S. 103, 110 (1852).

Similarly, a fugitive's contention that the extradition request is politically motivated or that the requesting state's justice system is unfair should be addressed by the Secretary of State, not the court.  *See Koskotas*, 931 F.2d at 173–74 (noting that requesting state's motives are for executive branch to consider); *Kin-Hong*, 110 F.3d at 110 ("It is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed"); *see also Prasoprat*, 421 F.3d at 1016; *Blaxland v. Commonwealth Director*, 323 F.3d 1198, 1208 (9th Cir. 2003); *In re Extradition of Singh*, 123 F.R.D. 127, 130 (D.N.J. 1987).

Once this Court determines that the statutory standards for certification have been met, it must certify Grabowski as extraditable.  *See* 18 U.S.C. § 3184; *Cheung*, 213 F.3d at 88. Grabowski's assertions regarding the unfairness of the Polish criminal justice system, along with any humanitarian claims he may wish to raise, are within the Secretary of State's sole purview.

**IV.     CONCLUSION**

For the foregoing reasons, the government respectfully requests the certification of Grabowski as extraditable to Poland on the charges of rape and participating in a brawl or beating leading to injury.

JOHN H. DURHAM
UNITED STATES ATTORNEY

By:     _____

KONSTANTIN LANTSMAN
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. phv10692
Konstantin.Lantsman@usdoj.gov
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: (203) 821-3700

28