UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

**In the Matter of the Extraction of
Piotr Grabowski a/k/a  Walerek**

3:20-mc-00068

## MEMORANDUM OF LAW IN OPPOSITION OF EXTRADITION

Livius Ilasz an attorney at law duly admitted to practice before the courts of the State of New York, moves this Court for immediate release from pretrial detention. Respondent requests that the Court deny the Motion for Extradition.

## FACTS

Upon information and belief, Maria Janik (the "victim") testified the following during Mr. Grabowski's trial on July 17, 2001 as she recanted all previous statements of May 18, 2001 that she gave to the police in the Initial Complaint. Inter alia, she pointed out that when she gave the statements to the police on May 18, 2001 charging Mr. Grabowski with a crime, she was under the influence of tranquilizers at the time and now she does not remember her testimony of May 18, 2001. She also indicated to the court during the trial that she was afraid of the Prosecutor and apologized to Mr. Grabowski for giving false testimony earlier to the police. This is the part of the testimony of the complaining witness in the criminal trial in Poland that my client was convicted upon. The findings of the Polish Court do not even come close to a basic standard of

1

evidence that would ever justify sustaining the conviction in the U.S. Court. The findings of fact as stated by the Polish Court not only violate what we believe should be a standard for a conviction of being "beyond a reasonable doubt" but they are against any reasonable person's standards that one could apply towards the evidence presented. It is simply an insult to the average person's intelligence.

According to Ms. Maria Janik, on May 16, 2001 in the Stare Miasto district, the alleged victim was returning home from shopping. She saw the Respondent and her friend, Ireneusz Zagaja ("Zagaja"). The victim's date of birth is February 12, 1983, and she was eighteen years old on May 16, 2001. The victim alleges that she voluntarily got off of her bike. After dismounting, the victim, Respondent, and Zagaja walked the victim's bike to the Respondent's property. When they reached the residential building on Respondent's property the victim joined Respondent and Zagaja in sitting against a wall and smoking cigarettes. Upon information and belief, the victim commenced consensual and uncoerced oral intercourse with Respondent. The victim stated to the officials that she was coerced into a sexual act by Zagaja against her will. According to one of the victim's many inconsistent statements Respondent and Zagaja supposedly carried the victim into the building and into a room. Respondent admits that the victim declined traditional intercourse with the Respondent but that the victim willfully performed oral sex on Respondent. Afterwards Respondent exited the room leaving the victim and Zagaja alone. The police later found the victim's watch and underwear in the building which is consistent with Respondent's statement that the victim was at the location and did have willful oral intercourse with Respondent and unwilful intercourse with Zagaja. These are the facts in a nutshell based on the victim's testimony.

Later in the evening, when her mother Janina Janik ("Janik") questioned the victim's whereabouts the victim initially declined to give her an answer. Only later after Janik's

interrogation of the victim's whereabouts did the victim give her mother a concocted story of the aforementioned events. On May 17, 2001, the following day, Janik filed a police report over the phone against the wishes of the victim. Only after Janik called the police station did the police arrive at the victim's home where they took her to the police station. The police then took her to the physician to have a medical checkup. Only after the insistence of her mother and the police did the victim decide to file a police report against Respondent and Zagaja. As noted in the file, the victim later recanted her claims against Respondent and did not wish to further pursue prosecution against Respondent. The Prosecutor misinformed the victim and told her that she would be prosecuted for changing her testimony. After being coerced by Janik and the police, the victim again changed her story and assisted in the prosecution of Respondent. The victim during this time has been consistent in wishing not to pursue prosecution against the Respondent as she reconfirmed this fact in her Affidavit on October 8, 2020.

The fact that there were only three people during the commission of the crime, one victim and two alleged perpetrators, and all three people testified to facts in a consistent manner during the trial where there were no other witnesses to the event, but the Court on its own initiative established facts as it saw fit to convict Mr. Grabowski, is something that this Court needs to look upon very closely. This conviction may be consistent with a Stalinist method of fulfilling a communist objective of justice regardless of evidence, but not with the standard of free and democratic legal order that this Court should protect.

Furthermore, Respondent's attorney, highly incompetent, if not corrupt attorney, at the time of the incident, believed to be "working" closely with the Prosecutor and the Court, hastily advised the Respondent to plead guilty to a part of the charges despite the complaining witness having attempted to withdraw her statements against the Respondent and testifying to his

3

innocence. The attorney, we believe, in concert with the Court and the Prosecutor, purposefully misinformed the Respondent that if he plead guilty, he would not receive any imprisonment and would be placed on parole or probation. Subsequently, due to his attorney's poor advice, the Respondent reluctantly pleaded guilty for an offense that he did not commit. Thereafter the Court and the Prosecutor closed the case and accomplished their objective of convicting Mr. Grabowski.

Subsequently, as a result of judicial misconduct as described above, the Provisional Court of Rzeszów unjustly convicted Respondent on October 3rd, 2001, under Article 197 § 3 of the Penal Code, and Article 158 § 1 of the Penal Code in connection with Article 11 § 2 of the Penal Code, and for this he was sentenced to two years and six months of deprivation of liberty. Pursuant to Article 63 § 1 of the Penal Code, the period of actual deprivation of liberty in the case from May 17, 2001 to October 3, 2001 was credited to the imposed penalty of deprivation of liberty. Respondent's attorney negligently filed an appeal narrowly based upon the sentencing and not the conviction which was a mistake on the part of the attorney. Due to his mistake, the attorney essentially deprived our client from filing an extraordinary complaint based on the merits of the case to the Supreme Court of the Republic of Poland. The Respondent is now barred from filing any further Appeals, as he was convicted de facto without evidence nor a probable cause.

## ARGUMENT

### The Requirements for Certification Are Not Satisfied

An extradition certification is only in order where: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which extradition are requested are

covered by the applicable treaty; and (5) sufficient evidence exists to support a finding of probable cause as to each charge for which extradition is sought. 18 U.S.C. § 3184; see Fernandez, 268 U.S. at 312; Hoxha v. Levi, 465 F.3d 554, 560 (3d Cir. 2006); Sidali, 107 F.3d at 195. Here, condition five has not been met because sufficient explanatory evidence exists to support a finding of no probable cause for each charge for which extradition is being sought.

### I. No sufficient evidence exists to support a finding of probable cause as to each charge for which extradition is being sought.

A fugitive may only introduce evidence explaining the submitted evidence. See Charlton, 229 U.S. at 457–58; Hoxha, 465 F.3d at 561 ("Courts have traditionally distinguished between inadmissible 'contradictory evidence,' which merely conflicts with the government's evidence, and admissible 'explanatory evidence,' *(which is a part of the government's case in chief and which entirely eliminates probable cause)* which entirely eliminates probable cause."). Ordinola, 478 F.3d at 608. 13 A. The general rule with regards to whether evidence is explanatory or contradictory is that evidence that explains away or completely obliterates probable cause is admissible, while evidence that merely controverts the existence of probable cause is not. (internal quotation marks omitted); Koskotas v. Roche, 931 F.2d 169, 175 (1st Cir. 1991). Again, the accused may offer evidence to explain the government's proof without contradicting it. United States v. Lui Kin-Hong, 110 F.3d 103 (1st Cir. 1997). This exactly was done here by the alleged victim recanting her previous testimony during the trial, resulting in the elimination of the probable cause.

The opposing counsel fails to recognize that the Courts have found that the recantation of the evidence by the government has been found to be explanatory and thus admissible. One circuit

court has suggested that a recantation of inculpatory evidence does not constitute admissible explanatory evidence in an extradition hearing. See Eain v. Wilkes, 641 F.2d 504, 511 (7th Cir. 1981) (refusing to admit such evidence because it "do[es] not explain the government's evidence, rather [it] tend[s] to contradict or challenge the credibility of the facts implicating petitioner"). Several district courts have found recantation evidence to be admissible. See, e.g., In re Extradition of Contreras, 800 F. Supp. 1462, 1465 (S.D. Tex.). The Court held that recantations are admissible and due to insufficient evidence; the Court could deny a request for extradition. See, e.g., "It is obvious to the Court that if the only evidence of probable cause were the confessions, and if sufficiently recanted, then the existence of probable cause would be negated"; Republic of France v. Moghadam, 617 F. Supp. 777, 783 (N.D. Cal 1985).

Similarly, as in Contreras, in the Grabowski case the government failed to acknowledge that the victim was coerced by her mother to interact with the police and give a false statement to avoid embarrassment and shame with regard to what occurred sexually with Zagaja and Mr. Grabowski.

As noted in the file, the victim at the trial recanted her claims against Respondent and did not wish to further pursue prosecution against Respondent. The Prosecutor misinformed the victim and told her that she would be prosecuted if she changed her testimony. The victim during this time has been consistent in wishing not to pursue prosecution against the Respondent. Each of her testimonies are inconsistent with one another as to the time, place and dynamics of the events of the alleged crime.

Again, consistent with her testimony at the trial the victim signed a sworn Affidavit that she and the Respondent did have consensual sexual contact (Exhibit A). The victim originally was pressured by her mother to make a statement against the Respondent. In her recent Affidavit she

again confirms that she attempted to recant her statement but was coerced by the Prosecutor not to change her statement or she would be charged with a crime. After almost two decades the victim still maintains that the Respondent is not guilty. If the government has a case based <u>only</u> on a private complaint and the alleged victim testifies to the Respondent's innocence during the trial, and continues to confirm that fact today as an adult woman the probable cause just does not exist. The aforementioned clearly and unequivocally negates the probable cause Mr. Grabowski was convicted upon.

II. **<u>Multiple countries within the European Union have declined to uphold any of Poland's extradition requests due to their concern that Poland's Judiciary is not fair, unbiased, and/or independent of the government.</u>**

Several countries in the European Union including the Netherlands, Germany, and the United Kingdom have rejected many of Poland's extradition requests due to concern over unfair trials. In 2019, Germany's Karlsruhe Higher Regional Court issued a press release expressing concern about judicial independence in Poland and stated that it would decline Poland's extradition request[1]. In 2020, Poland's president signed into law the Muzzle Law which is aimed at disciplining judges who question the government judicial's reforms, a move which has been highly criticized within the European Union.

In 2018, the United Kingdom's highest Court declined to extradite a man who had been convicted of drug offenses and sentenced to two years. The man served eighteen months but was released. After he was released, the man fled Poland and traveled to the United Kingdom. The man

---

[1] Jasmin Bauomy, *Germany refuses to extradite Pole under European arrest warrant due to fair trial fears*, Euro News (2020), https://www.euronews.com/2020/03/09/germany-refuses-to-extradite-pole-under-european-arrest-warrant-due-to-fair-trial-fears (last visited Sep 22, 2020).

had served over 75% of his original sentence and paid restitution to his alleged victim. Given this circumstance, the English judge found that extradition to Poland in 2018 for a low-level offense committed years before would be a disproportionate interference with the appellant's right to private and family life [2].

Recently, the International Chamber of Legal Aid of the Regional Court in Amsterdam decided to suspend the extradition of suspects to stand trial in Poland and convicts for the execution of their sentences in Poland in all cases containing a European Arrest Warrant (EAW) by the request of Polish courts due to questions regarding Poland's inability to guarantee the independence of the judiciary at the time the Polish court issued the request to extradite a person to execute a sentence of imprisonment [3].

The Court should take into consideration the European Union's concern with regards to Poland's judicial fairness and refuse to extradite the Respondent. The client served a significant portion of his unjust sentence already and has lived a lawful and productive life in the United States.

Recently, the European Court of Human Rights in Strasbourg overturned the wrongful conviction of a man who was serving a 10-year sentence because the Polish Government had used testimony obtained by physical force to coerce his confession [4]. The same thing happened with Mr. Grabowski's case. In this instance, Mr. Grabowski was unjustly convicted based on the retracted testimony of the alleged victim, a troubled teenager at that time, who was threatened by the

---

[2] UK court rejects disproportionate European Arrest Warrant to Poland, Fair Trials (2018), https://www.fairtrials.org/news/uk-court-rejects-disproportionate-european-arrest-warrant-poland (last visited Sep 23, 2020).

[3] Anna Wójcik, The Netherlands will extradite no-one to Poland under European Arrest Warrant Rule of Law (2020), https://ruleoflaw.pl/the-netherlands-will-extradite-no-one-to-poland-under-european-arrest-warrant/ (last visited Nov 30, 2020).

[4] *Cwik v. Poland*, Index 31454/10

Prosecutor with charges of perjury if she withdrew her initial complaint. This was a blatant psychological coercion imposed by the government on the only complaining witness in the case. There is no difference in being convicted based on evidence of testimony obtained by torture as in Cwik v. Poland and a conviction obtained by the Prosecutor's misconduct through psychological coercion to uphold the false testimony of the only complaining witness to convict Mr. Grabowski under an apparent acquittance with this fact by the Polish Court. At the time of the conviction, Poland was transitioning from communism to democracy and free market economy which took place two decades ago and to some extent still shadows the Polish legal system. This conviction was a result of a policy to uphold the Court's case load as to prevent its closing, as to several courts had closed at that time throughout Poland due to economic reasons during the transition. There is no other plausible explanation for the conviction of Mr. Grabowski other than to sustain the Court's self-employment.

Here, the victim's recantation does not merely contradict the government's evidence with regards to Mr. Grabowski's unjust convictions but it is explanatory. The victim's recantation is simply explaining why she was coerced into her initial statement twenty years ago. Since her first recantation she has been consistent in stating that her sexual interaction with Mr. Grabowski had been consensual. The victim's recantation fully and unequivocally explains away or completely obliterates the probable cause of Mr. Grabowski's conviction. Mr. Grabowski is not a provocateur of a crime but a victim of a malfunctioning legal system in Poland that is now being recognized by many European Courts and the European Tribunal of Human Rights in Strasburg as a systemic abuse of justice.

### III. CONCLUSION

WHEREFORE, your affirmant respectfully requests that the Court deny the government's motion in its entirety.

Dated: December 2, 2020                     Respectfully submitted,

                                            /s/ Livius Ilasz
                                             Livius Ilasz
                                            Ilasz & Associates
                                            One Maiden Lane - 9th Floor
                                            New York, New York 10038
                                            Phone: (212) 480- 2222
                                            Fax: (212) 480- 2958